GIBSON, DUNN & CRUTCHER LLP
THEANE EVANGELIS, SBN 243570
    TEvangelis@gibsondunn.com
BLAINE H. EVANSON, SBN 254338
    BEvanson@gibsondunn.com
HEATHER L. RICHARDSON, SBN 246517
    HRichardson@gibsondunn.com
DHANANJAY S. MANTHRIPRAGADA,
    SBN 254433
    DManthripragada@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA  90071-3197
Tel.: 213.229.7000
Fax: 213.229.7520

JOSHUA S. LIPSHUTZ, SBN 242557
    JLipshutz@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, CA  94105-0921
Tel: 415.393.8200
Fax: 415.393.8306

Attorneys for Plaintiffs Lydia Olson, Miguel Perez,
Postmates Inc., and Uber Technologies, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LYDIA OLSON, MIGUEL PEREZ, POSTMATES INC., and UBER TECHNOLOGIES, INC.<br><br>                    Plaintiffs,<br><br>        v.<br><br>STATE OF CALIFORNIA; XAVIER BECERRA, in his capacity as Attorney General of the State of California; and "JOHN DOE," in his official capacity,<br><br>                    Defendants. | CASE NO. 2:19-cv-10956-DMG-RAO<br><br>**DECLARATION OF BRAD ROSENTHAL IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**<br><br>Judge: Hon. Dolly M. Gee<br>Hearing Date: February 7, 2020<br>Time: 2:00 P.M. |

## Declaration of Brad Rosenthal

I, Brad Rosenthal, hereby declare and state:

1.     I am currently employed as Director of Strategic Operational Initiatives in which I use my previous operations and insurance team experience to create and implement new company initiatives.   Prior to my current role, I served in several different roles with Uber from January 2014 until I left the company in October 2018.  I returned to Uber in my current role in November 2019.

2.     I make this declaration in support of Plaintiffs' Motion for a Preliminary Injunction. I am authorized to make these statements on behalf of Uber.

3.     In my current position for Uber, I have access to and personal knowledge of the matters and information set forth in this declaration, and if called upon to testify thereto, can and would competently do so. The information set forth herein is true and based on my own personal knowledge (unless otherwise stated). The documents and records discussed in this declaration are maintained in the regular course of Uber's business.

4.     In my current position at Uber, I have personal knowledge of Uber's business model, Uber's software and other technology, and Uber's contracts with the independent service providers and consumers who use Uber's technology.

**A.     Overview of Uber's Business**

5.     Uber is a multinational technology company headquartered in San Francisco, California that was founded in March 2009.

6.     Uber develops proprietary software used to create digital marketplaces that are operated through app-based platforms (the "Uber Apps"). Through the use of proprietary algorithms, the Uber Apps connect individual consumers in need of goods and services with those willing to provide them.

7.     The most widely used Uber marketplace is operated through the Uber Rides App.  Riders download the Uber Rides App and Drivers download the Uber Driver App, and in combination, the apps connect individuals in need of a ride ("riders") with

1   available, independent transportation providers willing to provide transportation

2   services ("drivers"). The software enables riders and drivers to connect based on their

3   location. Using the Uber Apps, riders can connect with available drivers nearby who

4   offer a variety of transportation options.

5       8.      Another widely used marketplace operated by Uber is UberEats, which,

6   through mobile apps and proprietary algorithms, connects local merchants (such as

7   restaurants), consumers, and independent delivery persons to facilitate the purchase,

8   fulfillment, and, when applicable, delivery of goods from the merchants to the

9   consumers. When the local merchant's customers place orders for delivery from the

10  merchants through the UberEats App, nearby independent delivery persons receive a

11  notification and can choose whether to accept an offer to pick up and complete the

12  requested delivery.

13      9.      Based on my review of company records, more than 395,000 independent

14  drivers and delivery persons in California have used the Uber Apps to find and provide

15  services to riders and consumers in the year beginning on October 1, 2018.

16      10.     Based on my review of company records, fewer than 2% of independent

17  drivers and delivery persons who choose to use the Uber Apps worked at least 40 hours

18  a week over the course of Q3 2019.

19      11.     Based on my review of company records, fewer than 34% of independent

20  drivers and delivery persons who use the Uber Apps worked more than 10 hours a week

21  over the course of Q3 2019

22  **B.    Independent Drivers and Riders Use the Uber Driver App to Connect**

23      12.     The Uber App provides a digital networking service for drivers and riders.

24  Drivers use the Uber Driver App to create an independent business connection with a

25  rider based on the rider's budget, comfort specifications, and other needs such as the

26  time they have to take the ride.

27      13.     On the Uber Rides App, riders can submit a ride request tailored to the size

28  and type of vehicle they want. For example, the "UberX" option connects riders with

1    drivers in cost-effective vehicles, "Uber Pool" connects drivers who carry multiple

2    passengers to different destinations for an even more cost-effective ride, "Uber Comfort"

3    allows riders to connect with drivers who drive mid-tier luxury sedans, and "Uber Black"

4    allows riders to connect with drivers who offer a luxury experience at a higher price

5    point.

6         14.    Once a rider makes a request for a ride through the Uber Rides App, the

7    Uber algorithm identifies nearby online independent drivers using the Uber Driver App

8    who may be willing to offer the ride at different price points, as well as comfort and

9    convenience levels.  These drivers receive requests based on their location, as identified

10   through the Uber App's location algorithm.  Drivers are under no obligation to accept a

11   request.  But when they do, they travel to the rider's requested location, the rider

12   confirms the desired destination for the trip, and together the rider and driver decide the

13   best route to arrive at the destination.

14        15.    Drivers may accept or reject ride requests as they see fit—Uber does not

15   require a driver to accept a particular trip.

16   **C.    Independent Merchants, Consumers, And Delivery Persons Use the**

17   **        UberEats App to Connect**

18        16.    The UberEats App similarly provides a digital networking service for

19   merchants, consumers, and independent delivery persons. For example, a consumer

20   looking to purchase food may use the UberEats App to create an independent business

21   connection with a local merchant, such as a restaurant.  The consumer may purchase the

22   food from the local merchant and pick it up themselves or, alternatively, seek to make

23   another independent business connection with an independent delivery person who is

24   willing to deliver the purchased food from the local merchant to the consumer.

25        17.    The UberEats App allows the consumer to connect with the appropriate

26   merchant and (when desired) an independent delivery person based on the consumer's

27   tastes, budget, and other needs, such as the time in which the consumer will require the

28   food to be delivered.  For example, the consumer may choose to combine their request

1   with another delivery request being fulfilled by an independent delivery person nearby

2   in order to reduce the overall delivery fee, even if the delivery then takes more time.

3        18.   Once a consumer makes a request for a delivery through the UberEats App,

4   the Uber algorithm identifies nearby online delivery persons using the UberEats App

5   who may be willing to offer the delivery. These delivery persons receive requests based

6   on their location, as identified through the UberEats App's location algorithm.  Delivery

7   persons are under no obligation to accept a request.  But when they do, they travel to the

8   local merchant's location, pick up the purchased food from the merchant, and decide the

9   best route to arrive at the consumer's requested delivery destination.

10       19.   Delivery persons may accept or reject delivery requests as they see fit—

11  Uber does not require a delivery person to accept a particular delivery.

12  **D.**   **Uber's Contracts with Independent Drivers**

13       20.   Drivers who want to use the Uber Driver App for lead generation must

14  agree to the Technology Services Agreement (the "Rasier Services Agreement") with

15  Uber Technologies, Inc. ("Uber").  A true and correct copy of the current Rasier Services

16  Agreement is attached hereto as Exhibit A.

17       21.   The current Rasier Services Agreement explains that Rasier "provides lead

18  generation to independent providers of rideshare or peer-to-peer . . . passenger

19  transportation services using the Uber Services." *See* Exhibit A at 1.

20       22.   The current Rasier Services Agreement provides:  "You [the driver]

21  acknowledge and agree that Company is a technology services provider that does not

22  provide transportation services." *See* Exhibit A at 1.

23       23.   The current Rasier Services Agreement provides: "As between Company

24  and you [the driver],  you acknowledge and agree that: (a) you shall be solely responsible

25  for determining the most effective, efficient and safe manner to perform each instance

26  of Transportation Services; and (b) except for the Uber Services or any Company

27  Devices (if applicable), you shall provide all necessary equipment, tools and other

28

1    materials, at your own expense, necessary to perform Transportation Services." Exhibit
2    A at 4.

3         24.    The current Rasier Services Agreement provides: "You [the driver]
4    acknowledge and agree that your provision of Transportation Services to Users creates
5    a direct business relationship between you and the User." Exhibit A at 5.

6         25.    The current Rasier Services Agreement defines the driver's relationship to
7    Uber in terms that ensure the full and complete independence of drivers, providing:
8    "Company does not, and shall not be deemed to, direct or control you generally or in
9    your performance under this Agreement specifically, including in connection with your
10   provision of Transportation Services, your acts or omissions, or your operation and
11   maintenance of your Vehicle. You retain the sole right to determine when, where, and
12   for how long you will utilize the Driver App or the Uber Services. You retain the option,
13   via the Driver App, to attempt to accept or to decline or ignore a User's request for
14   Transportation Services via the Uber Services, or to cancel an accepted request for
15   Transportation Services via the Driver App, subject to Company's then-current
16   cancellation policies. With the exception of any signage required by local law or
17   permit/license requirements, Company shall have no right to require you to: (a) display
18   Company's or any of its Affiliates' names, logos or colors on your Vehicle(s); or (b)
19   wear a uniform or any other clothing displaying Company's or any of its Affiliates'
20   names, logos or colors. You acknowledge and agree that you have complete discretion
21   to provide services or otherwise engage in other business or employment activities. For
22   the sake of clarity, you understand that you retain the complete right to; (i) use other
23   software application services in addition to the Uber Services; and (ii) engage in any
24   other occupation or business." Exhibit A at 5–6.

25        26.    The current Rasier Services Agreement entitles the driver "to charge a fare
26   for each instance of completed Transportation Services provided to a User that are
27   obtained via the Uber Services[.]" Exhibit A at 9.

28

27.   The current Rasier Services Agreement recognizes that Uber receives a "service fee on a per Transportation Services transaction basis calculated as a percentage of the Fare determined by the Fare Calculation" as "consideration of Company's provision of the Driver App and the Uber Services for [the driver's] use and benefit." Exhibit A at 10.

28.   The current Rasier Services Agreement makes clear that Uber "function[s] as an on-demand lead generation and related service only[.]" Exhibit A at 16.

29.   The current Rasier Services Agreement provides: "**Except as otherwise expressly provided herein with respect to Company acting as the limited payment collection agent solely for the purpose of collecting payment from Users on your behalf, the relationship between the parties under this Agreement is solely that of independent contracting parties. The parties expressly agree that: (a) this Agreement is not an employment agreement, nor does it create an employment relationship, between Company and you; and (b) no joint venture, partnership, or agency relationship exists between Company and you.**" Exhibit A at 17.

**E.    Uber's Contracts with Independent Delivery Persons**

30.   Any independent delivery person who wants to use the UberEats App to connect with merchants and consumers must agree to the Technology Services Agreement (the "Portier Services Agreement" and, collectively with the Rasier Services Agreement, the "Services Agreements") with Portier LLC, a subsidiary of Uber.  A true and correct copy of the current Services Agreement is attached hereto as **Exhibit B**.

31.   The current Portier Services Agreement explains that Portier "provides lead generation to independent providers of delivery services using the Uber" App.  *See* Exhibit B at 1.

32.   The current Portier Services Agreement provides:  "You [the delivery person] acknowledge and agree that Company is a technology services provider that does not provide delivery services." *See* Exhibit B at 1.

33.     The current Portier Services Agreement provides: "As between Company and you, you acknowledge and agree that: (a) you shall be solely responsible for determining the most effective, efficient and safe manner to perform each instance of Delivery Services; and (b) except for the Uber Services or any Company Devices (if applicable), you shall provide all necessary equipment, tools and other materials, at your own expense, necessary to perform Delivery Services." Exhibit B at 3-4.

34.     The current Portier Services Agreement provides: "You [the delivery person] acknowledge and agree that your provision of Delivery Services to Users creates a direct business relationship between you and the User." Exhibit B at 4.

35.     The current Portier Services Agreement defines the driver's relationship to Uber in terms that ensure the full and complete independence of drivers, providing: "Company shall not, and has no right to, supervise, direct or control you generally or in your performance under this Agreement specifically, including in connection with your provision of Delivery Services, your acts or omissions, or your operation and maintenance of your Transportation Method. You retain the sole right to determine (i) when, where, and for how long you will utilize the Provider App or the Uber Services and (ii) the manner in which Delivery Services are completed, subject only to User or Delivery Recipient specifications. You retain the option, via the Provider App, to attempt to accept or to decline or ignore a User's request for Delivery Services via the Uber Services, or, when necessary or appropriate to do so in the exercise of your business judgment, to cancel an accepted request for Delivery Services via the Provider App, subject to Company's then-current cancellation policies. With the exception of any signage required by local law or permit/license requirements, Company shall have no right to require you to: (a) display Company's or any of its Affiliates' names, logos or colors on your Transportation Method; or (b) wear a uniform or any other clothing displaying Company's or any of its Affiliates' names, logos or colors. You acknowledge and agree that you have complete discretion to provide services or otherwise engage in other business or employment activities. For the sake of clarity, you understand that you

retain the complete right to: (i) use other software application services in addition to the Uber Services; (ii) provide delivery services to your own customers, provided such business activities do not interfere with your completion of Delivery Services you have accepted via the Provider App; and (iii) engage in any other occupation or business." Exhibit B at 4.

36. The current Portier Services Agreement entitles the delivery person "to charge a delivery fee for each instance of completed Delivery Services provided to a User that are obtained via the Uber Services[.]" Exhibit B at 7.

37. The current Portier Services Agreement recognizes that Uber receives a "a service fee on a per Delivery Services transaction basis calculated as a percentage of the Delivery Fee" as "consideration of Company's provision of the Provider App and the Uber Services for [the delivery person's] use and benefit." Exhibit B at 8.

38. The current Portier Services Agreement makes clear that Uber "function[s] as an on-demand lead generation and related service only[.]" Exhibit B at 12.

39. The current Portier Services Agreement provides: "Except as otherwise expressly provided herein with respect to Company acting as the limited payment collection agent solely for the purpose of collecting payment from Users on your behalf, **the relationship between the parties under this Agreement is solely that of independent contracting parties. The parties expressly agree that: (a) this Agreement is not an employment agreement, nor does it create an employment relationship, between Company and you; and (b) no joint venture, partnership, or agency relationship exists between Company and you.**" Exhibit B at 14.

**F.   These Service Agreement Provisions Are Critical To Uber's Contracts with Independent Drivers and Independent Delivery Persons**

40. The provisions in the Services Agreements cited above all individually and together represent critical and essential features of Uber's contractual relationship with each and every independent driver or independent delivery persons because these

provisions are essential to the way in which Uber has structured its highly successful referral business model.

41.     Uber has relied substantially on its current obligations to the independent service providers as represented in the Services Agreements, such as by analyzing the requirements and duties that it would owe under the Service Agreements, and relying on those requirements and duties to structure its business model.

42.     Uber would have to restructure its entire business if these provisions were declared unenforceable because Uber's core business model relies on the flexibility provided to both Uber and the independent service providers in these provisions.

43.     These independent service providers merely use Uber's technology and do not provide services to Uber.   Uber cannot hire as employees every one of the independent service providers with whom it has entered into these contracts.

44.     Uber expected that these provisions would maintain their value to Uber when it entered into these contracts based in part on the fact that California courts had repeatedly affirmed that similar provisions were suitable to establish and maintain a contractual relationship with the independent drivers and independent delivery persons as independent service providers, rather than employees.

45.     All of the cited provisions of the Service Agreements are central to these contracts between Uber and the drivers because they establish an independent contractor relationship with the independent service providers and expressly disavow any employee-employer relationship between the contracting parties.

**G.     Uber is a Technology Company that Connects Drivers, Riders, Delivery Persons, Merchants, and Consumers**

46.     Each independent driver or delivery person who uses the Uber Driver App or UberEats App is free to work as much or as little as he or she wants—there is no set schedule, minimum-hours requirement, or minimum-ride or minimum-delivery requirement.  When a rider requests a ride using the Uber Rides App, the Uber algorithm

Gibson, Dunn & Crutcher LLP

1  sends basic information about the request to the closest available drivers.  The UberEats

2  App works similarly to match consumers with available delivery persons.

3      47.    Drivers and delivery persons do not provide any services to Uber, and they

4  are not Uber's employees.  Uber provides no tools or equipment to drivers.  Nor does

5  Uber assign drivers or delivery persons jobs, oversee the appearance of drivers or

6  delivery persons or their vehicles, or determine which routes they use. Rather, drivers

7  and delivery persons use their own vehicles and tools, manage their own vehicle

8  maintenance, oversee their own appearance and manner of serving riders, and determine

9  their own driving routes and other aspects of the rides they give to riders or the deliveries

10  they make.  Drivers and delivery persons are responsible for complying with all legal

11  requirements for being a driver or delivery person in their chosen state.  Other than being

12  required to meet federal, state, and local laws and regulations and ensure the safety of

13  riders or goods, drivers and delivery persons control the manner and means of their work.

14      48.    Uber is a means for drivers and delivery persons to become their own

15  bosses and operate their own businesses. Individual drivers and delivery persons can

16  self-advertise and customize the appearance of their vehicles and amenities they offer to

17  riders or those who are seeking deliveries.

18      49.    Drivers and delivery persons who choose to sign up to use the Uber Apps

19  receive referrals to perform independent services for consumers may simultaneously do

20  work on behalf of themselves and as livery drivers; Uber does not have a policy

21  preventing drivers or delivery persons from working full-time or part-time for

22  themselves or third parties. Indeed, Uber does not have a policy preventing drivers or

23  delivery persons from "multi-apping"—*i.e.*, using other applications such as Lyft or

24  Postmates at the same time as the Uber Driver App or UberEats App to take on multiple

25  forms of on-demand service work.  As a result, drivers and delivery persons can

26  transition from using the Uber Apps to other applications simply by swiping their

27  phones.

28

Gibson, Dunn &
Crutcher LLP

50.     If Uber were forced to reclassify these drivers and delivery persons as employees, it would require rewriting the current Services Agreements between the independent drivers and independent delivery persons and Uber. It also would mean that many drivers or delivery persons who infrequently use the Uber Apps may lose the opportunity to use the technology to facilitate business leads for their independent businesses, as the average driver and delivery person infrequently use the Uber Apps to generate leads for service referrals.

51.     A rigid employee-employer relationship is incompatible with Uber's business model, which was built to provide flexibility and independence for the drivers and delivery persons who provide services to third parties—not Uber—when and where those third parties want.

52.     If deprived of the ability to contract freely with independent drivers and delivery persons, Uber would be forced to change this business model.

**H.     There is No Typical Driver or Delivery Person Who Uses the Uber Driver App or UberEats App**

53.     There is no typical driver or delivery person who uses the Uber Driver App or UberEats Apps. Each driver or delivery person has a number of individual choices that will determine his/her work circumstances, including what months to drive or delivery, what days to drive or deliver, what times of day to drive or deliver, which city to drive or deliver in, which neighborhood of a given city to drive or deliver in, the route for driving a passenger or delivery from one place to another, and so on. Drivers and delivery persons choose whether, when, and how often to turn on the Uber Apps, and have the option—but not the obligation—to accept referrals passed along to them by the Uber Apps.

54.     In short, drivers and delivery persons make their own choices about how to go about the work of providing rides or making deliveries. Some drivers use vehicles that are livery licensed (TCP), while others drive their personal vehicles.

Gibson, Dunn &
Crutcher LLP

11

55.     Drivers and delivery persons have diverse backgrounds and diverse alternative work options. For example, some drivers accept Uber Driver App leads when convenient for them, and yet work a full-time job as the employee of an employer or the owner of another business. Other drivers or delivery persons accept leads from the Uber Apps when convenient for them and work one or more freelance jobs, such as a property manager, realtor, or graphic designer. Still other drivers or delivery persons accept referrals in between social or familial obligations, such as going to school or caring for children.

**I.     Uber Will Suffer Irreparable Injury if AB 5 Is Enforced Against It In A Manner Consistent With The Expressed Intent Of AB 5's Sponsors to Require Reclassification of The Independent Driver and Delivery Persons**

56.     Uber maintains that AB 5 does not require Uber to treat the independent drivers and delivery persons as employees because, *inter alia*, Uber does not "hire" these independent service providers and these independent service providers are not employees under the "ABC test" adopted by AB 5.

57.     However, if AB 5 were enforced against Plaintiffs in a manner consistent with the sponsors' stated intent to require reclassification of workers in the on-demand economy, it would have to make radical changes to its business model.

58.     Uber's business model is built around operating an online platform that connects those willing to pay for rides or deliveries with those willing to provide those rides or deliveries through the Uber Apps. If Uber were forced to reclassify independent service providers who use the Uber Apps as employees, Uber's Service Agreements with drivers and delivery persons in California would be vitiated. The Service Agreements are critical to Uber's business: they are the mechanism by which Uber maintains its relationships with a flexible and autonomous constituency of independent service providers who work when they want, as much as they want, and where they want.

59.     Although the Uber Apps operate in cities throughout the world and facilitates the transportation of millions of riders and deliveries each day, Uber has only

around 6,000 actual employees in California, most of whom are dedicated to technology product development—*i.e.*, developing and operating the Uber Apps and other technologies. Uber's business is not staffed or structured to provide transportation or delivery services; or to hire, schedule, and manage a large workforce of drivers or delivery persons.

60.    If forced to reclassify its drivers and delivery persons as employees, Uber would have to alter its current business model, which does not include any management of the independent drivers or delivery persons in the performance of their tasks.

61.    The sponsors of AB 5 have also continued to subject Uber to vitriolic and baseless attacks by accusing them of being in non-compliance with AB 5, which, if allowed to continue, will cause Uber harm to its business reputation.

62.    Uber also relies on independent service providers having the flexibility and autonomy to pick and choose when they want to login to the Uber Apps. Uber is not currently responsible for ensuring that there are enough drivers or delivery persons in a given location to satisfy demand.

63.    If Uber were forced to reclassify independent service providers who use the Uber Apps as employees, Uber expects that many independent drivers or delivery persons would stop using the Uber Apps if they no longer had the freedom to choose when to login or log out. Uber thus would lose its relationships with these flexible drivers who, for various individualized reasons, cannot—or are unwilling to—become employees bound to fixed work schedules.

64.    If forced to reclassify independent service providers who use the Uber Apps as employees, Uber also would incur administrative costs. Uber would have to rework its pay structure; setup processes and hire staff to manage payroll withholding and payment of payroll taxes; administer workers' compensation, disability, and unemployment insurance benefits; pay its share of premiums on those policies; provide health insurance; reimburse certain work-related expenses for any drivers or delivery

Gibson, Dunn &
Crutcher LLP

13

persons who become "employees"; and create a department to train, supervise, and control drivers and delivery persons.

65.     If Uber were forced to reclassify independent service providers who use the Uber Apps as employees, moreover, this reorganization may occur only for those drivers and delivery persons in California, not elsewhere, which would require setting up a parallel business in California and then attempting to integrate that business with its existing technology business, which operates everywhere else. The logistics of doing that would create administrative and other burdens on Uber.

66.     If Uber is forced to make these changes and AB 5 is later held unenforceable, Uber would then have to attempt to reverse this reengineered business model, which would inflict additional economic and reputational losses. And many independent service providers might not return to using the Uber Apps.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct, and that this declaration was executed in San Francisco, California, on this 2nd day of January, 2020.

Brad Rosenthal

# EXHIBIT A

UBER TECHNOLOGIES, INC / RASIER, LLC / RASIER-PA, LLC / RASIER-DC, LLC / RASIER-MT, LLC

**TECHNOLOGY SERVICES AGREEMENT**

Last update: November 25, 2019

This Technology Services Agreement ("*Agreement*") constitutes a legal agreement between you, an individual ("*you*") and Uber Technologies, Inc. ("*Uber*") if your Territory (as defined below) is within the State of California, Rasier-PA, LLC if your Territory is within the State of Pennsylvania, Rasier-DC, LLC if your Territory is within the State of Florida, Rasier-MT, LLC if your Territory is within the State of Montana, Hinter-NM if your Territory is within the State of New Mexico, or Rasier, LLC if your Territory is anywhere else within the United States (each as applicable, "*Company*") and solely with respect to Section 14 of this Agreement, Rasier-CA, LLC, if your Territory is California and Hinter-NM if your Territory is New Mexico.

The Company provides lead generation to independent providers of rideshare or peer-to-peer (collectively, "*P2P*") passenger transportation services using the Uber Services (as defined below). The Uber Services enable an authorized transportation provider to seek, receive and fulfill requests for transportation services from an authorized user of Uber's mobile applications. You desire to enter into this Agreement for the purpose of accessing and using the Uber Services.

**You acknowledge and agree that Company is a technology services provider that does not provide transportation services.**

In order to use the Uber Services, you must agree to the terms and conditions that are set forth below.  Upon your execution (electronic or otherwise) of this Agreement, you and Company shall be bound by the terms and conditions set forth herein.

**The following sentence only applies if, immediately prior to accepting this Agreement, you are a party to an effective technology services agreement with the Company, Rasier-CA, LLC or Hinter-NM. Notwithstanding the execution of this Agreement, and the termination of your prior technology services agreement, any previously agreed and currently effective supplemental terms, including the Pricing Addendum (defined below) last updated on May 22, 2017, will continue in full force and effect as described in this Agreement.**

## 1. Definitions

1.1   "*2015 Agreement*" means the Technology Services Agreement, last updated December 11, 2015, by and among you and Rasier-CA, LLC if your Territory is within the State of California, Rasier-PA, LLC if your Territory is within the State of Pennsylvania, Rasier-DC, LLC if your Territory is within the State of Florida, Rasier-MT, LLC if your Territory is within the State of Montana, Hinter-NM if your Territory is within the State of New Mexico, or Rasier, LLC.

1.2   "*2015 Termination"* has the meaning set forth in Section 14.1.

1.3   "*Affiliate*" means an entity that, directly or indirectly, controls, is under the control of, or is under common control with a party, where control means having more than fifty percent (50%) of the voting stock or other ownership interest or the majority of the voting rights of such entity.

1.4   "*City Addendum*" means an addendum or supplemental information to this Agreement setting forth additional Territory-specific terms, as made available and as updated by Company from time to time.

1.5   "*Class Action Waiver*" has the meaning set forth in Section 15.2.

1.6   "*Company Data*" means all data related to the access and use of the Uber Services hereunder, including all data related to Users (including User Information), all data related to the provision of Transportation Services via the Uber Services and the Driver App, and the Driver ID.

1.7   "*Company Device*" means a mobile device owned or controlled by Company that is provided to you solely for your use of the Driver App to provide Transportation Services.

1.8   "*Device*" means a Company Device or Your Device, as the case may be.

1.9   "*Driver App*" means the mobile application provided by Company that enables transportation providers to access the Uber Services for the purpose of seeking, receiving and fulfilling on- demand requests for transportation services by Users, as may be updated or modified from time to time.

1.10  "*Driver ID*" means the identification and password key assigned by Company to you that enables you to use and access the Driver App.

1.11  "*Effective Time*" means the date and time on which this Agreement is accepted by you.

1.12  "*Existing City Addendum*" means any City Addendum (as defined in the 2015 Agreement) effective as of immediately prior to the Effective Time including, without limitation the Pricing Addendum.

1.13 "*Existing Supplemental Terms*" means any Supplemental Terms (as defined in Section 14.2 of the 2015 Agreement) effective as of immediately prior to the Effective Time.

1.14 "*Fare*" has the meaning set forth in Section 4.1.

1.15 "*JAMS Rules*" has the meaning set forth in Section 15.2.

1.16 "*Pricing Addendum*" means that certain Addendum, last updated as of May 22, 2017, by and between you and the applicable Uber Subsidiary.

1.17 "*Representative Action Waiver*" has the meaning set forth in Section 15.2.

1.18 "*Service Fee*" has the meaning set forth in Section 4.4.

1.19 "*Territory*" means the city or metro areas in the United States in which you are enabled by the Driver App to receive requests for Transportation Services.

1.20 "*Tolls*" means any applicable road, bridge, ferry, tunnel and airport charges and fees, including inner-city congestion, environmental or similar charges as reasonably determined by the Uber Services based on available information.

1.21 "*Transportation Services*" means your provision of P2P passenger transportation services to Users via the Uber Services in the Territory using the Vehicle.

1.22 "*Uber Services*" mean Uber's on-demand lead generation and related services licensed by Uber that enable transportation providers to seek, receive and fulfill on-demand requests for transportation services by Users seeking transportation services; such Uber Services include access to the Driver App and Uber's software, websites, payment services as described in Section 4 below, and related support services systems, as may be updated or modified from time to time.

1.23 "*Uber Subsidiary*" means each of Rasier-CA, LLC, Rasier-PA, LLC, Rasier-DC, LLC, Rasier-MT, LLC, Hinter-NM and Rasier, LLC.

1.24 "*User*" means an end user authorized by Uber to use the Uber mobile application for the purpose of obtaining Transportation Services offered by Company's transportation provider customers.

1.25 "*User Information*" means information about a User made available to you in connection with such User's request for and use of Transportation Services, which may include the User's name, pick-up location, contact information and photo.

1.26 "*Vehicle*" means your vehicle that:  (a) meets the then-current Company requirements for a vehicle on the Uber Services; and (b) Company authorizes for your use for the purpose of providing Transportation Services.

1.27   "*Your Device*" means a mobile device owned or controlled by you: (a) that meets the then- current Company specifications for mobile devices as set forth at www.uber.com/byod-devices; and (b) on which the Driver App has been installed as authorized by Company solely for the purpose of providing Transportation Services.

## 2.   Use of the Uber Services

2.1   **Driver IDs**. Uber will issue you a Driver ID to enable you to access and use the Driver App on a Device in accordance with this Agreement. Company reserves the right to deactivate your Driver ID if you have not fulfilled a request for Transportation Services using the Driver App at least once a month. **You agree that you will maintain your Driver ID in confidence and not share your Driver ID with any third party. You will immediately notify Company of any actual or suspected breach or improper use or disclosure of your Driver ID or the Driver App.**

2.2   **Provision of Transportation Services**. When the Driver App is active, User requests for Transportation Services may appear to you via the Driver App if you are available and in the vicinity of the User. If you accept a User's request for Transportation Services, the Uber Services will provide you with certain User Information via the Driver App, including the User's first name and pickup location. In order to enhance User satisfaction with the Uber mobile application and your Transportation Services, it is recommended that you wait at least ten (10) minutes for a User to show up at the requested pick-up location. You will obtain the destination from the User, either in person upon pickup or from the Driver App if the User elects to enter such destination via Uber's mobile application. You acknowledge and agree that once you have accepted a User's request for Transportation Services, Uber's mobile application may provide certain information about you to the User, including your first name, contact information, photo and location, and your Vehicle's make and license plate number. You shall not contact any Users or use any User's personal data for any reason other than for the purposes of fulfilling Transportation Services. As between Company and you, you acknowledge and agree that: (a) you shall be solely responsible for determining the most effective, efficient and safe manner to perform each instance of Transportation Services; and (b) except for the Uber Services or any Company Devices (if applicable), you shall provide all necessary equipment, tools and other materials, at your own expense, necessary to perform Transportation Services. You understand and agree that you have a legal obligation under the Americans with Disabilities Act and similar state laws to transport Users with Service Animals (as defined by applicable state and federal law), including guide dogs for the blind and visually impaired Users, and there is no exception to this obligation for allergies or religious objections. Your knowing failure to transport a User with a Service Animal shall constitute a

material breach of this Agreement. You agree that a "knowing failure" to comply with this legal obligation shall constitute either: (1) a denial of a ride where you state the denial was due to a Service Animal; or (2) there is more than one (1) instance in which a User or the companion of a User alleges that you cancelled or refused a ride on the basis of a Service Animal.

2.3     **Your Relationship with Users**. You acknowledge and agree that your provision of Transportation Services to Users creates a direct business relationship between you and the User. Company is not responsible or liable for the actions or inactions of a User in relation to you, your activities or your Vehicle. You shall have the sole responsibility for any obligations or liabilities to Users or third parties that arise from your provision of Transportation Services. You acknowledge and agree that you are solely responsible for taking such precautions as may be reasonable and proper (including maintaining adequate insurance that meets the requirements of all applicable laws including motor vehicle financial responsibility laws) regarding any acts or omissions of a User or third party. You acknowledge and agree that Company may release your contact and/or insurance information to a User upon such User's reasonable request. You acknowledge and agree that, unless specifically consented to by a User, you may not transport or allow inside your Vehicle individuals other than a User and any individuals authorized by such User, during the performance of Transportation Services for such User. You acknowledge and agree that all Users should be transported directly to their specified destination, as directed by the applicable User, without unauthorized interruption or unauthorized stops.

2.4     **Your Relationship with Company**. You acknowledge and agree that Company's provision to you of the Driver App and the Uber Services creates a direct business relationship between Company and you. Company does not, and shall not be deemed to, direct or control you generally or in your performance under this Agreement specifically, including in connection with your provision of Transportation Services, your acts or omissions, or your operation and maintenance of your Vehicle. You retain the sole right to determine when, where, and for how long you will utilize the Driver App or the Uber Services. You retain the option, via the Driver App, to attempt to accept or to decline or ignore a User's request for Transportation Services via the Uber Services, or to cancel an accepted request for Transportation Services via the Driver App, subject to Company's then-current cancellation policies. With the exception of any signage required by local law or permit/license requirements, Company shall have no right to require you to: (a) display Company's or any of its Affiliates' names, logos or colors on your Vehicle(s); or (b) wear a uniform or any other clothing displaying Company's or any of its Affiliates' names, logos or colors. You acknowledge and agree that you have complete discretion to provide services or otherwise engage in other business or employment

activities. For the sake of clarity, you understand that you retain the complete right to; (i) use other software application services in addition to the Uber Services; and (ii) engage in any other occupation or business. Company retains the right to deactivate or otherwise restrict you from accessing or using the Driver App or the Uber Services in the event of a violation or alleged violation of this Agreement, your disparagement of Company or any of its Affiliates, your act or omission that causes harm to Company's or its Affiliates' brand, reputation or business as determined by Company in its sole discretion.

2.5     **Ratings**.

2.5.1   You acknowledge and agree that: (a) after receiving Transportation Services, a User will be prompted by Uber's mobile application to provide a rating of you and such Transportation Services and, optionally, to provide comments or feedback about you and such Transportation Services; and (b) after providing Transportation Services, you will be prompted by the Driver App to provide a rating of the User and, optionally, to provide comments or feedback about the User. You shall provide your ratings and feedback in good faith.

2.5.2   You acknowledge that Company desires that Users have access to high-quality services via Uber's mobile application. In order to continue to receive access to the Driver App and the Uber Services, you must maintain an average rating by Users that exceeds the minimum average acceptable rating established by Company for your Territory, as may be updated from time to time by Company in its sole discretion ("*Minimum Average Rating*"). Your average rating is intended to reflect Users' satisfaction with your Transportation Services rather than your compliance with any of Company's policies or recommendations. In the event your average rating falls below the Minimum Average Rating, Company will notify you and may provide you, in Company's discretion, a limited period of time to raise your average rating above the Minimum Average Rating. If you do not increase your average rating above the Minimum Average Rating within the time period allowed (if any), Company reserves the right to deactivate your access to the Driver App and the Uber Services. Additionally, you acknowledge that your repeated failure to accept User requests for Transportation Services while you are logged in to the Driver App creates a negative experience for Users of Uber's mobile application. If you do not wish to accept User requests for Transportation Services for a period of time, you agree that you will log off of the Driver App.

2.5.3   Company and its Affiliates reserve the right to use, share and display your and User ratings and comments in any manner in connection with the business of Company and its Affiliates without attribution to you or your

approval. You acknowledge and agree that Company and its Affiliates are distributors (without any obligation to verify) and not publishers of your and User ratings and comments, provided that Company and its Affiliates reserve the right to edit or remove comments in the event that such comments include obscenities or other objectionable content, include an individual's name or other personal information, or violate any privacy laws, other applicable laws or Company's or its Affiliates' content policies.

2.6     **Devices**.

2.6.1   Company encourages you to use Your Device in providing Transportation Services. Otherwise, if you elect to use any Company Devices, Company will supply you upon request with Company Devices and provide the necessary wireless data plan for such Devices, provided that Company will require reimbursement from you for the costs associated with the wireless data plan of each Company Device and/or request a deposit for each Company Device. You agree that: (a) Company Devices may only be used for the purpose of enabling your access to the Uber Services; and (b) Company Devices may not be transferred, loaned, sold or otherwise provided in any manner to any party other than you. Company Devices shall at all times remain the property of Company, and upon termination of this Agreement or your termination or deactivation, you agree to return to Company the applicable Company Devices within ten (10) days. You agree that failure to timely return any Company Devices, or damage to Company Devices outside of "normal wear and tear," will result in the forfeiture of related deposits.

2.6.2   If you elect to use Your Devices: (i) you are responsible for the acquisition, cost and maintenance of Your Devices as well as any necessary wireless data plan; and (ii) Company shall make available the Driver App for installation on Your Device. Company hereby grants you a personal, non-exclusive, non-transferable license to install and use the Driver App on Your Device solely for the purpose of providing Transportation Services. You agree to not provide, distribute or share, or enable the provision, distribution or sharing of, the Driver App (or any data associated therewith) with any third party.  The foregoing license grant shall immediately terminate and you will delete and fully remove the Driver App from the Driver-Provided Device in the event that you cease to provide Transportation Services using Your Device. You agree that: (i) use of the Driver App on Your Device requires an active data plan with a wireless carrier associated with Your Device, which data plan will be provided by you at your own expense; and (ii) use of the Driver App on Your Device as an interface with the Uber Services may

consume very large amounts of data through the data plan. **COMPANY ADVISES THAT YOUR DEVICE ONLY BE USED UNDER A DATA PLAN WITH UNLIMITED OR VERY HIGH DATA USAGE LIMITS, AND COMPANY SHALL NOT BE RESPONSIBLE OR LIABLE FOR ANY FEES, COSTS, OR OVERAGE CHARGES ASSOCIATED WITH ANY DATA PLAN.**

2.7 **Location Based Services**. You acknowledge and agree that your geo-location information must be provided to the Uber Services via a Device in order to provide Transportation Services. You acknowledge and agree that: (a) your geo-location information may be obtained by the Uber Services while the Driver App is running; and (b) the approximate location of your Vehicle will be displayed to the User before and during the provision of Transportation Services to such User. In addition, Company and its Affiliates may monitor, track and share with third parties Driver's geo-location information obtained by the Driver App and Device for safety and security purposes.

## 3. You and Your Vehicle

3.1 **Your Requirements**. You acknowledge and agree that at all times, you shall: (a) hold and maintain (i) a valid driver's license with the appropriate level of certification to operate your Vehicle, and (ii) all licenses, permits, approvals and authority applicable to you that are necessary to provide passenger transportation services to third parties in the Territory; (b) possess the appropriate and current level of training, expertise and experience to provide Transportation Services in a professional manner with due skill, care and diligence; and (c) maintain high standards of professionalism, service and courtesy. You acknowledge and agree that you may be subject to certain background and driving record checks from time to time in order to qualify to provide, and remain eligible to provide, Transportation Services. You acknowledge and agree that Company reserves the right, at any time in Company's sole discretion, to deactivate or otherwise restrict you from accessing or using the Driver App or the Uber Services if you fail to meet the requirements set forth in this Agreement.

3.2 **Vehicle Requirements**. You acknowledge and agree that your Vehicle shall at all times be: (a) properly registered and licensed to operate as a passenger transportation vehicle in the Territory; (b) owned or leased by you, or otherwise in your lawful possession; (c) suitable for performing the passenger transportation services contemplated by this Agreement; and (d) maintained in good operating condition, consistent with industry safety and maintenance standards for a Vehicle of its kind and any additional standards or requirements in the applicable Territory, and in a clean and sanitary condition.

3.3     **Documentation**. To ensure your compliance with all requirements in Sections 3.1 and 3.2 above, you must provide Company with written copies of all such licenses, permits, approvals, authority, registrations and certifications prior to your provision of any Transportation Services. Thereafter, you must submit to Company written evidence of all such licenses, permits, approvals, authority, registrations and certifications as they are renewed. Company shall, upon request, be entitled to review such licenses, permits, approvals, authority, registrations and certifications from time to time, and your failure to provide or maintain any of the foregoing shall constitute a material breach of this Agreement. Company reserves the right to independently verify your documentation from time to time in any way Company deems appropriate in its reasonable discretion. Financial Terms

4.   **Fare Calculation and Your Payment**. You are entitled to charge a fare for each instance of completed Transportation Services provided to a User that are obtained via the Uber Services (*"Fare"*), where such Fare is calculated based upon a base fare amount plus distance (as determined by Company using location-based services enabled through the Device) and/or time amounts, as detailed at www.uber.com/cities for the applicable Territory ("*Fare Calculation*"). You acknowledge and agree that the Fare provided under the Fare Calculation is the only payment you will receive in connection with the provision of Transportation Services, and that neither the Fare nor the Fare Calculation includes any gratuity. You are also entitled to charge User for any Tolls, taxes or fees incurred during the provision of Transportation Services, if applicable. You: (i) appoint Company as your limited payment collection agent solely for the purpose of accepting the Fare, applicable Tolls and, depending on the region and/or if requested by you, applicable taxes and fees from the User on your behalf via the payment processing functionality facilitated by the Uber Services; and (ii) agree that payment made by User to Company (or to an Affiliate of Company acting as an agent of Company) shall be considered the same as payment made directly by User to you. In addition, the parties acknowledge and agree that as between you and Company, the Fare is a recommended amount, and the primary purpose of the pre-arranged Fare is to act as the default amount in the event you do not negotiate a different amount. You shall always have the right to: (i) charge a fare that is less than the pre-arranged Fare; or (ii) negotiate, at your request, a Fare that is lower than the pre- arranged Fare (each of (i) and (ii) herein, a "*Negotiated Fare*"). Company shall consider all such requests from you in good faith. Company agrees to remit, or cause to be remitted, to you on at least a weekly basis: (a) the Fare less the applicable Service Fee; (b) the Tolls; and (c) depending on the region, certain taxes and ancillary fees. If you have separately agreed that other amounts may be deducted from the Fare prior to remittance to you (*e.g.*, vehicle financing payments, lease payments, mobile device usage charges, etc.), the order of any such deductions from the Fare shall be

determined exclusively by Company (as between you and Company).

4.1  **Changes to Fare Calculation**. Company reserves the right to change the Fare Calculation at any time in Company's discretion based upon local market factors, and Company will provide you with notice in the event of changes to the base fare, per mile, and/or per minute amounts that would result in a change in the recommended Fare. Continued use of the Uber Services after any such change in the Fare Calculation shall constitute your consent to such change.

4.2  **Fare Adjustment.** Company reserves the right to: (i) adjust the Fare for a particular instance of Transportation Services (*e.g.*, you took an inefficient route, you failed to properly end a particular instance of Transportation Services in the Driver App, technical error in the Uber Services, etc.); or (ii) cancel the Fare for a particular instance of Transportation Services (*e.g.*, User is charged for Transportation Services that were not provided, in the event of a User complaint, fraud, etc.). Company's decision to reduce or cancel the Fare in any such manner shall be exercised in a reasonable manner.

4.3  **Service Fee**. In consideration of Company's provision of the Driver App and the Uber Services for your use and benefit hereunder, you agree to pay Company a service fee on a per Transportation Services transaction basis calculated as a percentage of the Fare determined by the Fare Calculation (regardless of any Negotiated Fare), as provided to you via email or otherwise made available electronically by Company from time to time for the applicable Territory ("*Service Fee*"). In the event regulations applicable to your Territory require taxes to be calculated on the Fare, Company shall calculate. e the Service Fee based on the Fare net of such taxes. Company reserves the right to change the Service Fee at any time in Company's discretion based upon local market factors, and Company will provide you with notice in the event of such change. Continued use of the Uber Services after any such change in the Service Fee calculation shall constitute your consent to such change.

4.4  **Cancellation Charges**. You acknowledge and agree that Users may elect to cancel requests for Transportation Services that have been accepted by you via the Driver App at any time prior to your arrival. In the event that a User cancels an accepted request for Transportation Services, Company may charge the User a cancellation fee on your behalf. If charged, this cancellation fee shall be deemed the Fare for the cancelled Transportation Services for the purpose of remittance to you hereunder ("*Cancellation Fee*"). The parties acknowledge and agree that as between you and Company, this Cancellation Fee is a recommended amount, and the primary purpose of such Cancellation Fee is to act as the default amount in the event you do not negotiate a different amount. You shall always have the right to: (i) charge a cancellation fee that is less than

the Cancellation Fee; or (ii) negotiate, at your request, a cancellation fee that is lower than the Cancellation Fee (each of (i) and (ii) herein, a "*Negotiated Cancellation Fee*"). If charged, the Cancellation Fee (regardless of any Negotiated Cancellation Fee) shall be deemed the Fare for the cancelled Transportation Services for the purpose of remittance to you hereunder.

4.5   **Receipts**. As part of the Uber Services, Company provides you a system for the delivery of receipts to Users for Transportation Services rendered. Upon your completion of Transportation Services for a User, Company prepares an applicable receipt and issues such receipt to the User via email on your behalf. Such receipts are also provided to you via email or the online portal available to you through the Uber Services. Receipts include the breakdown of amounts charged to the User for Transportation Services and may include specific information about you, including your name, contact information and photo, as well as a map of the route you took. Any corrections to a User's receipt for Transportation Services must be submitted to Company in writing within three (3) business days after the completion of such Transportation Services. Absent such a notice, Company shall not be liable for any mistakes in or corrections to the receipt or for recalculation or disbursement of the Fare.

4.6   **No Additional Amounts**. You acknowledge and agree that, for the mutual benefit of the parties, through advertising and marketing, Company and its Affiliates may seek to attract new Users to Uber and to increase existing Users' use of Uber's mobile application. You acknowledge and agree such advertising or marketing does not entitle you to any additional monetary amounts beyond the amounts expressly set forth in this Agreement.

4.7   **Taxes**. You acknowledge and agree that you are required to: (a) complete all tax registration obligations and calculate and remit all tax liabilities related to your provision of Transportation Services as required by applicable law; and (b) provide Company with all relevant tax information. You further acknowledge and agree that you are responsible for taxes on your own income arising from the performance of Transportation Services. Notwithstanding anything to the contrary in this Agreement, Company may in its reasonable discretion based on applicable tax and regulatory considerations, collect and remit taxes resulting from your provision of Transportation Services and/or provide any of the relevant tax information you have provided pursuant to the foregoing requirements in this Section 4.8 directly to the applicable governmental tax authorities on your behalf or otherwise.

## 5.   Proprietary Rights; License

5.1   **License Grant**. Subject to the terms and conditions of this Agreement, Company hereby grants you a non-exclusive, non-transferable, non-sublicensable, non-assignable license, during the term of this Agreement, to use the Uber Services

(including the Driver App on a Device) solely for the purpose of providing Transportation Services to Users and tracking resulting Fares and Fees. All rights not expressly granted to you are reserved by Company, its Affiliates and their respective licensors.

5.2     **Restrictions**. You shall not, and shall not allow any other party to:  (a) license, sublicense, sell, resell, transfer, assign, distribute or otherwise provide or make available to any other party the Uber Services, Driver App or any Company Device in any way; (b) modify or make derivative works based upon the Uber Services or Driver App; (c) improperly use the Uber Services or Driver App, including creating Internet "links" to any part of the Uber Services or Driver App, "framing" or "mirroring" any part of the Uber Services or Driver App on any other websites or systems, or "scraping" or otherwise improperly obtaining data from the Uber Services or Driver App; (d) reverse engineer, decompile, modify, or disassemble the Uber Services or Driver App, except as allowed under applicable law; or (e) send spam or otherwise duplicative or unsolicited messages. In addition, you shall not, and shall not allow any other party to, access or use the Uber Services or Driver App to: (i) design or develop a competitive or substantially similar product or service; (ii) copy or extract any features, functionality, or content thereof; (iii) launch or cause to be launched on or in connection with the Uber Services an automated program or script, including web spiders, crawlers, robots, indexers, bots, viruses or worms, or any program which may make multiple server requests per second, or unduly burden or hinder the operation and/or performance of the Uber Services; or (iv) attempt to gain unauthorized access to the Uber Services or its related systems or networks.

5.3     **Ownership**. The Uber Services, Driver App and Company Data, including all intellectual property rights therein, and the Company Devices are and shall remain (as between you and Company) the property of Company, its Affiliates or their respective licensors. Neither this Agreement nor your use of the Uber Services, Driver App or Company Data conveys or grants to you any rights in or related to the Uber Services, Driver App or Company Data, except for the limited license granted above. Other than as specifically permitted by the Company in connection with the Uber Services, you are not permitted to use or reference in any manner Company's, its Affiliates', or their respective licensors' company names, logos, products and service names, trademarks, service marks, trade dress, copyrights or other indicia of ownership, alone and in combination with other letters, punctuation, words, symbols and/or designs (the "UBER Marks and Names") for any commercial purposes. You agree that you will not try to register or otherwise use and/or claim ownership in any of the UBER Marks and Names, alone or in combination with other letters, punctuation, words, symbols and/or designs, or in any confusingly similar mark, name or title, for

any goods and services.

## 6.  Confidentiality

6.1     Each party acknowledges and agrees that in the performance of this Agreement it may have access to or may be exposed to, directly or indirectly, confidential information of the other party ("*Confidential Information*"). Confidential Information includes Company Data, Driver IDs, User Information, and the transaction volume, marketing and business plans, business, financial, technical, operational and such other non-public information of each party (whether disclosed in writing or verbally) that such party designates as being proprietary or confidential or of which the other party should reasonably know that it should be treated as confidential.

6.2     Each party acknowledges and agrees that: (a) all Confidential Information shall remain the exclusive property of the disclosing party; (b) it shall not use Confidential Information of the other party for any purpose except in furtherance of this Agreement; (c) it shall not disclose Confidential Information of the other party to any third party, except to its employees, officers, contractors, agents and service providers ("*Permitted Persons*") as necessary to perform under this Agreement, provided Permitted Persons are bound in writing to obligations of confidentiality and non-use of Confidential Information no less protective than the terms hereof; and (d) it shall return or destroy all Confidential Information of the disclosing party, upon the termination of this Agreement or at the request of the other party (subject to applicable law and, with respect to Company, its internal record-keeping requirements).

6.3     Notwithstanding the foregoing, Confidential Information shall not include any information to the extent it:  (a) is or becomes part of the public domain through no act or omission on the part of the receiving party; (b) was possessed by the receiving party prior to the date of this Agreement without an obligation of confidentiality; (c) is disclosed to the receiving party by a third party having no obligation of confidentiality with respect thereto; or (d) is required to be disclosed pursuant to law, court order, subpoena or governmental authority, provided the receiving party notifies the disclosing party thereof and provides the disclosing party a reasonable opportunity to contest or limit such required disclosure.

## 7.  Privacy

7.1     **Disclosure of Your Information**. Subject to applicable law, Company and its Affiliates may, but shall not be required to, provide to you, a User, an insurance company and/or relevant authorities and/or regulatory agencies any information (including personal information (*e.g.*, information obtained about you through any background check) and any Company Data) about you or any Transportation Services provided hereunder if:  (a) there is a complaint, dispute

or conflict, including an accident, between you and a User; (b) it is necessary to enforce the terms of this Agreement; (c) it is required, in Company's or any Affiliate's sole discretion, by applicable law or regulatory requirements (*e.g.*, Company or its Affiliates receive a subpoena, warrant, or other legal process for information); (d) it is necessary, in Company's or any Affiliate's sole discretion, to (1) protect the safety, rights, property or security of Company or its Affiliates, the Uber Services or any third party; (2) to protect the safety of the public for any reason including the facilitation of insurance claims related to the Uber Services; (3) to detect, prevent or otherwise address fraud, security or technical issues; (4) to prevent or stop activity which Company or any of its Affiliates, in their sole discretion, may consider to be, or to pose a risk of being, an illegal, unethical, or legally actionable activity); or (e) it is required or necessary, in Company's or any Affiliate's sole discretion, for insurance or other purposes related to your ability to qualify, or remain qualified, to use the Uber Services. You understand that Company may retain your personal data for legal, regulatory, safety and other necessary purposes after this Agreement is terminated.

7.2    Company and its Affiliates may collect your personal data during the course of your application for, and use of, the Uber Services, or may obtain information about you from third parties. Such information may be stored, processed, transferred, and accessed by Company and its Affiliates, third parties, and service providers for business purposes, including for marketing, lead generation, service development and improvement, analytics, industry and market research, and such other purposes consistent with Company's and its Affiliates' legitimate business needs. You expressly consent to such use of personal data.

## 8.  Insurance

8.1    You agree to maintain during the term of this Agreement on all Vehicles operated by you under this Agreement automobile liability insurance that provides protection against bodily injury and property damage to third parties at levels of coverage that satisfy the minimum requirements to operate a private passenger vehicle on the public roads within the Territory. This coverage must also include any no-fault coverage required by law in the Territory that may not be waived by an insured. You agree to provide Company and its Affiliates a copy of the insurance policy, policy declarations, proof of insurance identification card and proof of premium payment for the insurance policy required in this Section 8.1 upon request. Furthermore, you must provide Company with written notice of cancellation of any insurance policy required by Company. Company shall have no right to control your selection or maintenance of your policy. You must be a named insured or individually rated driver, for which a premium is charged, on the insurance policy required in this Section 8.1 at all times.

8.2 **You agree to maintain during the term of this Agreement workers' compensation insurance as required by all applicable laws in the Territory. If permitted by applicable law, you may choose to insure yourself against industrial injuries by maintaining occupational accident insurance in place of workers' compensation insurance. Furthermore, if permitted by applicable law, you may choose not to insure yourself against industrial injuries at all, but do so at your own risk.**

8.3 You understand and acknowledge that your personal automobile insurance policy may not afford liability, comprehensive, collision, medical payments, personal injury protection, uninsured motorist, underinsured motorist, or other coverage for the Transportation Services you provide pursuant to this Agreement. If you have any questions or concerns about the scope or applicability of your own insurance coverage, it is your responsibility, not that of Company, to resolve them with your insurer(s).

8.4 Company may maintain during the term of this Agreement insurance related to your provision of Transportation Services as determined by Company in its reasonable discretion or as described in a City Addendum, provided that Company and its Affiliates are not required to provide you with any specific insurance coverage for any loss to you or your Vehicle. You are required to promptly notify Company of any accidents that occur while providing Transportation Services and to cooperate and provide all necessary information related thereto.

## 9. Representations and Warranties; Disclaimers

9.1 **By You**. You hereby represent and warrant that: (a) you have full power and authority to enter into this Agreement and perform your obligations hereunder; (b) you have not entered into, and during the term will not enter into, any agreement that would prevent you from complying with this Agreement; and (c) you will comply with all applicable laws in your performance of this Agreement, including holding and complying with all permits, licenses, registrations and other governmental authorizations necessary to provide (i) Transportation Services using the Vehicles pursuant to this Agreement, and (ii) passenger transportation services to third parties in the Territory generally.

9.2 **Disclaimer of Warranties**. COMPANY AND ITS AFFILIATES PROVIDE, AND YOU ACCEPT, THE UBER SERVICES, DRIVER APP AND THE COMPANY DEVICES ON AN "AS IS" AND "AS AVAILABLE" BASIS. COMPANY AND ITS AFFILIATES DO NOT REPRESENT, WARRANT OR GUARANTEE THAT YOUR ACCESS TO OR USE OF THE UBER SERVICES, DRIVER APP OR THE COMPANY DEVICES: (A) WILL BE UNINTERRUPTED OR ERROR FREE; OR (B) WILL RESULT IN ANY REQUESTS FOR

TRANSPORTATION SERVICES. COMPANY AND ITS AFFILIATES FUNCTION AS AN ON-DEMAND LEAD GENERATION AND RELATED SERVICE ONLY AND MAKE NO REPRESENTATIONS, WARRANTIES OR GUARANTEES AS TO THE ACTIONS OR INACTIONS OF THE USERS WHO MAY REQUEST OR RECEIVE TRANSPORTATION SERVICES FROM YOU, AND COMPANY AND ITS AFFILIATES DO NOT SCREEN OR OTHERWISE EVALUATE USERS. BY USING THE UBER SERVICES AND DRIVER APP, YOU ACKNOWLEDGE AND AGREE THAT YOU MAY BE INTRODUCED TO A THIRD PARTY THAT MAY POSE HARM OR RISK TO YOU OR OTHER THIRD PARTIES. YOU ARE ADVISED TO TAKE REASONABLE PRECAUTIONS WITH RESPECT TO INTERACTIONS WITH THIRD PARTIES ENCOUNTERED IN CONNECTION WITH THE USE OF THE UBER SERVICES OR DRIVER APP. NOTWITHSTANDING COMPANY'S APPOINTMENT AS THE LIMITED PAYMENT COLLECTION AGENT OF YOU FOR THE PURPOSE OF ACCEPTING PAYMENT FROM USERS ON YOUR BEHALF AS SET FORTH IN SECTION 4 ABOVE, COMPANY AND ITS AFFILIATES EXPRESSLY DISCLAIM ALL LIABILITY FOR ANY ACT OR OMISSION OF YOU, ANY USER OR OTHER THIRD PARTY.

9.3     **No Service Guarantee**. COMPANY AND ITS AFFILIATES DO NOT GUARANTEE THE AVAILABILITY OR UPTIME OF THE UBER SERVICES OR DRIVER APP. YOU ACKNOWLEDGE AND AGREE THAT THE UBER SERVICES OR DRIVER APP MAY BE UNAVAILABLE AT ANY TIME AND FOR ANY REASON (*e.g.*, DUE TO SCHEDULED MAINTENANCE OR NETWORK FAILURE). FURTHER, THE UBER SERVICES OR DRIVER APP MAY BE SUBJECT TO LIMITATIONS, DELAYS, AND OTHER PROBLEMS INHERENT IN THE USE OF THE INTERNET AND ELECTRONIC COMMUNICATIONS, AND COMPANY AND ITS AFFILIATES ARE NOT RESPONSIBLE FOR ANY DELAYS, DELIVERY FAILURES, OR OTHER DAMAGES, LIABILITIES OR LOSSES RESULTING FROM SUCH PROBLEMS.

10.   **Indemnification**.  You shall indemnify, defend (at Company's option) and hold harmless Company and its Affiliates and their respective officers, directors, employees, agents, successors and assigns from and against any and all liabilities, expenses (including legal fees), damages, penalties, fines, social security contributions and taxes arising out of or related to: (a) your breach of your representations, warranties or obligations under this Agreement; or (b) a claim by a third party (including Users, regulators and governmental authorities) directly or indirectly related to your provision of Transportation Services or use of the Uber Services. This indemnification provision shall not apply to your breach of any representations regarding your status as a contractor.

**11. Term and Termination**

11.1    **Term**. This Agreement shall commence on the date accepted by you and shall continue until terminated as set forth herein.

11.2 **Termination**. Either party may terminate this Agreement: (a) without cause at any time upon seven (7) days prior written notice to the other party; (b) immediately, without notice, for the other party's material breach of this Agreement; or (c) immediately, without notice, in the event of the insolvency or bankruptcy of the other party, or upon the other party's filing or submission of request for suspension of payment (or similar action or event) against the terminating party. In addition, Company may terminate this Agreement or deactivate your Driver ID immediately, without notice, with respect to you in the event you no longer qualify, under applicable law or the standards and policies of Company and its Affiliates, to provide Transportation Services or to operate the Vehicle, or as otherwise set forth in this Agreement.

11.3 **Effect of Termination**. Upon termination of the Agreement, you shall: (a) promptly return to Company all Company Devices; and (b) immediately delete and fully remove the Driver App from any of Your Devices. Outstanding payment obligations and Sections 1, 2.3, 2.5.3, 4.7, 4.8, 5.3, 6, 7, 9, 10, 11.3, 12, 13, and 15 shall survive the termination of this Agreement.

## 12. Relationship of the Parties

12.1 **Except as otherwise expressly provided herein with respect to Company acting as the limited payment collection agent solely for the purpose of collecting payment from Users on your behalf, the relationship between the parties under this Agreement is solely that of independent contracting parties. The parties expressly agree that: (a) this Agreement is not an employment agreement, nor does it create an employment relationship, between Company and you; and (b) no joint venture, partnership, or agency relationship exists between Company and you**.

12.2 You have no authority to bind Company or its Affiliates and you undertake not to hold yourself out as an employee, agent or authorized representative of Company or its Affiliates. Where, by implication of mandatory law or otherwise, you may be deemed an agent or representative of Company, you undertake and agree to indemnify, defend (at Company's option) and hold Company and its Affiliates harmless from and against any claims by any person or entity based on such implied agency or representative relationship.

## 13. Miscellaneous Terms

13.1 **Modification**. In the event Company modifies the terms and conditions of this Agreement at any time, such modifications shall be binding on you only upon your acceptance of the modified Agreement. Company reserves the right to modify any information referenced at hyperlinks from this Agreement from time to time. You hereby acknowledge and agree that, by using the Uber Services, or

downloading, installing or using the Driver App, you are bound by any future amendments and additions to information referenced at hyperlinks herein, or documents incorporated herein, including with respect to Fare Calculations. Continued use of the Uber Services or Driver App after any such changes shall constitute your consent to such changes.

13.2 **Supplemental Terms**. Supplemental terms may apply to your use of the Uber Services, such as use policies or terms related to certain features and functionality, which may be modified from time to time ("*Supplemental Terms*"). You may be presented with certain Supplemental Terms from time to time. Supplemental Terms are in addition to, and shall be deemed a part of, this Agreement. Supplemental Terms shall prevail over this Agreement in the event of a conflict.

13.3 **Severability**. If any provision of this Agreement is or becomes invalid or non-binding, the parties shall remain bound by all other provisions hereof. In that event, the parties shall replace the invalid or non-binding provision with provisions that are valid and binding and that have, to the greatest extent possible, a similar effect as the invalid or non-binding provision, given the contents and purpose of this Agreement.

13.4 **Assignment**. Neither party shall assign or transfer this Agreement or any of its rights or obligations hereunder, in whole or in part, without the prior written consent of the other party; provided that Company may assign or transfer this Agreement or any or all of its rights or obligations under this Agreement from time to time without consent: (a) to an Affiliate; or (b) to an acquirer of all or substantially all of Company's business, equity or assets.

13.5 **Entire Agreement**. Except as provided below, this Agreement, including all Supplemental Terms, constitutes the entire agreement and understanding of the parties with respect to its subject matter and replaces and supersedes all prior or contemporaneous agreements or undertakings regarding such subject matter. In this Agreement, the words "including" and "include" mean "including, but not limited to." The recitals form a part of this Agreement. Notwithstanding the foregoing, if you opt out of the arbitration provision set forth in Section 15.2 below, then any prior arbitration agreement between the parties shall remain in full force and effect.

13.6 **No Third Party Beneficiaries**. There are no third party beneficiaries to this Agreement, except as expressly set forth in the Arbitration Provision in Section 15.2 below. Nothing contained in this Agreement is intended to or shall be interpreted to create any third-party beneficiary claims.

13.7 **Notices**. Any notice delivered by Company to you under this Agreement will be delivered by email to the email address associated with your account or by posting on the portal available to you on the Uber Services. Any notice delivered

by you to Company under this Agreement will be delivered by contacting Company at http://partners.uber.com in the "Contact Us" section. Additional Territory-specific notices may be required from time to time.

**14. Existing Agreements.**  This Section 14 only applies if you were party to a 2015 Agreement effective immediately prior to the Effective Time:

14.1   **2015 Agreement**. Except as provided in Section 15 below, you and the applicable Uber Subsidiary hereby terminate such 2015 Agreement (except as provided in Section 12.3 of the 2015 Agreement), effective as of the Effective Time (the "*2015 Termination*").  The parties further agree to waive any applicable notice requirements with respect to the 2015 Termination.

14.2   **Continuing Agreements.** Notwithstanding the 2015 Termination, you hereby (a) ratify, assume and confirm your obligations under any Existing Supplemental Terms or Existing City Addenda and (b) acknowledge and agree that as of the Effective Time such Existing Supplemental Terms and Existing City Addenda are Supplemental Terms or City Addenda, as applicable, under this Agreement.  The Company hereby ratifies, assumes and confirms its obligations under such agreements.

**15. Governing Law; Arbitration**

15.1   The choice of law provisions contained in this Section 15.1 do not apply to the arbitration clause contained in Section 15.2, such arbitration clause being governed by the Federal Arbitration Act. Accordingly, and except as otherwise stated in Section 15.2, the interpretation of this Agreement shall be governed by California law, without regard to the choice or conflicts of law provisions of any jurisdiction.  Any disputes, actions, claims or causes of action arising out of or in connection with this Agreement or the Uber Services that are not subject to the arbitration clause contained in Section 15.2 shall be subject to the exclusive jurisdiction of the state and federal courts located in the City and County of San Francisco, California. However, neither the choice of law provision regarding the interpretation of this Agreement nor the forum selection provision is intended to create any other substantive right to non-Californians to assert claims under California law whether that be by statute, common law, or otherwise. These provisions, and except as otherwise provided in Section 15.2, are only intended to specify the use of California law to interpret this Agreement and the forum for disputes asserting a breach of this Agreement, and these provisions shall not be interpreted as generally extending California law to you if you do not otherwise reside or provide services in California. The foregoing choice of law and forum selection provisions do not apply to the arbitration clause in Section 15.2 or to any arbitrable disputes as defined therein. Instead, as described in Section 15.2, the Federal Arbitration

Act shall apply to any such disputes.  The failure of Company to enforce any right or provision in this Agreement shall not constitute a waiver of such right or provision unless acknowledged and agreed to by Uber in writing.

15.2  **Arbitration Provision.**

**IMPORTANT: PLEASE REVIEW THIS ARBITRATION PROVISION CAREFULLY, AS IT WILL REQUIRE YOU TO RESOLVE DISPUTES WITH THE COMPANY ON AN INDIVIDUAL BASIS THROUGH FINAL AND BINDING ARBITRATION, EXCEPT AS PROVIDED BELOW.  YOU MAY CHOOSE TO OPT OUT OF THIS ARBITRATION PROVISION BY FOLLOWING THE BELOW INSTRUCTIONS. THERE ARE AND/OR MAY BE LAWSUITS ALLEGING CLASS, COLLECTIVE OR REPRESENTATIVE CLAIMS ON YOUR BEHALF AGAINST THE COMPANY. IF YOU DO NOT OPT OUT OF THIS ARBITRATION PROVISION AND THEREFORE AGREE TO ARBITRATION WITH THE COMPANY, YOU ARE AGREEING IN ADVANCE, EXCEPT AS OTHERWISE PROVIDED BELOW, THAT YOU WILL NOT PARTICIPATE IN AND, THEREFORE, WILL NOT SEEK OR BE ELIGIBLE TO RECOVER MONETARY OR OTHER RELIEF IN CONNECTION WITH, ANY SUCH CLASS, COLLECTIVE OR REPRESENTATIVE LAWSUIT. THIS ARBITRATION PROVISION, HOWEVER, WILL ALLOW YOU TO BRING INDIVIDUAL CLAIMS IN ARBITRATION ON YOUR OWN BEHALF.**

15.2.1 **How This Arbitration Provision Applies**

This Arbitration Provision is a contract governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. and evidences a transaction involving commerce, and you agree that this is not a contract of employment involving any class of workers engaged in foreign or interstate commerce within the meaning of Section 1 of the Federal Arbitration Act (FAA). If notwithstanding the foregoing, the FAA does not apply to this Arbitration Provision, the law pertaining to arbitration agreements of the state where you reside when you entered into this Agreement shall apply. Except as it otherwise provides, this Arbitration Provision applies to any legal dispute, past, present or future, arising out of or related to your relationship with the Company or relationship with any of its agents, employees, executives, officers, investors, shareholders, affiliates, successors, assigns, subsidiaries or parent companies (each of which may enforce this Arbitration Provision as third party beneficiaries), and termination of that relationship, and survives after the relationship terminates.

This Arbitration Provision applies to all claims whether brought by you or the Company, except as provided below. This Arbitration Provision requires all such

claims to be resolved only by an arbitrator through final and binding individual arbitration and not by way of court or jury trial. Except as provided below regarding the Class Action Waiver and Representative Action Waiver, such disputes include without limitation disputes arising out of or relating to interpretation or application of this Arbitration Provision, including the formation, scope, enforceability, waiver, applicability, revocability or validity of this Arbitration Provision or any portion of this Arbitration Provision.

Except as it otherwise provides, this Arbitration Provision also applies, without limitation, to disputes between you and the Company, or between you and any other entity or individual, arising out of or related to your application for and use of an account to use the Uber Services and Driver App as a driver, background checks, your privacy, your contractual relationship with the Company or the termination of that relationship (including post-relationship defamation or retaliation claims), the nature of your relationship with the Company (including, but not limited to, any claim that you are an employee of the Company), trade secrets, workplace safety and health, unfair competition, compensation, minimum wage, expense reimbursement, overtime, breaks and rest periods, retaliation, discrimination, or harassment and claims arising under the Telephone Consumer Protection Act, Fair Credit Reporting Act, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, 8 U.S.C. § 1324b (unfair immigration related practices), Americans With Disabilities Act, Age Discrimination in Employment Act, Fair Labor Standards Act, Worker Adjustment and Retraining Notification Act, Older Workers Benefits Protection Act of 1990, Occupational Safety and Health Act, Consolidated Omnibus Budget Reconciliation Act of 1985, federal, state or local statutes or regulations addressing the same or similar subject matters, and all other federal, state, or local statutory, common law and legal claims (including without limitation, torts) arising out of or relating to your relationship with the Company or the termination of that relationship.

15.2.2 **Limitations On How This Arbitration Provision Applies**

Nothing in this Arbitration Provision prevents you from making a report to or filing a claim or charge with a government agency, including without limitation the Equal Employment Opportunity Commission, U.S. Department of Labor, U.S. Securities and Exchange Commission, National Labor Relations Board, or Office of Federal Contract Compliance Programs. This Arbitration Provision also does not prevent federal administrative agencies from adjudicating claims and awarding remedies based on those claims, even if the claims would otherwise be covered by this Arbitration Provision.

Where you allege claims of sexual assault or sexual harassment, you may elect to bring those claims in a court of competent jurisdiction instead of arbitration. Company agrees to honor your election of forum with respect to your individual sexual harassment or sexual assault claim but in so doing does not waive the enforceability of this Arbitration Provision as to any other provision (including but not limited to Section 15.2.4 below, which will continue to apply in court and arbitration), controversy, claim or dispute.

To the extent an Act of Congress or applicable federal law not preempted by the Federal Arbitration Act provides that a particular claim or dispute may not be subject to pre-dispute arbitration, such claim or dispute is excluded from the coverage of this Arbitration Provision. Likewise, if the Federal Arbitration Act does not apply to a claim or dispute, any claims or disputes that may not be subject to pre-dispute arbitration under applicable state arbitration law will be excluded from the coverage of this Arbitration Provision.

*Impact on Pending Litigation*: This Arbitration Provision shall not affect your standing with respect to any litigation against the Company brought by you or on your behalf that is pending in a state or federal court or arbitration as of the date of your receipt of this Arbitration Provision ("pending litigation"). Therefore:

- If you are or previously were a driver-partner authorized to use the Uber Services and Driver App, and at the time of your receipt of this Agreement you were not bound by an existing arbitration agreement with the Company, you shall remain eligible to participate in any pending litigation to which you were a party or putative class, collective or representative action member regardless of whether you opt out of this Arbitration Provision.

- If, at the time of your receipt of this Agreement, you were bound by an existing arbitration agreement with the Company, that arbitration agreement will continue to apply to any pending litigation, even if you opt out of this Arbitration Provision.

- If, at the time of your receipt of this Agreement, you were not previously a driver-partner authorized to use the Uber Services and Driver App, then this Arbitration Provision will apply to covered claims and any pending litigation unless you opt out of this Arbitration Provision as provided below.

### 15.2.3 Governing Rules, Starting The Arbitration, And Selecting The Arbitrator

The JAMS Comprehensive Arbitration Rules & Procedures (the "*JAMS Rules*") will apply to arbitration under this Arbitration Provision; however, if there is a conflict between the JAMS Rules and this Arbitration Provision, this Arbitration Provision shall govern. The JAMS Rules are available by, for example, searching Google.com, to locate "JAMS Comprehensive Arbitration Rules" or by clicking here: https://www.jamsadr.com/rules-comprehensive-arbitration/

Prior to commencing arbitration with JAMS, the party bringing the claim in arbitration must first demand arbitration in writing within the applicable statute of limitations period. The demand for arbitration shall include identification of the parties, a statement of the legal and factual basis of the claim(s), and a specification of the remedy sought and the amount in controversy. Any demand for arbitration made to the Company shall be served upon Uber's registered agent for service of process (CT Corporation, 818 West Seventh Street, Suite 930, Los Angeles, California 90017). Any demand for arbitration made to you shall be sent via electronic email to the email address associated with your driver-partner account.

Before the arbitration demand is submitted to JAMS, the party bringing the claim shall first attempt to informally negotiate with the other party, in good faith, a resolution of the dispute, claim or controversy between the parties for a period of not less than 30 days but no more than 45 days (the "*negotiation period*") unless extended by mutual agreement of the parties. During the negotiation period, any otherwise applicable statute of limitations shall be tolled. If the parties cannot reach agreement to resolve the dispute, claim or controversy within the negotiation period, the party bringing the claim shall submit the arbitration demand to JAMS.

To commence arbitration, the party bringing the claim must: (1) submit the arbitration demand to JAMS, and (2) pay its, his or her portion of any initial arbitration filing fee (see Section 15.2.6 below).

During the negotiation period, the party bringing the claim shall also make a good faith effort to meet and confer with the other party regarding the selection of an Arbitrator. If the parties reach agreement on an Arbitrator not affiliated with JAMS or to use procedures either not specified in the JAMS Rules or in lieu of the JAMS Rules, any such agreement shall be memorialized in writing before arbitration is commenced.

Delivering a written arbitration demand to the other party will not relieve the party bringing the claim of the obligation to commence arbitration as described above. It shall always be the obligation of the party bringing the claim to commence arbitration.

If, for any reason, the parties cannot agree to an Arbitrator or JAMS will not administer the arbitration, either party may apply to a court of competent jurisdiction with authority over the location where the arbitration will be conducted for appointment of a neutral Arbitrator. The location of the arbitration shall be no more than 45 miles from and in the same state where you last used the Uber Services and Driver App as a driver, unless each party to the arbitration agrees in writing otherwise.

All claims in arbitration are subject to the same statutes of limitation that would apply in court. The Arbitrator shall resolve all disputes regarding the timeliness or propriety of the demand for arbitration.

### 15.2.4 **Class Action Waiver**

**This Arbitration Provision affects your ability to participate in class or collective actions.** Both the Company and you agree to bring any dispute in arbitration on an individual basis only, and not on a class or collective basis on behalf of others. There will be no right or authority for any dispute to be brought, heard or arbitrated as a class or collective action, or for you to participate as a member in any such class or collective proceeding ("*Class Action Waiver*"). Notwithstanding any other provision of this Arbitration Provision or the JAMS Rules, disputes in court or arbitration regarding the validity, enforceability, conscionability or breach of the Class Action Waiver, or whether the Class Action Waiver is void or voidable, may be resolved only by the court and not by an arbitrator. In any case in which (1) the dispute is filed as a class or collective action and (2) there is a final judicial determination that all or part of the Class Action Waiver is unenforceable, the class or collective action to that extent must be litigated in a civil court of competent jurisdiction, but the portion of the Class Action Waiver that is enforceable shall be enforced in arbitration.

### 15.2.5 **Representative Action Waiver**

**This Arbitration Provision affects your ability to participate in representative actions.** To the maximum extent provided by law, both the Company and you agree to bring any dispute in arbitration on an individual basis only, and not on a representative basis—including but not limited to as a private attorney general representative under the California Labor Code—on behalf of

others. There will be no right or authority for any dispute to be brought, heard or arbitrated as a representative action, or for you to participate as a member in any such representative proceeding ("*Representative Action Waiver*"). Notwithstanding any other provision of this Arbitration Provision or the JAMS Rules, disputes in court or arbitration regarding the validity, enforceability, conscionability or breach of the Representative Action Waiver, or whether the Representative Action Waiver is void or voidable, may be resolved only by the court and not by an arbitrator. If any portion of this Representative Action Waiver is found to be unenforceable or unlawful for any reason (1) any representative claims subject to the unenforceable or unlawful portion(s) shall proceed in a civil court of competent jurisdiction; (2) the portion of the Representative Action Waiver that is enforceable shall be enforced in arbitration; (3) the unenforceable or unlawful provision shall be severed from this Agreement; and (4) severance of the unenforceable or unlawful provision shall have no impact whatsoever on the Arbitration Provision or the arbitrability of any remaining claims asserted by you or the Company.

Disputes regarding the nature of your relationship with the Company (including, but not limited to, any claim that you are an employee of the Company), as well as any claim you bring on your own behalf as an aggrieved worker for recovery of underpaid wages or other individualized relief (as opposed to a representative claim for civil penalties) are arbitrable and must be brought in arbitration on an individual basis only as required by this Arbitration Provision. You agree that any representative claim that is permitted to proceed in a civil court of competent jurisdiction must be stayed pending the arbitration of your dispute regarding the nature of your relationship with the Company and any claim you bring on your own behalf for individualized relief.

### 15.2.6 Paying For The Arbitration

Except in the case of offers of judgment (such as under Federal Rule of Civil Procedure 68 or any applicable state equivalents), each party will pay the fees for its, his or her own attorneys and any costs that are not unique to arbitration, subject to any remedies to which that party may later be entitled under applicable law.

You and the Company shall follow the JAMS Rules applicable to initial arbitration filing fees, except that your portion of any initial arbitration filing fee shall not exceed the amount you would be required to pay to initiate a lawsuit in federal court in the jurisdiction where the arbitration will be conducted. After (and only after) you have paid your portion of any initial arbitration filing fee, the

Company will make up the difference, if any, between the fee you have paid and the amount required by the JAMS Rules.

In all cases where required by law, the Company will pay the Arbitrator's fees, as well as all fees and costs unique to arbitration. Otherwise, such fee(s) will be apportioned between the parties in accordance with said applicable law, and any disputes in that regard will be resolved by the Arbitrator. You agree to not oppose any negotiations between JAMS and the Company relating only to the Company's fees.

### 15.2.7 **The Arbitration Hearing And Award**

Within 30 days of the close of the arbitration hearing, any party will have the right to prepare, serve on the other party and file with the Arbitrator a brief. The Arbitrator may award any party any remedy to which that party is entitled under applicable law, but such remedies shall be limited to those that would be available to a party in his or her individual capacity in a court of law for the claims presented to and decided by the Arbitrator. The Arbitrator shall apply applicable controlling law and will issue a decision or award in writing, stating the essential findings of fact and conclusions of law. A court of competent jurisdiction shall have the authority to enter a judgment upon the award made pursuant to the arbitration.

### 15.2.8 **Your Right To Opt Out Of This Arbitration Provision**

Agreeing to this Arbitration Provision is not a mandatory condition of your contractual relationship with the Company. If you do not want to be subject to this Arbitration Provision, you may opt out of this Arbitration Provision (subject to the pending litigation provision in Section 15.2.2, and the limitations set forth in this Section 15.2.8). To do so, within 30 days of the date that this Agreement is electronically accepted by you, you must send an electronic email from the email address associated with your driver-partner account to optout@uber.com, stating your intent to opt out of this Arbitration Provision, as well as your name, the phone number associated with your driver-partner account, and the city in which you reside.

An email sent by your agent or representative (including your counsel) shall not be effective. Your email may opt out yourself only, and any email that purports to opt out anyone other than yourself shall be void as to any others. Should you not opt out of this Arbitration Provision within the 30-day period, you and the Company shall be bound by the terms of this Arbitration Provision.

You will not be subject to retaliation if you exercise your right to opt out of this Arbitration Provision.

If you opt out of this Arbitration Provision and at the time of your receipt of this Agreement you were bound by an existing agreement to arbitrate disputes arising out of or related to your use of the Uber Services and Driver App, that existing arbitration agreement will remain in full force and effect.

Neither your acceptance of this Agreement nor your decision to opt out of this Arbitration Provision will affect any obligation you have to arbitrate disputes not specified in this Arbitration Provision pursuant to any other agreement you have with the Company or any of its subsidiaries or affiliate entities. Likewise, your acceptance of or decision to opt out of any other arbitration agreement you have with the Company or any of its subsidiaries or affiliate entities shall not affect any obligation you have to arbitrate claims pursuant to this Arbitration Provision.

15.2.9 **Enforcement Of This Arbitration Provision**

You have the right to consult with counsel of your choice concerning this Arbitration Provision and to be represented by counsel at any stage during the arbitration process. Except as provided in Sections 15.2.2 and 15.2.8 of this Arbitration Provision, this Arbitration Provision replaces prior agreements regarding the arbitration of disputes and is the full and complete agreement relating to the formal resolution of disputes covered by this Arbitration Provision. In the event any portion of this Arbitration Provision is deemed unenforceable, the remainder of this Arbitration Provision will be enforceable. This Arbitration Provision will survive the termination of your relationship with the Company, and it will continue to apply if your relationship with the Company is ended but later renewed.

# EXHIBIT B

PORTIER, LLC

**TECHNOLOGY SERVICES AGREEMENT**

Last update: August 26, 2016

This Technology Services Agreement ("*Agreement*") constitutes a legal agreement between you, an individual ("*you*") and Portier, LLC ("*Company*").

Company, a subsidiary of Uber Technologies, Inc. ("*Uber*"), provides lead generation to independent providers of delivery services using the Uber Services (as defined below). The Uber Services enable an authorized delivery provider to seek, receive and fulfill requests for delivery services from an authorized user of Uber's technology platform (*e.g.*, mobile application). You desire to enter into this Agreement for the purpose of accessing and using the Uber Services. For clarity, these terms apply to your use of the Uber Services for your provision of delivery services.  If you are authorized by an Affiliate of Company (*e.g.*, Rasier, LLC, Rasier-CA, LLC, or Uber USA, LLC, etc.) to use its or Uber's services to provide passenger transportation services, those passenger transportation services and related use of Uber's or its Affiliate's services are separate and independent of this Agreement and are subject to separate terms with the applicable Company Affiliate.

**You acknowledge and agree that Company is a technology services provider that does not provide delivery services.**

In order to use the Uber Services, you must agree to the terms and conditions that are set forth below. Upon your execution (electronic or otherwise) of this Agreement, you and Company shall be bound by the terms and conditions set forth herein.

**IMPORTANT: PLEASE NOTE THAT TO USE THE UBER SERVICES AND THE ASSOCIATED SOFTWARE, YOU MUST AGREE TO THE TERMS AND CONDITIONS SET FORTH BELOW. PLEASE REVIEW THE ARBITRATION PROVISION SET FORTH BELOW IN SECTION 15.3 CAREFULLY, AS IT WILL REQUIRE YOU TO RESOLVE DISPUTES WITH THE COMPANY ON AN INDIVIDUAL BASIS, EXCEPT AS OTHERWISE PROVIDED IN SECTION 15.3, THROUGH FINAL AND BINDING ARBITRATION UNLESS YOU CHOOSE TO OPT OUT OF THE ARBITRATION PROVISION.  BY VIRTUE OF YOUR EXECUTION OF THIS AGREEMENT, YOU WILL BE ACKNOWLEDGING THAT YOU HAVE READ AND UNDERSTOOD ALL OF THE TERMS OF THIS AGREEMENT (INCLUDING THE ARBITRATION PROVISION IN SECTION 15.3) AND HAVE TAKEN TIME TO CONSIDER THE CONSEQUENCES OF THIS IMPORTANT BUSINESS DECISION.  IF YOU DO NOT WISH TO BE SUBJECT TO ARBITRATION, YOU MAY OPT OUT OF THE ARBITRATION PROVISION BY FOLLOWING THE INSTRUCTIONS PROVIDED IN SECTION 15.3 BELOW.**

1.   **Definitions**

1.1      "*Addendum*" means an addendum to this Agreement setting forth additional Territory-specific and/or service-specific terms, as made available and as updated by Company from time to time.

1.2     "*Affiliate*" means an entity that, directly or indirectly, controls, is under the control of, or is under common control with a party, where control means having more than fifty percent (50%) of the voting stock or other ownership interest or the majority of the voting rights of such entity.

1.3     "*Cancellation Fee*" has the meaning set forth in Section 4.5.

1.4     "*Company Data*" means all data related to the access and use of the Uber Services hereunder, including all data related to Users (including User Information), all data related to Delivery Recipients (including Delivery Recipient Information), all data related to the provision of Delivery Services via the Uber Services and the Provider App, and the Provider ID.

1.5     "*Company Device*" means a mobile device owned or controlled by Company that is provided to you solely for your use of the Provider App to provide Delivery Services.

1.6     "*Delivery Fee*" has the meaning set forth in Section 4.1.

1.7     "*Delivery Recipient*" means, with respect to *UberRUSH*, the intended recipient of goods being delivered by you in connection with your Delivery Services.

1.8     "*Delivery Recipient Information*" means information about a Delivery Recipient made available to you in connection with a request for and use of Delivery Services, which may include delivery drop-off location, a Delivery Recipient's name, a Delivery Recipient's contact information, a Delivery Recipient's signature, and a Delivery Recipient's photo, as well as any other relevant details specific to the items to be delivered.

1.9     "*Delivery Services*" means your provision of delivery services to or on behalf of Users via the Uber Services in the Territory using the applicable Transportation Method.

1.10    "*Device*" means a Company Device or Your Device, as the case may be.

1.11    "*Negotiated Cancellation Fee*" has the meaning set forth in Section 4.5.

1.12    "*Provider App*" means the mobile application provided by Company that enables delivery providers to access the Uber Services for the purpose of seeking, receiving and fulfilling on-demand requests for delivery services by Users, as may be updated or modified from time to time.

1.13    "*Provider ID*" means the identification and password key assigned by Company to you that enables you to use and access the Provider App.

1.14    "*Service Fee*" has the meaning set forth in Section 4.4.

1.15    "*Territory*" means the city or metro areas in the United States in which you are enabled by the Provider App to receive requests for Delivery Services.

1.16    "*Tolls*" means any applicable road, bridge, ferry, tunnel and airport charges and fees, including inner-city congestion, environmental or similar charges as reasonably determined by the Uber Services based on available information.

1.17    "*Transportation Method*" means a mode of transportation that: (a) meets the then-current Company requirements for the delivery of the applicable items by you when using the Uber Services (*e.g.*, if Delivery Services require a motor vehicle, then "Transportation Method" shall mean a motor vehicle); and (b) Company authorizes for your use for the purpose of providing Delivery Services.

1.18    "*Uber Services*" mean Uber's on-demand lead generation and related services licensed by Uber to Company that enable delivery providers to seek, receive and fulfill on-demand requests for

delivery services by or on behalf of Users seeking delivery services; such Uber Services include access to the Provider App and Uber's software, websites, payment services as described in Section 4 below, and related support services systems, as may be updated or modified from time to time.

1.19    "*User*" means an end user (an individual or an entity) authorized by Uber to use the Uber technology platform for the purpose of requesting Delivery Services offered by Company's delivery provider customers (for clarity, such Delivery Services may be obtained in either of the following ways by a User:  (a) to receive specific goods ***from*** a third party (including goods purchased from a third party (*e.g.*, a restaurant)), or (b) to deliver specific goods ***to*** a third party).

1.20    "*User Information*" means information about a User made available to you in connection with a request for and use of Delivery Services, which may include delivery pick-up location, delivery drop-off location, the User's name, the User's contact information, the User's signature, and the User's photo, as well as any other relevant details specific to the items to be delivered.

1.21    "*Your Device*" means a mobile device owned or controlled by you:  (a) that meets the then-current Provider App specifications for mobile devices as set forth at www.uber.com/byod-devices; and (b) on which the Provider App has been installed as authorized by Company solely for the purpose of providing Delivery Services.

2.    **Use of the Uber Services**

2.1    **Provider IDs**. Company will issue you a Provider ID to enable you to access and use the Provider App on a Device in accordance with this Agreement. **To prevent fraud and ensure Delivery Recipient and User safety, you agree that you will maintain your Provider ID in confidence and not share your Provider ID with any third party. You will immediately notify Company of any actual or suspected breach or improper use or disclosure of your Provider ID or the Provider App.**

2.2    **Provision of Delivery Services**. When the Provider App is active, User requests for Delivery Services may appear to you via the Provider App if you are available and in the vicinity of the User. The User request may also specify the User's required deadline for your completion of the Delivery Services. If you accept a User's request for Delivery Services, the Uber Services will provide you with certain User Information, Delivery Recipient Information, and User instructions via the Provider App, including (as applicable) the User's first name and the pickup and drop-off location of the applicable goods to be delivered. In order to enhance User satisfaction with the Provider App and your Delivery Services, you agree to follow the User instructions for pickup and drop-off details (*e.g.*, the location within the building address to pick-up/drop-off a package, etc.). You further agree to wait a reasonable amount of time for a User or Delivery Recipient to appear at the requested pick-up or drop-off location. You acknowledge and agree that once you have accepted a User's request for Delivery Services, Uber's technology platform may provide certain information about you to the User and Delivery Recipient, including your first name, contact information, photo and location, and as applicable, information about your Transportation Method. You agree not to contact any Users or Delivery Recipients or use any User's personal data for any reason other than for the purposes of fulfilling Delivery Services. As between Company and you, you acknowledge and agree that:  (a) you shall be solely responsible for determining the most effective, efficient and safe manner to perform each instance of Delivery Services; and (b) except for the Uber Services or any Company Devices (if applicable), you shall provide all necessary equipment, tools and other materials, at your own expense,

necessary to perform Delivery Services. Additionally, depending on the type of Delivery Services you are providing, you acknowledge that you may need to acquire third party inventory (*e.g.*, food in the case of *UberEATS*) from various locations from time to time in order to fulfill certain requests for Delivery Services.  Additional terms may apply to your provision of Delivery Services as set forth in an Addendum.

2.3     **Your Relationship with Users and Delivery Recipients**. You acknowledge and agree that your provision of Delivery Services to Users creates a direct business relationship between you and the User. Company is not responsible or liable for the actions or inactions of a User or Delivery Recipient in relation to your activities or your Transportation Method. You shall have the sole responsibility for any obligations or liabilities to Users, Delivery Recipients or other third parties that arise from your provision of Delivery Services. You acknowledge and agree that: (a) you are solely responsible for taking such precautions as may be reasonable and proper (including maintaining adequate insurance that meets the requirements of all applicable laws including motor vehicle financial responsibility laws) regarding any acts or omissions of a User, a Delivery Recipient or other third party; and (b) Company may release your contact and/or insurance information to a User or Delivery Recipient upon such User or Delivery Recipient's reasonable request (*e.g.*, in connection with an accident).

2.4     **Your Relationship with Company**. You acknowledge and agree that Company's provision to you of the Provider App and the Uber Services creates a direct business relationship between Company and you. Company shall not, and has no right to, supervise, direct or control you generally or in your performance under this Agreement specifically, including in connection with your provision of Delivery Services, your acts or omissions, or your operation and maintenance of your Transportation Method. You retain the sole right to determine (i) when, where, and for how long you will utilize the Provider App or the Uber Services and (ii) the manner in which Delivery Services are completed, subject only to User or Delivery Recipient specifications. You retain the option, via the Provider App, to attempt to accept or to decline or ignore a User's request for Delivery Services via the Uber Services, or, when necessary or appropriate to do so in the exercise of your business judgment, to cancel an accepted request for Delivery Services via the Provider App, subject to Company's then-current cancellation policies. With the exception of any signage required by local law or permit/license requirements, Company shall have no right to require you to:  (a) display Company's or any of its Affiliates' names, logos or colors on your Transportation Method; or (b) wear a uniform or any other clothing displaying Company's or any of its Affiliates' names, logos or colors. You acknowledge and agree that you have complete discretion to provide services or otherwise engage in other business or employment activities.  For the sake of clarity, you understand that you retain the complete right to:  (i) use other software application services in addition to the Uber Services; (ii) provide delivery services to your own customers, provided such business activities do not interfere with your completion of Delivery Services you have accepted via the Provider App; and (iii) engage in any other occupation or business. Company retains the right to deactivate or otherwise restrict you from accessing or using the Provider App or the Uber Services in the event of a violation of this Agreement, your disparagement of Company or any of its Affiliates, fraudulent activity, or your act or omission that causes harm to Company's or its Affiliates' brand, reputation or business as determined by Company.

2.5     **Ratings**.

2.5.1     You acknowledge and agree that:  (a) after completion of an instance of Delivery Services, a User and/or Delivery Recipient may be prompted by Uber's technology

platform to provide a rating of you and related to such Delivery Services and, optionally, to provide comments or feedback about you and related to such Delivery Services; and (b) after providing Delivery Services, you will be prompted by the Provider App to provide a rating of the User and, optionally, to provide comments or feedback about the User. You shall provide your ratings and feedback in good faith.

2.5.2    You acknowledge that Company desires that Users have access to high-quality Delivery Services via Uber's technology platform. In order to continue to receive access to the Provider App and the Uber Services, you must maintain an average rating that exceeds the minimum average acceptable rating established by Company for your Territory, as may be updated from time to time by Company in its sole discretion ("*Minimum Average Rating*"). Your average rating is intended to reflect Users' satisfaction with your Delivery Services rather than your compliance with any of Uber's policies or recommendations. In the event your average rating falls below the Minimum Average Rating, Company will notify you and may provide you, in Company's discretion, a reasonable opportunity to raise your average rating above the Minimum Average Rating. If you do not increase your average rating above the Minimum Average Rating within the reasonable time period provided, Company may deactivate your access to the Provider App and the Uber Services. Additionally, you acknowledge that your repeated failure to accept User requests for Delivery Services while you are logged in to the Provider App creates a negative experience for Users of Uber's technology platform. If you do not wish to accept User requests for Delivery Services for a period of time, you agree that you will log off of the Provider App.

2.5.3    Company and its Affiliates reserve the right to use, share and display your, User and Delivery Recipient ratings and comments in any manner in connection with the business of Company and its Affiliates without attribution to you or your approval. You acknowledge and agree that Company and its Affiliates are distributors (without any obligation to verify) and not publishers of your, User and Delivery Recipient ratings and comments, provided that Company and its Affiliates reserve the right to edit or remove comments in the event that such comments include obscenities or other objectionable content, include an individual's name or other personal information, or violate any privacy laws, other applicable laws, or Company's or its Affiliates' content policies.

2.6    **Devices**.

2.6.1    Company encourages you to use Your Device in providing Delivery Services. Otherwise, if you elect to use any Company Devices, Company will supply you upon request with Company Devices and provide the necessary wireless data plan for such Devices, provided that Company will require reimbursement from you for the costs associated with the wireless data plan of each Company Device and/or request a deposit for each Company Device. You agree that:  (a) Company Devices may only be used for the purpose of enabling your access to the Uber Services; and (b) Company Devices may not be transferred, loaned, sold or otherwise provided in any manner to any party other than you. Upon termination of this Agreement or your deactivation, you agree to return to Company the applicable Company Devices within ten (10) days. You agree that failure to timely return any Company Devices, or damage to Company Devices outside of "normal wear and tear", will result in the forfeiture of related deposits.

2.6.2    If you elect to use Your Device:  (i) you are solely responsible for the acquisition, cost and maintenance of Your Device as well as any necessary wireless data plan; and (ii)

Company shall make available the Provider App for installation on Your Device. Company hereby grants you a personal, non-exclusive, non-transferable license to install and use the Provider App on Your Device solely for the purpose of providing Delivery Services. You agree to not provide, distribute or share, or enable the provision, distribution or sharing of, the Provider App (or any data associated therewith) with any third party. The foregoing license grant shall immediately terminate and you will delete and fully remove the Provider App from Your Device in the event that you cease to provide Delivery Services using Your Device. You agree that: (i) use of the Provider App on Your Device requires an active data plan with a wireless carrier associated with Your Device, which data plan will be provided by you at your own expense; and (ii) use of the Provider App on Your Device as an interface with the Uber Services may consume very large amounts of data through the data plan. **COMPANY ADVISES THAT YOUR DEVICE ONLY BE USED UNDER A DATA PLAN WITH UNLIMITED OR VERY HIGH DATA USAGE LIMITS, AND COMPANY SHALL NOT BE RESPONSIBLE OR LIABLE FOR ANY FEES, COSTS, OR OVERAGE CHARGES ASSOCIATED WITH ANY DATA PLAN.**

2.7    **Location Based Services**. You acknowledge and agree that your geo-location information must be provided to the Uber Services via a Device in order to provide Delivery Services. You acknowledge and agree that: (a) your geo-location information may be obtained by the Uber Services while the Provider App is running; and (b) your approximate location will be displayed to the User and Delivery Recipient before and during the provision of Delivery Services to the User. In addition, Company and its Affiliates may monitor, track and share with third parties your geo-location information obtained by the Provider App and Device for safety and security purposes.

3.    **You and Your Transportation Method**

3.1    **Your Requirements**. You acknowledge and agree that at all times, you shall: (a) hold and maintain (i) a valid applicable license with the appropriate level of certification to operate your Transportation Method (*e.g.*, a driver's license if your Transportation Method is a motor vehicle), and (ii) all licenses, permits, approvals and authority applicable to you that are necessary to provide delivery services to third parties in the Territory; (b) possess the appropriate and current level of training, expertise and experience to provide Delivery Services in a professional manner with due skill, care and diligence; and (c) provide Delivery Services with professionalism, service and courtesy consistent with industry standards for the delivery services industry. You acknowledge and agree that, subject to your consent to the extent required by applicable law, you may be subject to certain background and driving record checks from time to time in order to qualify to provide, and remain eligible to provide, Delivery Services. You acknowledge and agree that Company reserves the right to deactivate or otherwise restrict you from accessing or using the Provider App or the Uber Services if you fail to meet the requirements set forth in this Agreement.

3.2    **Transportation Method**. You acknowledge and agree that your Transportation Method will at all times be: (a) properly registered and licensed to operate as a delivery vehicle in the Territory (if your Transportation Method is a vehicle); (b) owned or leased by you, or otherwise in your lawful possession; (c) suitable for performing the Delivery Services contemplated by this Agreement; and (d) maintained in good operating condition, consistent with industry safety and maintenance standards for a Transportation Method of its kind and any additional standards or requirements in the applicable Territory.

3.3     **Documentation**. To ensure your compliance with all requirements in Sections 3.1 and 3.2 above, you must provide Company with written copies of all such licenses, permits, approvals, authority, registrations and certifications prior to your provision of any Delivery Services. Thereafter, you must submit to Company written evidence of all such licenses, permits, approvals, authority, registrations and certifications as they are renewed. Company shall, upon request, be entitled to review such licenses, permits, approvals, authority, registrations and certifications from time to time, and your failure to provide or maintain any of the foregoing shall constitute a material breach of this Agreement. Company reserves the right to independently verify your Documentation from time to time in any way Company deems appropriate in its reasonable discretion.

4.    **Financial Terms**

4.1     **Delivery Fee Calculation and Your Payment**. You are entitled to charge a delivery fee for each instance of completed Delivery Services provided to a User that are obtained via the Uber Services (*"Delivery Fee"*), where such Delivery Fee is, as applicable:  (a) calculated based upon a base delivery fee amount plus mileage and/or time amounts; or (b) a flat fee, each as detailed for the applicable Territory ("*Delivery Fee Calculation*"). You acknowledge that the Delivery Fee is the only payment you will receive in connection with provision of Delivery Services and that neither the Delivery Fee nor the Delivery Fee Calculation includes any gratuity. You are also entitled to charge User for any Tolls, taxes or fees incurred during the provision of Delivery Services, if applicable. You:  (i) appoint Company as your limited payment collection agent solely for the purpose of accepting the Delivery Fee, applicable Tolls and, depending on the region and/or if requested by you, applicable taxes and fees from the User on your behalf via the payment processing functionality facilitated by the Uber Services that are related to your provision of Delivery Services; and (ii) agree that payment made by User to Company (or to an Affiliate of Company acting as an agent of Company) shall be considered the same as payment made directly by User to you.

In addition, the parties acknowledge and agree that as between you and Company, the Delivery Fee is a recommended amount, and the primary purpose of the pre-arranged Delivery Fee is to act as the default amount in the event you do not negotiate a different amount. You shall always have the right to: (i) charge a delivery fee that is less than the pre-arranged Delivery Fee; or (ii) negotiate, at your request, a Delivery Fee that is lower than the pre-arranged Delivery Fee (each of (i) and (ii) herein, a "*Negotiated Delivery Fee*"). Company shall consider all such requests from you in good faith.

Company agrees to remit, or cause to be remitted, to you on at least a weekly basis:  (a) the Delivery Fee less the applicable Service Fee; (b) the Tolls; and (c) depending on the region, certain taxes and ancillary fees. If you have separately agreed that other amounts may be deducted from the Delivery Fee prior to remittance to you (*e.g.*, vehicle financing payments, lease payments, mobile device usage charges, etc.), the order of any such deductions from the Delivery Fee is to be determined exclusively by Company (as between you and Company).

4.2     **Changes to Delivery Fee Calculation**. Company reserves the right to change the Delivery Fee Calculation at any time in Company's discretion based upon local market factors, and Company will provide you with notice in the event of changes to the base delivery fee, per mile, and/or per minute amounts that would result in a change in the recommended Delivery Fee. Continued use of the Uber Services after any such change in the Delivery Fee Calculation shall constitute your consent to such change.

4.3     **Delivery Fee Adjustment.** Company reserves the right to:  (i) adjust the Delivery Fee for a particular instance of Delivery Services (*e.g.*, if you take an inefficient route, if you fail to properly end a particular instance of Delivery Services in the Provider App, if there is a technical error in the Uber Services, etc.); or (ii) cancel the Delivery Fee for a particular instance of Delivery Services (*e.g.*, if you fail to meet a communicated User deadline for completion, if a User is charged for Delivery Services that are not provided, in the event of a User complaint, fraud, etc.). Company's decision to reduce or cancel the Delivery Fee in any such manner shall be exercised in a reasonable manner.

4.4     **Service Fee**. In consideration of Company's provision of the Provider App and the Uber Services for your use and benefit hereunder, you agree to pay Company a service fee on a per Delivery Services transaction basis calculated as a percentage of the Delivery Fee determined by the Delivery Fee Calculation (irrespective of whether any Negotiated Delivery Fee is separately negotiated), as provided to you via email or otherwise made available electronically by Company from time to time for the applicable Territory ("*Service Fee*"). In the event regulations applicable to your Territory require taxes to be calculated on the Delivery Fee, Company shall calculate the Service Fee based on the Delivery Fee net of such taxes. Company reserves the right to change the Service Fee at any time in Company's discretion based upon local market factors, and Company will provide you with notice in the event of such change. Continued use of the Uber Services after any such change in the Service Fee calculation shall constitute your consent to such change.

4.5     **Cancellation Charges**. You acknowledge and agree that Users may elect to cancel requests for Delivery Services that have been accepted by you via the Provider App at any time prior to your arrival at the drop-off location. In the event that a User cancels an accepted request for Delivery Services or the package is not available for your pick-up based on Company's then-current policies with respect to the foregoing, Company may charge the User a cancellation fee on your behalf. If charged, this cancellation fee shall be deemed the Delivery Fee for the cancelled Delivery Services for the purpose of remittance to you hereunder ("Cancellation Fee"). The parties acknowledge and agree that as between you and Company, this Cancellation Fee is a recommended amount, and the primary purpose of such Cancellation Fee is to act as the default amount in the event you do not negotiate a different amount. You shall always have the right to:  (i) charge a cancellation fee that is less than the Cancellation Fee; or (ii) negotiate, at your request, a cancellation fee that is lower than the Cancellation Fee (each of (i) and (ii) herein, a "*Negotiated Cancellation Fee*").  If charged, the Cancellation Fee (regardless of any Negotiated Cancellation Fee) shall be deemed the Delivery Fee for the cancelled Delivery Services for the purpose of remittance to you hereunder.

4.6     **Receipts**. As part of the Uber Services, Company provides you a system for the delivery of receipts to Users for Delivery Services rendered. Upon your completion of Delivery Services for a User, Company prepares an applicable receipt and issues such receipt to the User via email on your behalf. Such receipts are also provided to you via email or the online portal available to you through the Uber Services. Receipts include the breakdown of amounts charged to the User for Delivery Services and may include specific information about you, including your name, contact information and photo, as well as a map of the route you took. Any corrections to a User's receipt for Delivery Services must be submitted to Company in writing within three (3) business days after the completion of such Delivery Services. Absent such a notice, Company shall not be liable for any mistakes in or corrections to the receipt or for recalculation or disbursement of the Delivery Fee.

4.7 **No Additional Amounts**. You acknowledge and agree that, for the mutual benefit of the parties, through advertising and marketing, Company and its Affiliates may seek to attract new Users to Company and its Affiliates and to increase existing Users' use of Uber's technology platform. You acknowledge and agree such advertising or marketing does not entitle you to any additional monetary amounts beyond the amounts expressly set forth in this Agreement. You acknowledge that the Delivery Fees are intended as full compensation for your Delivery Services. However, in the event that a User pays Company a gratuity on your behalf, Company will transmit such gratuity to you and will not retain any portion of that gratuity. With regard to cash gratuities provided by a User or Delivery Recipient directly to you, no portion of that gratuity is owed to or will be paid to Company.

4.8 **Taxes**. You acknowledge and agree that you are required to:  (a) complete all tax registration obligations and calculate and remit all tax liabilities related to your provision of Delivery Services as required by applicable law; and (b) provide Company with all relevant tax information. You further acknowledge and agree that you are responsible for taxes on your own income arising from the performance of Delivery Services. Notwithstanding anything to the contrary in this Agreement, Company may in its reasonable discretion based on applicable tax and regulatory considerations, collect and remit taxes resulting from your provision of Delivery Services and/or provide any of the relevant tax information you have provided pursuant to the requirement mentioned above, directly to the applicable governmental tax authorities on your behalf or otherwise.

5. **Proprietary Rights; License**

5.1 **License Grant**. Subject to the terms and conditions of this Agreement, Company hereby grants you a non-exclusive, non-transferable, non-sublicensable, non-assignable license, during the term of this Agreement, to use the Uber Services (including the Provider App on a Device) solely for the purpose of providing Delivery Services to Users and tracking resulting Delivery Fees and fees. All rights regarding the use of the Uber Services, Provider App or Company Device (if applicable) not expressly granted to you are reserved by Company, its Affiliates and their respective licensors.

5.2 **Restrictions**. You shall not, and shall not allow any other party to:  (a) license, sublicense, sell, resell, transfer, assign, distribute or otherwise provide or make available to any other party the Uber Services, Provider App or any Company Device in any way; (b) modify or make derivative works based upon the Uber Services or Provider App; (c) improperly use the Uber Services or Provider App, including creating Internet "links" to any part of the Uber Services or Provider App, "framing" or "mirroring" any part of the Uber Services or Provider App on any other websites or systems, or "scraping" or otherwise improperly obtaining data from the Uber Services or Provider App; (d) reverse engineer, decompile, modify, or disassemble the Uber Services or Provider App, except as allowed under applicable law; or (e) send spam or otherwise duplicative or unsolicited messages. In addition, you shall not, and shall not allow any other party to, access or use the Uber Services or Provider App to:  (i) design or develop a competitive or substantially similar product or service; (ii) copy or extract any features, functionality, or content thereof; (iii) launch or cause to be launched on or in connection with the Uber Services an automated program or script, including web spiders, crawlers, robots, indexers, bots, viruses or worms, or any program which may make multiple server requests per second, or unduly burden or hinder the operation and/or performance of the Uber Services; or (iv) attempt to gain unauthorized access to the Uber Services or its related systems or networks.

5.3     **Ownership**. The Uber Services, Provider App and Company Data, including all intellectual property rights therein, and the Company Devices are and shall remain (as between you and Company) the property of Company, its Affiliates or their respective licensors. Neither this Agreement nor your use of the Uber Services, Provider App or Company Data conveys or grants to you any rights) in or related to the Uber Services, Provider App or Company Data, except for the limited license granted above. Other than as specifically permitted by the Company in connection with the Uber Services, you are not permitted to use or reference in any manner Company's, its Affiliates', or their respective licensors' company names, logos, products and service names, trademarks, service marks, trade dress, copyrights, or other indicia of ownership, alone and in combination with other letters, punctuation, words, symbols and/or designs (the "UBER Marks and Names") for any commercial purposes. You agree that you will not try to register or otherwise use and/or claim ownership in any of the UBER Marks and Names, alone or in combination with other letters, punctuation, words, symbols and/or designs, or in any confusingly similar mark, name or title, for any goods and services.

6.     **Confidentiality**

6.1     Each party acknowledges and agrees that in the performance of this Agreement it may have access to or may be exposed to, directly or indirectly, confidential information of the other party ("*Confidential Information*"). Confidential Information includes Company Data, Provider IDs, User Information, Delivery Recipient Information, package information, and the transaction volume, marketing and business plans, business, financial, technical, operational and such other non-public information of each party (whether disclosed in writing or verbally) that such party designates as being proprietary or confidential or of which the other party should reasonably know that it should be treated as confidential.

6.2     Each party acknowledges and agrees that:  (a) all Confidential Information shall remain the exclusive property of the disclosing party; (b) it shall not use Confidential Information of the other party for any purpose except in furtherance of this Agreement; (c) it shall not disclose Confidential Information of the other party to any third party, except to its employees, officers, contractors, agents and service providers ("*Permitted Persons*") as necessary to perform under this Agreement, provided Permitted Persons are bound in writing to obligations of confidentiality and non-use of Confidential Information no less protective than the terms hereof; and (d) it shall return or destroy all Confidential Information of the disclosing party, upon the termination of this Agreement or at the request of the other party (subject to applicable law and, with respect to Company, its internal record-keeping requirements).

6.3     Notwithstanding the foregoing, Confidential Information shall not include any information to the extent it:  (a) is or becomes part of the public domain through no act or omission on the part of the receiving party; (b) was possessed by the receiving party prior to the date of this Agreement without an obligation of confidentiality; or (c) is disclosed to the receiving party by a third party having no obligation of confidentiality with respect thereto.

7.     **Privacy**

7.1     **Disclosure of Your Information**. Subject to applicable law, and notwithstanding Section 6.2, Company and its Affiliates may, but shall not be required to, provide to you, a User, a Delivery Recipient, an insurance company and/or relevant authorities and/or regulatory agencies any information (including personal information (*e.g.*, information obtained about you through any background check), Confidential Information, and any Company Data) about you or any Delivery Services provided hereunder if:  (a) there is a complaint, dispute or conflict, including an

10

accident, between you and a User or you and a Delivery Recipient; (b) it is necessary to enforce the terms of this Agreement; (c) it is required, in Company's or any Affiliate's sole discretion, by applicable law or regulatory requirements (*e.g.*, Company or its Affiliates receive a subpoena, warrant, or other legal process for information); or (d) it is necessary, in Company's or any Affiliate's sole discretion, to (1) protect the safety, rights, property or security of Company or its Affiliates, the Uber Services or any third party; (2) to protect the safety of the public for any reason including the facilitation of insurance claims related to the Uber Services; (3) to detect, prevent or otherwise address fraud, security or technical issues; (4) to prevent or stop activity which Company or any of its Affiliates, in their sole discretion, may consider to be, or to pose a risk of being, an illegal, unethical, or legally actionable activity); or (e) it is required or necessary, in Company's or any Affiliate's sole discretion, for insurance or other purposes related to your ability to qualify, or remain qualified, to use the Uber Services. You understand that Company may retain your personal data for legal, regulatory, safety and other necessary purposes after this Agreement is terminated.

7.2     Company and its Affiliates may collect your personal data during the course of your registration for, and use of, the Uber Services, or may obtain information about you from third parties. Such information may be stored, processed, transferred, and accessed by Company and its Affiliates, third parties, and service providers for business purposes, including for marketing, lead generation, service development and improvement, analytics, industry and market research, and such other purposes consistent with Company's and its Affiliates' legitimate business needs. You expressly consent to such use of personal data.

7.3     Company and its Affiliates collect and use your personal information as provided in the privacy statement located at www.uber.com/legal/privacy/drivers-us.

8.   **Insurance**

8.1     This Section 8.1 applies only if you use a motor vehicle to provide the Delivery Services.  You agree to maintain during the term of this Agreement on all motor vehicles operated by you under this Agreement automobile liability insurance that provides protection against bodily injury and property damage to third parties at levels of coverage that satisfy the minimum requirements to operate a motor vehicle on the public roads within the Territory. This coverage must also include any no-fault coverage required by law in the Territory that may not be waived by an insured. You agree to provide Company and its Affiliates a copy of the insurance policy, policy declarations, proof of insurance identification card and proof of premium payment for the insurance policy required in this Section 8.1 upon request. Furthermore, you must provide Company with written notice of cancellation of any insurance policy required by Company. Company shall have no right to control your selection or maintenance of your policy. You must be a named insured or individually rated driver, for which a premium is charged, on the insurance policy required in this Section 8.1 at all times.

8.2     **You agree to maintain during the term of this Agreement workers' compensation insurance as required by all applicable laws in the Territory. If permitted by applicable law, you may choose to insure yourself against industrial injuries by maintaining occupational accident insurance in place of workers' compensation insurance. Furthermore, if permitted by applicable law, you may choose not to insure yourself against industrial injuries at all, but do so at your own risk.**

8.3     You understand and acknowledge that your own insurance policy (*e.g.*, automobile or other liability insurance policy) may not afford liability, comprehensive, collision, medical payments,

personal injury protection, uninsured motorist, underinsured motorist, damage to property in your care, custody and control, or other coverage for the Delivery Services you provide pursuant to this Agreement. If you have any questions or concerns about the scope or applicability of your own insurance coverage, it is your responsibility, not that of Company, to resolve them with your insurer(s).

8.4    Company may maintain during the term of this Agreement insurance related to your provision of Delivery Services as determined by Company in its reasonable discretion, provided that Company and its Affiliates are not required to provide you with any specific insurance coverage for any loss to your Transportation Method or injury to you. You are required to promptly notify Company of any accidents that occur while providing Delivery Services and to cooperate and provide all necessary information related thereto.

9.    **Representations and Warranties; Disclaimers**

9.1    **By You**. You hereby represent and warrant that:  (a) you have full power and authority to enter into this Agreement and perform your obligations hereunder; (b) you have not entered into, and during the term will not enter into, any agreement that would prevent you from complying with this Agreement; and (c) you will comply with all applicable laws in your performance of this Agreement, including holding and complying with all permits, licenses, registrations and other governmental authorizations necessary to provide (i) Delivery Services using the Transportation Method pursuant to this Agreement, and (ii) delivery services to third parties in the Territory generally.

9.2    **Disclaimer of Warranties**. COMPANY AND ITS AFFILIATES PROVIDE, AND YOU ACCEPT, THE UBER SERVICES, PROVIDER APP AND THE COMPANY DEVICES ON AN "AS IS" AND "AS AVAILABLE" BASIS. COMPANY AND ITS AFFILIATES DO NOT REPRESENT, WARRANT OR GUARANTEE THAT YOUR ACCESS TO OR USE OF THE UBER SERVICES, PROVIDER APP OR THE COMPANY DEVICES:  (A) WILL BE UNINTERRUPTED OR ERROR FREE; OR (B) WILL RESULT IN ANY REQUESTS FOR DELIVERY SERVICES. COMPANY AND ITS AFFILIATES FUNCTION AS AN ON-DEMAND LEAD GENERATION AND RELATED SERVICE ONLY AND MAKE NO REPRESENTATIONS, WARRANTIES OR GUARANTEES AS TO THE ACTIONS OR INACTIONS OF USERS OR DELIVERY RECIPIENTS WHO MAY REQUEST OR RECEIVE DELIVERY SERVICES FROM YOU, AND COMPANY AND ITS AFFILIATES DO NOT SCREEN OR OTHERWISE EVALUATE USERS OR DELIVERY RECIPIENTS. BY USING THE UBER SERVICES AND PROVIDER APP, YOU ACKNOWLEDGE AND AGREE THAT YOU MAY BE INTRODUCED TO A THIRD PARTY THAT MAY POSE HARM OR RISK TO YOU OR OTHER THIRD PARTIES. YOU ARE ADVISED TO TAKE REASONABLE PRECAUTIONS WITH RESPECT TO INTERACTIONS WITH THIRD PARTIES ENCOUNTERED IN CONNECTION WITH THE USE OF THE UBER SERVICES OR PROVIDER APP. COMPANY DOES NOT REPRESENT, WARRANT OR GUARANTEE THE SAFETY OF ANY ITEMS PROVIDED TO YOU FOR DELIVERY SERVICES. NOTWITHSTANDING COMPANY'S APPOINTMENT AS THE LIMITED PAYMENT COLLECTION AGENT OF YOU FOR THE PURPOSE OF ACCEPTING PAYMENT FROM USERS ON YOUR BEHALF AS SET FORTH IN SECTION 4 ABOVE, COMPANY AND ITS AFFILIATES EXPRESSLY DISCLAIM ALL LIABILITY FOR ANY ACT OR OMISSION OF YOU, ANY USER, ANY DELIVERY RECIPIENT OR OTHER THIRD PARTY.

9.3    **No Service Guarantee**. COMPANY AND ITS AFFILIATES DO NOT GUARANTEE THE AVAILABILITY OR UPTIME OF THE UBER SERVICES OR PROVIDER APP. YOU ACKNOWLEDGE AND AGREE THAT

THE UBER SERVICES OR PROVIDER APP MAY BE UNAVAILABLE AT ANY TIME AND FOR ANY REASON (*e.g.*, DUE TO SCHEDULED MAINTENANCE OR NETWORK FAILURE). FURTHER, THE UBER SERVICES OR PROVIDER APP MAY BE SUBJECT TO LIMITATIONS, DELAYS, AND OTHER PROBLEMS INHERENT IN THE USE OF THE INTERNET AND ELECTRONIC COMMUNICATIONS, AND COMPANY AND ITS AFFILIATES ARE NOT RESPONSIBLE FOR ANY DELAYS, DELIVERY FAILURES, OR OTHER DAMAGES, LIABILITIES OR LOSSES RESULTING FROM SUCH PROBLEMS.

10.   **Indemnification**. You shall indemnify, defend (at Company's option) and hold harmless Company and its Affiliates and their respective officers, directors, employees, agents, successors and assigns from and against any and all liabilities, expenses (including legal fees), damages, penalties, fines, social security contributions and taxes arising out of or related to:  (a) your breach of your representations, warranties or obligations under this Agreement; or (b) a claim by a third party (including Users, Delivery Recipients, regulators and governmental authorities) directly or indirectly related to your provision of Delivery Services or use of the Uber Services. This indemnification provision shall not apply to your breach of any representations regarding your status as an independent contractor.

11.   **Limits of Liability.**  COMPANY AND ITS AFFILIATES SHALL NOT BE LIABLE UNDER OR RELATED TO THIS AGREEMENT FOR ANY OF THE FOLLOWING, WHETHER BASED ON CONTRACT, TORT OR ANY OTHER LEGAL THEORY, EVEN IF A PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES:  (i) ANY INCIDENTAL, PUNITIVE, SPECIAL, EXEMPLARY, CONSEQUENTIAL, OR OTHER INDIRECT DAMAGES OF ANY TYPE OR KIND; OR (ii) YOUR OR ANY THIRD PARTY'S PROPERTY DAMAGE OR LOSS, OR LOSS OR INACCURACY OF DATA, OR LOSS OF BUSINESS, REVENUE, PROFITS, USE OR OTHER ECONOMIC ADVANTAGE. EXCEPT FOR COMPANY'S OBLIGATIONS TO PAY AMOUNTS DUE TO YOU PURSUANT TO SECTION 4 ABOVE, BUT SUBJECT TO ANY LIMITATIONS OR OTHER PROVISIONS CONTAINED IN THIS AGREEMENT WHICH ARE APPLICABLE THERETO, IN NO EVENT SHALL THE LIABILITY OF COMPANY OR ITS AFFILIATES UNDER THIS AGREEMENT EXCEED THE AMOUNT OF SERVICE FEES ACTUALLY PAID TO OR DUE TO COMPANY HEREUNDER IN THE SIX (6) MONTH PERIOD IMMEDIATELY PRECEDING THE EVENT GIVING RISE TO SUCH CLAIM.

12.   **Term and Termination**

12.1   **Term**.  This Agreement shall commence on the date executed by you and shall continue until terminated as set forth herein. The parties acknowledge that the term of this Agreement does not reflect an uninterrupted service arrangement, as this Agreement guarantees you the right to choose when to make yourself available and each Delivery Service request you accept via the Provider App is treated as a separate service arrangement.

12.2   **Termination**. Either party may terminate this Agreement:  (a) for failure to timely cure a breach of this Agreement, upon seven (7) days prior written notice to the other party; (b) immediately, without notice, for the other party's material breach of this Agreement; or (c) immediately, without notice, in the event of the insolvency or bankruptcy of the other party, or upon the other party's filing or submission of request for suspension of payment (or similar action or event) against the terminating party. In addition, Company may terminate this Agreement or deactivate your Provider ID immediately, without notice, with respect to you in the event you no longer qualify, under applicable law or the standards and policies of Company and its Affiliates, to provide Delivery Services or to operate your Transportation Method, or as otherwise set forth in this Agreement.

12.3   **Effect of Termination**. Upon termination of the Agreement, you shall:  (a) promptly return to Company all Company Devices; and (b) immediately delete and fully remove the Provider App

from any of Your Devices. Outstanding payment obligations and Sections 1, 2.3, 2.5.3, 4.7, 4.8, 5.3, 6, 7, 9, 10, 11, 12.3, 13, 14 and 15 (including, but not limited to, Section 15.3) shall survive the termination of this Agreement.

13. **Relationship of the Parties**

13.1    Except as otherwise expressly provided herein with respect to Company acting as the limited payment collection agent solely for the purpose of collecting payment from Users on your behalf, **the relationship between the parties under this Agreement is solely that of independent contracting parties. The parties expressly agree that:  (a) this Agreement is not an employment agreement, nor does it create an employment relationship, between Company and you; and (b) no joint venture, partnership, or agency relationship exists between Company and you**.

13.2    You have no authority to bind Company or its Affiliates and you undertake not to hold yourself out as an employee, agent or authorized representative of Company or its Affiliates. Where, by implication of mandatory law or otherwise, you may be deemed an agent or representative of Company, you undertake and agree to indemnify, defend (at Company's option) and hold Company and its Affiliates harmless from and against any claims by any person or entity based on such implied agency or representative relationship.

14. **Miscellaneous Terms**

14.1    **Modification**.  Any modifications that the Company makes to the terms and conditions of this Agreement shall be binding on you only upon your execution of the modified Agreement, except as otherwise specifically provided herein.

However, Company reserves the right to modify any information referenced at hyperlinks from this Agreement from time to time. You hereby acknowledge and agree that, by continuing to use the Uber Services, or downloading, installing or using the Provider App after such modifications are made, you are bound by any future modifications to information referenced in those hyperlinks.

14.2    **Supplemental Terms**. Supplemental terms may apply to your use of the Uber Services, such as use policies or terms related to certain features and functionality, which may be modified from time to time ("*Supplemental Terms*"). You may be presented with certain Supplemental Terms from time to time. Supplemental Terms are in addition to, and shall be deemed a part of, this Agreement. Supplemental Terms shall prevail over this Agreement in the event of a conflict.

14.3    **Severability**. If any provision of this Agreement is or becomes invalid or non-binding, the parties shall remain bound by all other provisions hereof. Any invalid or non-binding provision shall be severed or restricted, in order to preserve as much of the parties' Agreement as possible and in light of the contents and purpose of this Agreement.

14.4    **Assignment**. Neither party shall assign or transfer this Agreement or any of its rights or obligations hereunder, in whole or in part, without the prior written consent of the other party; provided that Company may assign or transfer this Agreement or any or all of its rights or obligations under this Agreement from time to time without consent:  (a) to an Affiliate; or (b) to an acquirer of all or substantially all of Company's business, equity or assets.

14.5    **Entire Agreement**. This Agreement, including all Supplemental Terms, constitutes the entire agreement and understanding of the parties with respect to its subject matter and replaces and

supersedes all prior or contemporaneous agreements or undertakings regarding such subject matter. In this Agreement, the words "including" and "include" mean "including, but not limited to." The recitals form a part of this Agreement.

14.6    **No Third Party Beneficiaries**. There are no third party beneficiaries to this Agreement, except as expressly set forth in the Arbitration Provision in Section 15.3. Other than as provided in Section 15.3, nothing contained in this Agreement is intended to or shall be interpreted to create any third-party beneficiary claims.

14.7    **Notices**.  Any notice delivered by Company to you under this Agreement will be delivered by email to the email address associated with your account, by posting on the portal available to you on the Uber Services, or via the Provider App. Any notice delivered by you to Company under this Agreement will be delivered by contacting Company at http://partners.uber.com in the "Contact Us" section. Additional Territory-specific notices may be required from time to time.

15.  **Governing Law; Arbitration**

15.1    Except as otherwise stated in Section 15.3, the interpretation of this Agreement shall be governed by the law of the state in which you perform the majority of the Delivery Services (or if you have never performed Delivery Services, the law of the state in which you reside), without regard to the choice or conflicts of law provisions of any jurisdiction.

Any disputes, actions, claims or causes of action arising out of or in connection with this Agreement or the Uber Services that are not subject to the arbitration clause contained in Section 15.3 shall be subject to the exclusive jurisdiction of the state and federal courts located in those jurisdictions where you perform the majority of the Delivery Services (or if you have never performed Delivery Services, the jurisdiction in which you reside).

These provisions do not apply to the arbitration clause in Section 15.3, the delegation clause in Section 15.3, or any arbitrable disputes defined in Section 15.3.  Instead, as described in Section 15.3, the Federal Arbitration Act shall apply to such disputes or, if the FAA is found not to apply to such disputes, the state law governing arbitration agreements in the state in which the majority of your Delivery Services are provided shall apply (or if you have never performed Delivery Services, the state in which you reside).

The failure of Company to enforce any right or provision in this Agreement shall not constitute a waiver of such right or provision unless acknowledged and agreed to by Company in writing.

15.2    Other than disputes regarding the intellectual property rights of the parties and other claims identified in Section 15.3.ii, any disputes, actions, claims or causes of action arising out of or in connection with this Agreement or the Uber Services shall be subject to arbitration pursuant to Section 15.3.

**15.3    Arbitration Provision**

Important Note Regarding this Arbitration Provision:

- Except as otherwise provided below, arbitration does not limit or affect the legal claims you may bring against the Company.  Agreeing to arbitration only affects where any such claims may be brought and how they will be resolved.

- Arbitration is a process of private dispute resolution that does not involve the civil courts, a civil judge, or a jury.  Instead, the parties' dispute is decided by a private arbitrator selected by the parties using the process set forth herein.  Other arbitration rules and procedures are also set forth herein.

- In arbitration, you will not be required to bear any type of fee or expense that you would not be required to bear if you filed the action in a court of law.

- IMPORTANT: Except as otherwise provided below, this Arbitration Provision will require you to resolve any claim that you may have against the Company or Uber on an individual basis.  Except as otherwise provided below, this provision will also preclude you from initiating, participating in, or recovering any relief in a class, collective, or representative action against the Company, Uber, or Uber's Affiliates.  The availability of claims or actions under the Private Attorneys General Act of 2004, California Labor Code § 2698 et seq. ("PAGA") is addressed separately below in the "Private Attorneys General Act" section.

- If you do not wish to be subject to this Arbitration Provision, you may opt out of the Arbitration Provision by following the instructions provided in Section 15.3(viii).

- ***Cases have been filed against Uber and its Affiliates and may be filed in the future involving claims by Users of Uber Services.  You should assume that there are now, and may be in the future, lawsuits against the Company, Uber, or Uber's Affiliates alleging class, collective, and/or representative claims on your behalf, including but not limited to claims related to tips, reimbursement of expenses, and employment status.  Such claims, if successful, could result in some monetary recovery to you.***

  - These cases now include, for example:  *Zawada v. Uber Technologies, Inc. et al.*, Case No. 2:16-cv-11334 (Eastern District of Michigan); *Suarez v. Uber Technologies, Inc.*, Case No. 16-13263 (United States Court of Appeals for the 11th Circuit), District Court Case No. 8:16-cv-00166 (Middle District of Florida); *Carey v. Uber Technologies, Inc.*, Case No. 1:16-cv-01058 (Northern District of Ohio); *Lamour v. Uber Technologies, Inc.*, Case No. 16-cv-21449 (Southern

District of Florida); *Olivares v. Uber Technologies, Inc.*, Case No. 16-cv-06062 (Northern District of Illinois); *In re Uber FCRA Litig.*, Case No. 3:14-CV-05200-EMC (Northern District of California); and *Yucesoy v. Uber Technologies, Inc., et al.*, Case No. 3:15-cv-00262-EMC (Northern District of California**). This is not an exhaustive list, but is intended only to illustrate that cases have been or may be filed in the future that allege class, collective, and/or representative claims on your behalf.**

o The mere existence of these class, collective, and/or representative lawsuits does not mean that such lawsuits will ultimately succeed.  But if you do agree to and do not opt out of this Arbitration Provision, you are agreeing in advance, except as otherwise provided in Sections 15.3(ii) and 15.3(v), that you will not participate in and therefore, will not seek to recover monetary or other relief under any such lawsuit.  If you agree to this Arbitration Provision, you will not be precluded from bringing your claims against the Company or Uber in an individual arbitration proceeding.

**WHETHER TO AGREE TO ARBITRATION IS AN IMPORTANT BUSINESS DECISION. IT IS YOUR DECISION TO MAKE, AND YOU SHOULD NOT RELY SOLELY UPON THE INFORMATION PROVIDED IN THIS AGREEMENT AS IT IS NOT INTENDED TO CONTAIN A COMPLETE EXPLANATION OF THE CONSEQUENCES OF ARBITRATION.  YOU SHOULD TAKE REASONABLE STEPS TO CONDUCT FURTHER RESEARCH AND TO CONSULT WITH OTHERS — INCLUDING BUT NOT LIMITED TO AN ATTORNEY — REGARDING THE CONSEQUENCES OF YOUR DECISION, JUST AS YOU WOULD WHEN MAKING ANY OTHER IMPORTANT BUSINESS OR LIFE DECISION.**

     i. <u>How This Arbitration Provision Applies</u>.

This Arbitration Provision is governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. (the "FAA"). Except as it otherwise provides, this Arbitration Provision applies to any dispute, past, present or future, arising out of or related to this Agreement or formation or termination of the Agreement and survives after the Agreement terminates.  Nothing contained in this Arbitration Provision shall be construed to prevent or excuse you from utilizing any informal procedure for resolution of complaints established in this Agreement (if any), and this Arbitration Provision is not intended to be a substitute for the utilization of such procedures.  This agreement shall be governed by the FAA even in the event this Arbitration Provision is found to be exempt from the FAA as a matter of law.  Any disputes in this regard shall be resolved exclusively by an arbitrator.  In the event the arbitrator determines the FAA does not apply, the state law governing arbitration agreements in the state in which the majority of your Delivery Services are provided shall apply (or if you have never performed Delivery Services, the state in which you reside).

**Except as it otherwise provides, this Arbitration Provision is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law or before any forum other than arbitration, with the exception of proceedings that must be exhausted under applicable law before**

**pursuing a claim in a court of law or in any forum other than arbitration.  Except as it otherwise provides, this Arbitration Provision requires all such disputes to be resolved only by an arbitrator through final and binding arbitration on an individual basis only and not by way of court or jury trial, or by way of class, collective, or representative action.**

Except as provided in Section 15.3(v), below, regarding the Class Action Waiver and PAGA Waiver, such disputes include disputes arising out of or relating to interpretation, application, enforceability, revocability or validity of this Arbitration Provision, or any portion of the Arbitration Provision.  This also includes disputes regarding whether the Arbitration Provision is governed by the FAA.  All such matters shall be decided by an Arbitrator and not by a court or judge. As set forth in Section 15.3(v), the preceding sentences in this paragraph shall not apply to disputes relating to the Class Action Waiver or PAGA Waiver, defined below, including their interpretation, enforceability, revocability or validity.

Except as it otherwise provides, this Arbitration Provision also applies  to all disputes between you and the Company or Uber, as well as all disputes between you and the Company's or Uber's fiduciaries, administrators, affiliates, subsidiaries, parents, and all successors and assigns of any of them, including but not limited to any disputes arising out of or related to this Agreement and disputes arising out of or related to your relationship with the Company or Uber, including the formation or termination of the relationship.  Except as it otherwise provides, this Arbitration Provision also applies to disputes regarding any city, county, state or federal wage-hour law, trade secrets, unfair competition, compensation, breaks and rest periods, expense reimbursement, termination, harassment, retaliation, discrimination, and claims arising under the Uniform Trade Secrets Act, Civil Rights Act of 1964, Americans With Disabilities Act, Age Discrimination in Employment Act, Family Medical Leave Act, Fair Labor Standards Act, Employee Retirement Income Security Act (except for individual claims for employee benefits under any benefit plan sponsored by the Company and covered by the Employee Retirement Income Security Act of 1974 or funded by insurance), Genetic Information Non-Discrimination Act, and state statutes, if any, addressing the same or similar subject matters, and all other similar federal, state and/or local statutory and common law claims.

This Arbitration Provision is intended to require arbitration of every claim or dispute that lawfully can be arbitrated, except for those claims and disputes which by the terms of this Arbitration Provision are expressly excluded from arbitration.

Uber Technologies, Inc. is an intended third-party beneficiary of this Agreement and the Arbitration Provision.  As used in this Arbitration Provision, "the Company" shall be deemed to include Uber Technologies, Inc.

ii.    <u>Limitations On How This Arbitration Provision Applies</u>.

The disputes, claims, and requests for relief set forth below shall not be subject to arbitration and the requirement to arbitrate set forth in this Arbitration Provision shall not apply:

- Claims for workers compensation, state disability insurance and unemployment insurance benefits;

- Disputes that are not permitted to be subject to a pre-dispute arbitration agreement pursuant to applicable Federal law or Executive Order;

- If a court of competent jurisdiction finds the PAGA Waiver set forth below in Section 15.3(v) to be unenforceable or invalid for any reason, representative claims brought under the Private Attorneys General Act of 2004, California Labor Code § 2698 et seq. ("PAGA");

- Disputes regarding your, the Company's, or Uber's intellectual property rights.

Furthermore, nothing in this Arbitration Provision prevents you from making a report to or filing a claim or charge with the Equal Employment Opportunity Commission, U.S. Department of Labor, Securities Exchange Commission, National Labor Relations Board, or Office of Federal Contract Compliance Programs, and nothing in this Agreement or Arbitration Provision prevents the investigation by a government agency of any report, claim or charge otherwise covered by this Arbitration Provision. Nothing in this Arbitration Provision shall be deemed to preclude or excuse a party from bringing an administrative claim before any agency in order to fulfill the party's obligation to exhaust administrative remedies before making a claim in arbitration.


iii.   <u>Selecting The Arbitrator and Location of the Arbitration</u>.

The Arbitrator shall be selected by mutual agreement of the Company and you.  Unless you and the Company mutually agree otherwise, the Arbitrator shall be an attorney licensed to practice in the location where the arbitration proceeding will be conducted or a retired federal or state judicial officer who presided in the jurisdiction where the arbitration will be conducted.  If the parties cannot agree on an Arbitrator, then an arbitrator will be selected using the alternate strike method from a list of five (5) neutral arbitrators provided by JAMS (Judicial Arbitration & Mediation Services).  You will have the option of making the first strike.  If a JAMS arbitrator is used, then the JAMS Streamlined Arbitration Rules & Procedures rules will apply; however, if there is a conflict between the JAMS Rules and this Arbitration Provision, this Arbitration Provision shall govern.  Those rules are available here:

http://www.jamsadr.com/rules-streamlined-arbitration/

The location of the arbitration proceeding shall be no more than 45 miles from the place where you provide the majority of your Delivery Services under this Agreement (or if you have never performed Delivery Services, from the city in which you reside), unless each party to the arbitration agrees in writing otherwise.

iv.   <u>Starting The Arbitration</u>.

All claims in arbitration are subject to the same statutes of limitation that would apply in court.  The party bringing the claim must demand arbitration in writing and deliver the written demand by hand or first class mail to the other party within the applicable statute of limitations period.  The demand for arbitration shall include identification of the parties, a statement of the legal and factual basis of the claim(s), and a specification of the remedy sought. Any demand for arbitration made to the Company or Uber shall be provided to the following address: Legal, Portier, LLC, 1455 Market St., Ste. 400, San Francisco CA 94103.  The arbitrator shall resolve all disputes regarding the timeliness or propriety of the demand for arbitration.  A party may apply to a court of competent jurisdiction for temporary or preliminary injunctive relief in connection with an arbitrable controversy, but only upon the ground that the award to which that party may be entitled may be rendered ineffectual without such provisional relief.

v.   <u>How Arbitration Proceedings Are Conducted</u>.

In arbitration, the parties will have the right to conduct adequate civil discovery, bring dispositive motions, and present witnesses and evidence as needed to present their cases and defenses, and any disputes in this regard shall be resolved by the Arbitrator.

**You and the Company agree to resolve any dispute that is in arbitration and subject to this Arbitration Provision on an individual basis only, and not on a class, collective action, or representative basis ("Class Action Waiver"). The Arbitrator shall have no authority to consider or resolve any claim or issue any relief on any basis other than an individual basis**. **The Arbitrator shall have no authority to consider or resolve any claim or issue any relief on a class, collective, or representative basis.** The term "representative" in this paragraph includes all representative actions that are subject to this Arbitration Provision, except for claims or actions under the Private Attorneys General Act of 2004, California Labor Code § 2698 et seq. ("PAGA").  Your ability to assert, participate in, or obtain recovery for PAGA claims or actions is addressed separately below in the subsection entitled "Private Attorneys General Act." Notwithstanding any other provision of this Arbitration Provision, the Agreement, or the JAMS Streamlined Arbitration Rules & Procedures, disputes regarding the enforceability, revocability or validity of the Class Action Waiver may be resolved only by a civil court of competent jurisdiction and not by an arbitrator. In any case in which (1) the dispute is filed as a class, collective, or representative action and (2) there is a final judicial determination that all or part of the Class Action Waiver is unenforceable, the class, collective, and/or representative action to that extent must be litigated in a civil court of competent jurisdiction, but the portion of the Class Action Waiver that is enforceable shall be enforced in arbitration.

While the Company will not take any retaliatory action in response to any exercise of rights you may have under Section 7 of the National Labor Relations Act, if any, the Company shall not be precluded from moving to enforce its rights under the FAA to compel arbitration on the terms and conditions set forth in this Arbitration Provision.

**<u>Private Attorneys General Act</u>.**

To the extent permitted by law, you and Company agree not to bring a representative action on behalf of others under the Private Attorneys General Act of 2004, California Labor Code § 2698 et seq. ("PAGA"), in any court or in arbitration. This waiver shall be referred to as the "PAGA Waiver."

Notwithstanding any other provision of this Agreement or the Arbitration Provision, the validity of the PAGA Waiver may be resolved only by a civil court of competent jurisdiction and not by an arbitrator.

If the PAGA Waiver is found to be unenforceable or unlawful for any reason, (1) the unenforceable provision shall be severed from this Arbitration Provision; (2) severance of the unenforceable provision shall have no impact whatsoever on the Arbitration Provision or the Parties' attempts to arbitrate any remaining claims on an individual basis pursuant to the Arbitration Provision; and (3) any representative actions brought under the PAGA must be litigated in a civil court of competent jurisdiction in accordance with Section 15.3(ii) of this  Arbitration Provision. If the PAGA Waiver is found to be unenforceable or unlawful for any reason, the Parties agree that the litigation of any representative PAGA claims in a civil court of competent jurisdiction shall be stayed, pending the outcome of any individual claims in arbitration.

vi.  <u>Paying For The Arbitration</u>.

Each party will pay the fees for his, her or its own attorneys, subject to any remedies to which that party may later be entitled under applicable law (i.e., a party prevails on a claim that provides for the award of reasonable attorney fees to the prevailing party).  In all cases where required by law or by agreement of Company or its Affiliates, the Company will pay the Arbitrator's and arbitration fees. If under applicable law the Company is not required to pay all of the Arbitrator's and/or arbitration fees, you will not be required to bear any type of fee or expense that you would not be required to bear if you had filed the action in a court of law. Any disputes in that regard will be resolved by the Arbitrator as soon as practicable after the Arbitrator is selected, and Company shall bear all the Arbitrator's and arbitration fees until such time as the Arbitrator resolves any such dispute.

vii.  <u>The Arbitration Hearing And Award</u>.

The parties will arbitrate their dispute before the Arbitrator, who shall confer with the parties regarding the conduct of the hearing and resolve any disputes the parties may have in that regard.  Within 30 days of the close of the arbitration hearing, or within a longer period of time as agreed to by the parties or as ordered by the Arbitrator, any party will have the right to prepare, serve on the other party and file with the Arbitrator a brief.  The Arbitrator may award any party any remedy to which that party is entitled under applicable law, but such remedies shall be limited to those that would be available to a party in his or her individual capacity in a court of law for the claims presented to and decided by the Arbitrator, and no remedies that otherwise would be available to an individual in a court of law will be forfeited by virtue of this Arbitration Provision.  The Arbitrator will issue a decision or award in writing, stating the essential findings of fact and conclusions of law.  A court of competent jurisdiction shall have the authority to enter a judgment upon the award made pursuant to the arbitration.

**viii.  <u>Your Right To Opt Out Of Arbitration</u>.**

**Arbitration is not a mandatory condition of your contractual relationship with the Company.  If you do not want to be subject to this Arbitration Provision, you may opt out of this Arbitration Provision by notifying the Company in writing of your desire to opt out of this Arbitration Provision, either by (1) sending, within 30 days of the date this Agreement is executed by you, electronic mail to <u>optout-portier@uber.com</u>, either from the email address associated with your delivery provider account or identifying that email address in the body of the email, stating your name and clearly indicating your intent to opt out of the Arbitration Provision or (2) by sending a letter by U.S. Mail, or by any nationally recognized delivery service (*e.g*, UPS, Federal Express, etc.), or by hand delivery to:**

> **Legal**
> **Portier, LLC**
> **1455 Market St., Ste. 400**
> **San Francisco CA 94103**

**In order to be effective, the letter under option (2) must clearly indicate your intent to opt out of this Arbitration Provision, and must be dated and personally signed. The envelope containing the signed letter must be received (if delivered by hand) or post-marked within 30 days of the date this**

Agreement is executed by you.  Your writing opting out of this Arbitration Provision, whether sent by option (1) or (2), will be filed with a copy of this Agreement and maintained by the Company.

Your decision to opt out of this Arbitration Provision will relieve you only of your obligation to arbitrate the disputes specified in this Arbitration Provision, and does not relieve you of any obligation to arbitrate disputes that might arise under any other arbitration agreements to which you and the Company, Uber, or any of Uber's Affiliates may be bound.  Similarly, your decision to opt out of another arbitration provision contained in any other agreement shall not relieve your obligation to arbitrate disputes pursuant to this Arbitration Provision.

You acknowledge and agree that if Company modifies any provision of this Agreement other than a provision in Section 15.3, you will not have a renewed opportunity to opt out of arbitration.  You further acknowledge and agree that if Company modifies (1) the addresses for hand delivery, mailing, or electronic mailing of opt-out notices identified in this Arbitration Provision, or (2) the portion of this Arbitration Provision listing the illustrative class, putative, and/or representative cases pending against Uber and Uber's Affiliates, you will not have a renewed opportunity to opt of arbitration.  If, however, Company modifies any provision of this Arbitration Provision other than (1) the addresses for hand delivery, mailing, or electronic mailing of opt-out notices or (2) the illustrative class, putative, and/or representative cases pending against Uber and Uber's Affiliates, you will have a renewed opportunity to opt out of arbitration.  In such circumstances, the 30-day opt out period will begin to run upon your execution of the modified Agreement. Changes to any information referenced at hyperlinks from the Agreement or Arbitration Provision shall not create a renewed opportunity to opt-out.

Should you not opt out of this Arbitration Provision within the 30-day period, you and the Company shall be bound by the terms of this Arbitration Provision.  You have the right to consult with counsel of your choice concerning this Arbitration Provision.  You understand that you will not be subject to retaliation if you exercise your right to assert claims or opt-out of coverage under this Arbitration Provision.

      ix.   <u>Full and Complete Agreement Related to Formal Resolution of Disputes; Enforcement Of This Arbitration Provision</u>.

This Arbitration Provision is the full and complete agreement relating to the formal resolution of disputes arising out of or related to this Agreement and/or arising out or related to any Delivery Services you may provide using the Uber Services.  In the event any portion of this Arbitration Provision is deemed unenforceable or invalid, the unenforceable or invalid provision or provisions shall be restricted or severed from this Arbitration Provision, in order to preserve as much of the parties' Arbitration Provision as possible.

By clicking "Yes, I agree" or signing below (as such may be required by applicable law), you expressly acknowledge that you have read, understood, and taken steps to thoughtfully consider the consequences of this Agreement, that you agree to be bound by the terms and conditions of the Agreement and have knowingly executed it, and that you are legally competent to enter into this Agreement with Company.

By you clicking "Yes, I accept," or signing below (as such may be required by applicable law), the Company will be deemed to have agreed to be bound by this Agreement.


Your Signature: _____

Name: _____

Date: _____