1   XAVIER BECERRA
    Attorney General of California
2   TAMAR PACHTER
    Supervising Deputy Attorney General
3   JOSE A. ZELIDON-ZEPEDA
    Deputy Attorney General
4   State Bar No. 227108
     455 Golden Gate Avenue, Suite 11000
5    San Francisco, CA  94102-7004
     Telephone:  (415) 510-3879
6    Fax:  (415) 703-1234
     E-mail:  Jose.ZelidonZepeda@doj.ca.gov
7   *Attorneys for the State of California and Attorney*
    *General Xavier Becerra, in his official capacity*
8

9               IN THE UNITED STATES DISTRICT COURT

10           FOR THE CENTRAL DISTRICT OF CALIFORNIA

11                      WESTERN DIVISION

12

13

14
    | | |
    |---|---|
    | **LYDIA OLSON; et al.,** | 2:19-CV-10956-DMG-RAO |
    | Plaintiffs, | **DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION** |
    | **v.** | |
    | **STATE OF CALIFORNIA; et al.,** | Date: February 7, 2020 |
    | Defendants. | Time: 2:00 P.M. |

15

16

17

18   Date:         February 7, 2020
     Time:         2:00 P.M.
19   Courtroom:    8C, 8th Floor
     Judge:        Hon. Dolly M. Gee
20   Trial Date:   None set
     Action Filed: December 30, 2019

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

Introduction ................................................................................................ 1

Background ................................................................................................. 2

    A. *Dynamex* and AB 5 .......................................................................... 2

    B.  Allegations of the Complaint .......................................................... 4

Legal Standard ........................................................................................... 5

Argument ................................................................................................... 6

    I.  Plaintiffs Are Unlikely to Succeed on the Merits of Their Equal
    Protection Claim. ..................................................................................... 6

        A.  Under Applicable Rational Basis Review, Plaintiffs' Equal
        Protection Claims Fail ...................................................................... 6

        B.  Opinions Expressed in News Reports and Social Media
        Commentary Are Not Grounds for an Equal Protection Claim. ......... 8

        C.  AB 5's Limited Exemptions Do Not Support Plaintiffs'
        Equal Protection Claim. .................................................................... 11

    II.  Plaintiffs Are Unlikely to Succeed on the Merits of Their Due
    Process and Contract Clause Claims. ..................................................... 13

        A.  AB 5 Properly Regulates Employment Rights and
        Relationships Generally, Not Choice of Occupation. ....................... 13

        B.  The Contract Clause Does Not Insulate Business from
        Regulation or Regulatory Change. .................................................... 15

    III.  Plaintiffs' Delay in Seeking Injunctive Relief Undermines Their
    Claim of Irreparable Harm, and the Balance of Equities Tips in
    Defendants' Favor. ................................................................................ 17

    IV.  The Public Interest Weighs Against a Preliminary Injunction. ............. 20

Conclusion ................................................................................................ 22

# TABLE OF AUTHORITIES

**Page**

**CASES**

*3570 East Foothill Blvd., Inc. v. City of Pasadena*
  912 F. Supp. 1257 (C.D. Cal. 1995).................................................6

*Alexander v. FedEx Ground Package Sys., Inc.*
  765 F.3d 981 (9th Cir. 2014).......................................................14, 16

*Alliance for the Wild Rockies v. Cottrell*
  632 F.3d 1127 (9th Cir. 2011)........................................................6

*Allied Concrete & Supply Co. v. Baker*
  904 F.3d 1053 (9th Cir. 2018).......................................................12

*Anderson v. U.S.*
  612 F.2d 1112 (9th Cir. 1979)...................................................6, 20

*Angelotti Chiropractic v. Baker*
  791 F.3d 1075 (9th Cir. 2015).......................................................11

*Burford v. Sun Oil Co.*
  319 U.S. 315 (1943) ................................................................22

*City of Cleburne v. Cleburne Living Ctr.*
  473 U.S. 432 (1985) ...............................................................6, 7

*Coalition for Econ. Equity v. Wilson*
  122 F.3d 718 (9th Cir. 1997).......................................................20

*Conn v. Gabbert*
  526 U.S. 286 (1999) ...............................................................13

*Cornwell v. Hamilton*
  80 F. Supp. 2d 1101 (S.D. Cal. 1999) .............................................14

*Cotter v. Lyft, Inc.*
  60 F. Supp. 3d 1067 (N.D. Cal. 2015)..............................................5

*Doe v. Uber Technologies, Inc.*
  184 F. Supp. 3d 774 (N.D. Cal. 2016)...........................................5, 16

1
2

**TABLE OF AUTHORITIES**
**(continued)**

Page

3
4

*Dymo Indus., Inc. v. Tapeprinter, Inc.*
  326 F.2d 141 (9th Cir. 1964) ................................................................. 5

5
6

*Dynamex Operations West v. Superior Court*
  4 Cal. 5th 903 (Cal. 2018) ........................................................... *passim*

7
8

*Energy Reserves Grp., Inc. v. Kansas Power & Light Co.*
  459 U.S. 400 (1983) .................................................................. 15, 16

9

*Engquist v. Or. Dep't of Agric.*
  478 F.3d 985 (9th Cir. 2007) .............................................................. 14

10
11

*Erotic Serv. Provider Legal Educ. and Research Project v. Gascon*
  880 F.3d 450 (9th Cir. 2018) .............................................................. 14

12
13

*FCC v. Beach Communications, Inc.*
  508 U.S. 307 (1993) ................................................................... 7, 8

14
15

*First Franklin Fin. Corp. v. Franklin First Fin. Ltd.*
  356 F. Supp. 2d 1048 (N.D. Cal. 2005) ................................................... 19

16
17

*Fort Halifax Packing Co., Inc. v. Coyne*
  482 U.S. 1 (1987) ...................................................................... 17

18
19

*Fowler Packing Co., Inc. v. Lanier*
  844 F.3d 809 (9th Cir. 2016) ......................................................... 11, 12

20

*Franceschi v. Yee*
  887 F.3d 927 (9th Cir. 2018) ......................................................... 13, 14

21
22

*Fund for Animals v. Lujan*
  962 F.2d 1391 (9th Cir. 1992) ............................................................ 21

23
24

*Gallinger v. Becerra*
  898 F.3d 1012 (9th Cir. 2018) .......................................................... 9, 11

25
26

*Ganley v. Claeys*
  2 Cal. 2d 266 (Cal. 1935) ................................................................ 14

27
28

*Golden Gate Restaurant Ass'n v. City & Cty. of San Francisco*
  512 F.3d 1112 (9th Cir. 2008) ........................................................ 20, 22

1

2

## TABLE OF AUTHORITIES
### (continued)

**Page**

3

*Halverson v. Skagit Cty.*

4

    42 F.3d 1257 (9th Cir. 1994) ................................................................. 13

5

*Hardesty v. Sacramento Metro. Air Quality Mgmt. Dist.*

    307 F. Supp. 3d 1010 (E.D. Cal. 2018) ............................................... 14

6

7

*Hertzberg v. Dignity Partners, Inc.*

    191 F.3d 1076 (9th Cir. 1999) ................................................................. 9

8

9

*In re Kelly*

    841 F.2d 908 (9th Cir. 1988) ................................................................... 9

10

11

*K-2 Ski Co. v. Head Ski Co.*

    467 F.2d 1087 (9th Cir. 1972) ........................................................... 4, 16

12

13

*Kiva Health Brands LLC v. Kiva Brands Inc.*

    402 F. Supp.3d 877 (N.D. Cal. 2019) ................................................... 19

14

15

*Kobell v. Suburban Lines, Inc.*

    731 F.2d 1076 (3d Cir. 1984) ............................................................... 19

16

17

*Manduley v. Super. Ct.*

    27 Cal. 4th 537 (Cal. 2002) ..................................................................... 8

18

19

*Maryland v. King*

    567 U.S. 1301 (2012) ..................................................................... 20, 22

20

*Metromedia Broad. Corp. v. MGM/UA Entm't Co, Inc.*

    611 F. Supp. 415 (C.D. Cal. 1985) ....................................................... 19

21

22

*Mountain Water Co. v. Montana Dep't of Pub. Serv. Regulation*

    919 F.2d 593 (9th Cir. 1990) ................................................................. 10

23

24

*Narayan v. EGL, Inc.*

    616 F.3d 895 (9th Cir. 2010) ................................................................. 16

25

26

*Nordlinger v. Hahn*

    505 U.S 1 (1992) ............................................................................... 7, 8

27

28

*O'Connor v. Uber Technologies, Inc.*

    82 F. Supp. 3d 1133 (N.D. Cal. 2015)............................................... 5, 16

**TABLE OF AUTHORITIES**
(continued)

Page

*Miller for and on behalf of N.L.R.B. v. Cal. Pac. Medic. Ctr.*
   991 F.2d 536 (9th Cir. 1993) ................................................................ 19

*Owens v. City of Signal Hill*
   154 Cal. App. 3d 123 (Cal. Ct. App. 1984) ........................................ 15

*People v. Cruz*
   207 Cal. App. 4th 664 (Cal. Ct. App. 2012) ........................................ 8

*Prime Healthcare Services, Inc. v. Harris*
   No. 16-cv-00778-GPS, 2017 WL 3525169 (S.D. Cal. Aug. 16,
   2017) ...................................................................................................... 12

*Pro-Eco, Inc. v. Board of Comm'rs of Jay Cty., Ind.*
   57 F.3d 505 (7th Cir. 1995) ................................................................... 9

*Purdy & Fitzpatrick v. State*
   71 Cal. 2d 566 (Cal. 1969) .................................................................. 14

*Romer v. Evans*
   517 U.S. 620 (1996) ............................................................................. 10

*RUI One Corp. v. City of Berkeley*
   371 F.3d 1137 (9th Cir. 2004) ....................................................... 8, 17

*Sanchez v. City of Reno*
   914 F. Supp. 2d 1079 (E.D. Cal. 2012) ............................................ 15

*Stormans, Inc. v. Selecky*
   586 F.3d 1109 (9th Cir. 2009) ....................................................... 6, 21

*Truax v. Raich*
   239 U.S. 33 (1915) .............................................................................. 14

*U.S. Dep't of Agriculture v. Moreno*
   413 U.S. 528 (1973) ............................................................................. 10

*U.S. v. Ninety Three Firearms*
   330 F.3d 414 (6th Cir. 2003) ................................................................ 9

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*U.S. v. Wilde*
  74 F. Supp. 3d 1092 (N.D. Cal. 2014)................................................................. 10

*U.S.A. Express Cab, LLC v. City of San Jose*
  No. C-07-06171-RMW, 2007 WL 4612926 (N.D. Cal. Dec. 31,
  2007)...................................................................................................................... 4

*Washington Health Care Ass'n v. Arnold-Williams*
  601 F. Supp. 2d 1224 (W.D. Wash. 2009) ......................................................... 15

*Weinberger v. Romero-Barcelo*
  456 U.S. 305 (1982) ........................................................................................... 21

*Western States Trucking Ass'n v. Schoorl*
  377 F. Supp. 3d 1056 (E.D. Cal. 2019) ....................................................... 15, 18

*Winter v. Nat. Res. Def. Council, Inc.*
  555 U.S. 7 (2008) ............................................................................................. 5, 6

**STATUTES**

California Labor Code
  § 2750.3(a)(1)................................................................................................... 3, 8
  § 2750.3(b)...................................................................................................... 3, 12
  § 3351(i) ........................................................................................................... 3, 8

**CONSTITUTIONAL PROVISIONS**

California Constitution ..................................................................................... 8, 15

United States Constitution
  Fourteenth Amendment.................................................................................*passim*
  Article I, § 10, cl. 1 ......................................................................................... 15, 17

**OTHER AUTHORITIES**

California Assembly Bill 5 (AB 5)
  § 1(c)........................................................................................................... 3, 7, 21
  § 1(e)........................................................................................................... 3, 7, 21

1
2

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

3
4
5

Judy Lin, *What happens to Uber and Lyft drivers if AB 5 becomes law?*  KQED News (Sept. 6, 2019), https://www.kqed.org/news/11772787/what-happens-to-uber-and-lyft-drivers-if-ab-5-passes ................................................................. 4, 18

6
7
8

Sarah Thomason, Ken Jacobs & Sharon Jan, *Estimating the Coverage of California's New AB 5 Law*, UC Berkeley Labor Center Data Brief (Nov. 12, 2019), http://laborcenter.berkeley.edu/estimating-the-coverage-of-californias-new-ab-5-law/ ........................................................ 13

9
10
11

Aarian Marshall, *Uber and Lyft Fight a Law They Say Doesn't Apply to Them*, Wired (Oct. 31, 2019), https://www.wired.com/story/uber-lyft-fight-law-say-doesnt-apply/ ............................................................ 4

12
13

Sophia Bollage, *New California law will redefine who is an employee. What does it mean for you?*, Sacramento Bee (Sept. 18, 2019) ......................... 11

14
15
16

Alexia Fernandez Campbell, *Gig Workers' Win in California Is a Victory for Workers Everywhere*, Vox (Sept. 11, 2019) https://www.vox.com/2019/9/11/20851034/california-ab-5-workers-labor-unions ...................................................................... 3, 18

17
18
19
20
21
22
23
24
25
26
27
28

**INTRODUCTION**

The Legislature determined that widespread and systematic employer misclassification of workers as independent contractors, instead of as employees, was exploiting working Californians by denying them significant statutory labor protections.  To combat this persistent problem, the Legislature passed AB 5, which codified and expanded the application of the "ABC" test that the California Supreme Court adopted in April 2018 to simplify determinations of employment status.  Under the ABC test, workers are considered employees rather than independent contractors unless their hiring entity satisfies three criteria.  Joined by two "independent service providers," Plaintiffs Uber and Postmates here challenge this legislative scheme, arguing that it is irrational, ineffective, and violates a host of state and federal constitutional guarantees.  They now move for preliminary injunctive relief to enjoin the law in its entirety.

The Court should deny the motion for a preliminary injunction.  Plaintiffs are unlikely to prevail on the merits of their claims.  They argue that AB 5 is invalid because the statutory scheme singles out "app-based" companies.  However, Plaintiffs' equal protection claim fails because nothing in the law targets such companies, and Plaintiffs fail to explain how it impermissibly discriminates.  At heart, Plaintiffs question the wisdom and effectiveness of AB 5, but that is a legislative policy determination, not viable grounds for a constitutional challenge.  Moreover, the ABC test about which they primarily complain has been in effect since April 2018, when the California Supreme Court adopted the test in *Dynamex*.  Indeed, Plaintiffs waited until the last possible moment before AB 5 went into effect before filing suit, and now seek preliminary relief against a law that was passed over three months ago.  They do not persuasively explain any of this delay, which is alone sufficient reason to deny a preliminary injunction.

# BACKGROUND

## A. *DYNAMEX* AND AB 5.

The distinction between workers classified as employees and those classified as independent contractors is significant because under California law employers have obligations to employees that are not afforded to independent contractors. *See Dynamex Operations West v. Superior Court*, 4 Cal. 5th 903, 912 (Cal. 2018). In April 2018, the California Supreme Court held that courts must apply the ABC test to determine whether a worker is classified as an employee for certain purposes under California's labor laws. *Id.* at 916. *Dynamex* noted that the "critically important objectives" of wage and hour laws, including ensuring low income workers' wages and conditions despite their weak bargaining power, "support a very broad definition of the workers" who fall within the employee classification. *Id.* at 952. Similarly, a broad definition benefits "those law-abiding businesses that comply with the obligations imposed" by state labor laws, "ensuring that such responsible companies are not hurt by unfair competition from competitor businesses that utilize substandard employment practices." *Id.* Lastly, the ABC test also benefits "the public at large, because if the wage orders' obligations are not fulfilled, the public often will be left to assume the responsibility of the ill effects to workers and their families resulting from substandard wages or unhealthy and unsafe working conditions." *Id.* at 953.

Under this test, a worker is considered an employee, rather than an independent contractor, unless the hiring entity establishes: (a) that the worker is "free from the control and direction of the hirer in connection with the performance of the work, both under the contract for the performance of such work and in fact;" (b) that the worker "performs work that is outside the usual course of the hiring entity's business;" and (c) that the worker is "customarily engaged in an independently established trade, occupation, or business of the same nature as the work performed for the hiring entity." *Id.* at 916-17.

On September 18, 2019, nearly 17 months after Plaintiffs had already been subject to the ABC test, California enacted AB 5, which became effective January 1, 2020.  The Legislature found that "[t]he misclassification of workers as independent contractors has been a significant factor in the erosion of the middle class and the rise in income inequality."  (AB 5 § 1(c).)  In enacting AB 5, the Legislature intended "to ensure workers who are currently exploited by being misclassified as independent contractors instead of recognized as employees have the basic rights and protections they deserve under the law," including minimum wage, workers' compensation, unemployment insurance, paid sick leave, and paid family leave.  (*Id.* § 1(e).)  By codifying the ABC test, AB 5 "restores these important protections to potentially several million workers who have been denied these basic workplace rights that all employees are entitled to under the law."  (*Id.*)[1]

AB 5 codifies the ABC test adopted in *Dynamex*, and extends its use to contexts beyond those at issue in *Dynamex*, to include (among other things) workers' compensation, unemployment insurance, and disability insurance.  Cal. Lab. Code, § 2750.3(a)(1); *id.* § 3351(i).  It also created limited statutory exemptions for certain kinds of work, including individuals licensed by the California Department of Insurance; physicians, surgeons, and other licensed medical professionals; and other licensed occupations, including lawyers, architects and engineers.  Cal. Lab. Code § 2750.3(b).

Plaintiff Uber lobbied extensively against the law, and attempted to obtain an exemption.[2]  Shortly after AB 5 was enacted, Uber and Postmates (among others)

---

[1] The problem of misclassified employees is not isolated.  "When state tax investigators audited about 8,000 California businesses, in 2017, they discovered nearly half a million employees had been misclassified or otherwise left off payrolls."  Alexia Fernandez Campbell, *Gig Workers' Win in California Is a Victory for Workers Everywhere*, Vox (Sept. 11, 2019) https://www.vox.com/2019/9/11/20851034/california-ab-5-workers-labor-unions.

[2] Alexia Fernandez Campbell, *Gig Workers' Win in California Is a Victory for Workers Everywhere*, Vox (Sept. 11, 2019) https://www.vox.com/2019/9/11/20851034/california-ab-5-workers-labor-unions ("Uber and Lyft, in particular, had been lobbying for an exemption to the bill in the

submitted a proposed initiative seeking to shield their businesses from the impact of AB 5. This initiative, entitled "Changes in Employment Classification Rules for App-Based Transportation and Delivery Drivers," was submitted on October 29, 2019. (Decl. J. Zelidon-Zepeda Opp. Mot. Prelim. Inj., Exh. 2.) According to news stories, major gig employers pledged $60 to $90 million to support this measure.[3] Uber has also asserted publicly that AB 5 does not apply to its drivers.[4]

## B. ALLEGATIONS OF THE COMPLAINT.[5]

Plaintiffs Uber and Postmates (the Company Plaintiffs) operate application-based platforms to deliver transportation services to individual consumers. (ECF No. 1 at ¶¶ 32-33.) Plaintiffs Olson and Perez are individuals who use app-based platforms of Uber and Postmates to get leads for passenger and delivery requests. (*Id.* at 13 ¶¶ 30-31.) Plaintiffs challenge AB 5 as "vague" and "incoherent," and contend that it does not further the Legislature's goals. (*Id.* at 8 ¶ 19.) They argue that AB 5 requires the Company Plaintiffs to fundamentally restructure their business model, thus imposing economic, administrative and other costs. (*Id.* at 8-9 ¶ 20.)

The complaint notes that AB 5 has numerous exemptions, and alleges that "[t]he legislature added these carve-outs to AB 5 solely for interest groups and

_____

Senate.").

[3] Judy Lin, *What happens to Uber and Lyft drivers if AB 5 becomes law?*, KQED News (Sept. 6, 2019), https://www.kqed.org/news/11772787/what-happens-to-uber-and-lyft-drivers-if-ab-5-passes.

[4] Aarian Marshall, *Uber and Lyft Fight a Law They Say Doesn't Apply to Them*, Wired (Oct. 31, 2019), https://www.wired.com/story/uber-lyft-fight-law-say-doesnt-apply/ ("Uber counsel Tony West said last month the company believes it will not be legally required to treat California drivers as employees after the law takes effect.").

[5] The complaint is unverified, and thus does not constitute competent evidence to support Plaintiffs' motion for a preliminary injunction. *See K-2 Ski Co. v. Head Ski Co.*, 467 F.2d 1087, 1088 (9th Cir. 1972); *U.S.A. Express Cab, LLC v. City of San Jose*, No. C-07-06171-RMW, 2007 WL 4612926, at *1 n.1 (N.D. Cal. Dec. 31, 2007) ("As a preliminary matter, an application for a temporary restraining order or preliminary injunction cannot be supported by an unverified complaint."). These allegations are set forth solely to frame Plaintiffs' claims, and not for the truth of the assertions.

labor." (ECF No. 1 at 18 ¶ 54.)  "The statutory exemptions carve out most types of workers traditionally considered to be independent contractors, with a glaring and intentional exception: app-based independent services providers." (*Id.* ¶ 56.)  The complaint alleges no facts supporting the conclusion that these workers were "traditionally considered to be independent contractors" other than a citation to one court decision.  (*Id.* ¶ 55.)[6]  Plaintiffs cite alleged inconsistencies or purported irrationality in AB 5's exemptions, and complain that the law "does not identify any data, studies, reports, or other justification or explanation for its exemptions." (*Id.* at 21 ¶¶ 59-60.)  Plaintiffs also conclude, without alleging any facts, that "many of the exemptions [were included] as political favors or to politically favored groups without any valid legislative purpose or rational basis." (*Id.* ¶ 61.)

Plaintiffs allege that AB 5 violates a litany of state and federal constitutional provisions (ECF No. 1 at 35-37), and seek declaratory and injunctive relief.  For purposes of their preliminary injunction request, Plaintiffs focus on their Equal Protection, Due Process, and Contract Clause claims.  (*See generally* ECF No. 14-1.)

## LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008); *Dymo Indus., Inc. v. Tapeprinter, Inc.*, 326 F.2d 141, 143 (9th Cir. 1964) (per curiam).  In seeking one, Plaintiffs must demonstrate that they are likely to succeed on the merits of their claims, that they are likely to suffer irreparable harm without preliminary relief, that the balance of equities tips in their favor, and that an injunction is in the

---

[6] Notably, multiple court decisions have rejected attempts by app-based employers to dismiss claims that their drivers are employees, concluding that there are disputed issues of fact.  *O'Connor v. Uber Technologies, Inc.*, 82 F. Supp. 3d 1133, 1138 (N.D. Cal. 2015); *see also Doe v. Uber Technologies, Inc.*, 184 F. Supp. 3d 774, 783 (N.D. Cal. 2016) (in action by customers alleging sexual assault by Uber drivers, holding at motion to dismiss stage that plaintiffs "alleged sufficient facts that employment relationship may plausibly exist"); *Cotter v. Lyft, Inc.*, 60 F. Supp. 3d 1067 (N.D. Cal. 2015) (holding that genuine issue of material fact whether carrier improperly classified drivers as independent contractors).

public interest.  *Winter*, 555 U.S. at 20; *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).  Contrary to Plaintiffs' arguments, it is not enough to demonstrate that their legal claims raise "a *fair chance* of success on the merits."  (ECF No. 14-1 at 6.)  "The proper legal standard for preliminary injunctive relief requires a party to demonstrate 'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'"  *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (*citing Winter*).

Moreover, because Plaintiffs seek a preliminary injunction to *change* the status quo, they must carry "a heavy burden of persuasion."  *3570 East Foothill Blvd., Inc. v. City of Pasadena*, 912 F. Supp. 1257, 1260 (C.D. Cal. 1995).  As noted above, the "ABC" test has been the status quo since April 2018.  "Mandatory preliminary relief, which goes well beyond simply maintaining the status quo pendente lite, is particularly disfavored, and should not be issued unless the facts and law clearly favor the moving party."  *Anderson v. U.S.*, 612 F.2d 1112, 1114 (9th Cir. 1979) (citation omitted).

## ARGUMENT

### I.  PLAINTIFFS ARE UNLIKELY TO SUCCEED ON THE MERITS OF THEIR EQUAL PROTECTION CLAIM.

#### A.  UNDER APPLICABLE RATIONAL BASIS REVIEW, PLAINTIFFS' EQUAL PROTECTION CLAIMS FAIL.

Plaintiffs claim that AB 5 violates their equal protection rights.  (ECF No. 14-1 at 7.)  The Equal Protection Clause forbids the government from "deny[ing] to any person within its jurisdiction the equal protection of the laws."  *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  It is clear that, "unless a [statutory] classification warrants some form of heightened review because it jeopardizes exercise of a fundamental right or categorizes on the basis of an inherently suspect characteristic, the Equal Protection Clause requires only that the

classification rationally further a legitimate state interest." *Nordlinger v. Hahn*, 505 U.S 1, 10 (1992). Plaintiffs' equal protection claim is not likely to succeed on the merits because AB 5 is an employment regulation of general applicability that does not classify according to any suspect class and is therefore subject to deferential rational basis review. AB 5 satisfies such review as a matter of law.

Absent a suspect class, distinctions drawn in legislation are subject to rational basis review. *FCC v. Beach Communications, Inc.*, 508 U.S. 307, 313 (1993). Under this standard, "legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *City of Cleburne*, 473 U.S. at 440. Thus, when social or economic legislation is at issue, the Equal Protection Clause allows the States "wide latitude." *Id.* As stated by the Supreme Court:

> Whether embodied in the Fourteenth Amendment or inferred from the Fifth, equal protection is not a license for courts to judge the wisdom, fairness, or logic of legislative choices. In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.

*Beach Communications, Inc.*, 508 U.S. at 313.

The legislative history makes clear that AB 5 seeks to remedy the widespread misclassification of workers as independent contractors, which the Legislature determined "has been a significant factor in the erosion of the middle class and the rise in income inequality." (AB 5 § 1(c).) The Legislature wanted to ensure that workers were afforded the appropriate protections under state law, including minimum wage, workers' compensation, unemployment insurance, paid sick leave, and paid family leave. (*Id.* § 1(e).) To this end, AB 5 codifies the ABC test adopted in *Dynamex*, and uses this standard to determine the proper classification of workers for purposes of the California Labor Code, California Unemployment

1   Insurance Code, and the Industrial Welfare Commission (IWC) Wage Orders.  Cal.
2   Lab. Code, § 2750.3, subd. (a)(1); *id*., § 3351(i).

3       As a matter of law, given this legislative history, AB 5 passes muster under the
4   deferential rational basis review accorded to economic legislation.  *Nordlinger*, 505
5   U.S. at 11 ("In general, the Equal Protection Clause is satisfied so long as there is a
6   plausible policy reason for the classification.").  "Those attacking the rationality of
7   the legislative classification have the burden 'to negative every conceivable basis
8   which might support it.'"  *Beach Communications*, 508 U.S. at 315.  Plaintiffs have
9   not done so and are unlikely to do so.[7]

10      **B.  OPINIONS EXPRESSED IN NEWS REPORTS AND SOCIAL MEDIA
11      COMMENTARY ARE NOT GROUNDS FOR AN EQUAL PROTECTION
        CLAIM.**

12      Plaintiffs contend that AB 5 "irrationally targeted" app-based companies and
13  what they label "on-demand workers" but cite nothing in AB 5 that actually targets
14  these companies for special treatment (or even mentions them).  (ECF No. 14-1 at
15  7.)  Nor can they—AB 5 is generally applicable to all employment arrangements
16  except those that are specifically exempted.

17      Plaintiffs' equal protection claim hinges on their assertion that AB 5 was
18  motivated by an intent to "single out network companies," and that this
19  demonstrates a desire by the Legislature to harm a "politically unpopular group."
20  (ECF No. 14-1 at 8-9.)  The facts alleged to support this conclusion are media
21  reports of comments made by individual legislators that the statute was meant to
22  address in part concerns about the so-called "gig economy."  (*Id.* at 4-5.)  These

23      ───────────────
            [7] Plaintiffs do not discuss their equal protection claim under the California
24  Constitution.  (ECF No. 14-1 at 7-12.)  In any event, the California Supreme Court
    has interpreted both equal protection provisions similarly.  *Manduley v. Super. Ct.*,
25  27 Cal. 4th 537, 571-72 (Cal. 2002) ("[W]e deem our analysis of petitioners' equal
    protection claim under the Fourteenth Amendment to the United States Constitution
26  also applicable to their equal protection claim made pursuant to provisions in the
    California Constitution."); *see also People v. Cruz*, 207 Cal. App. 4th 664, 674
27  (Cal. Ct. App. 2012).  In light of this, federal courts have held that the "equal
    protection analysis under the California Constitution is 'substantially similar' to
28  analysis under the federal Equal Protection Clause.'"  *RUI One Corp.*, 371 F.3d at
    1154.

allegations, even if proven, do not violate equal protection.  As previously noted, it is rational for the Legislature to respond to changes in the workplace with changes in regulation.  As federal courts have noted in other contexts, stray comments from a handful of legislators in the legislative history do not demonstrate the intent of a legislative body.  *Cf. U.S. v. Ninety Three Firearms*, 330 F.3d 414, 423 (6th Cir. 2003) (noting that "reliance on one stray comment in the legislative history cannot override the statute's structure, meaning, and purpose," and that a legislative body "votes on the statute in its entirety" rather than one sponsor's comments alone); *Hertzberg v. Dignity Partners, Inc.*, 191 F.3d 1076, 1082 (9th Cir. 1999); *see also In re Kelly*, 841 F.2d 908, 912 n.3 (9th Cir. 1988).  Relying on bare assertions of "commentators," Plaintiffs also cite "explicit targeting" of companies like Uber and Lyft as evidence of purported "animus."  (*Id.* at 8-9 (citing Compl., ECF No. 1 at 26 ¶ 68 & n.44, which cites internet articles and opinion pieces).)  These comments and opinions are not competent evidence, and do not establish an intent to "harm a politically unpopular group" under the case law, much less do they constitute evidence warranting preliminary injunctive relief.  *Gallinger v. Becerra*, 898 F.3d 1012, 1020 (9th Cir. 2018) (rejecting conclusory allegations that statute was motivated by animus).

Plaintiffs also argue, relying on *Pro-Eco, Inc. v. Board of Comm'rs of Jay Cty., Ind.*, 57 F.3d 505, 516 n.11 (7th Cir. 1995), that the fact that a statute "does not specifically single out the network companies" is irrelevant given the "countless commentators" who allegedly recognized AB 5's "explicit targeting" of network companies.  (ECF No. 14-1 at 8-9.)  That case notes that a regulation may contain language of general applicability and still violate the Equal Protection Clause absent a showing of unfair enforcement if: "1) the language of the statute, while not identifying any individual by name, *could apply only to one person*, and 2) such a classification would not rationally relate to a legitimate governmental end."  *Id.* at 516 n.11 (emphasis added).  Plaintiffs make no attempt to demonstrate that AB 5

9

1   "applies to only one person," or that it is otherwise unrelated to a legitimate

2   government interest.

3        Finally, Plaintiffs argue that legislation cannot be used to harm a "politically

4   unpopular group." (ECF No. 14-1 at 9.) The cases cited are inapposite, involving a

5   challenge to a federal law "intended to prevent so-called 'hippies' and 'hippie

6   communes' from participating in the food stamp program," *U.S. Dep't of*

7   *Agriculture v. Moreno*, 413 U.S. 528, 534 (1973), and a state constitutional

8   amendment precluding efforts designed to protect the status of persons based on

9   their homosexual, lesbian, or bisexual orientation, which "impos[ed] a broad and

10  undifferentiated disability on a single named group." *Romer v. Evans*, 517 U.S.

11  620, 632 (1996).[8] Plaintiffs' effort to compare AB 5's regulation of their

12  employment relationships with regulations targeting the LGBT community based

13  on their sexual orientation in the 1990s or excluding hippies from government

14  programs based on their way of life in the 1970s is unconvincing. *See Mountain*

15  *Water Co. v. Montana Dep't of Pub. Serv. Regulation*, 919 F.2d 593, 599 (9th Cir.

16  1990) ("[U]nlike the hippie communes in *Moreno*, privately-owned water utilities

17  are neither members of a suspect class nor a politically unpopular group prompting

18  'heightened' scrutiny in equal protection analysis"); *U.S. v. Wilde*, 74 F. Supp. 3d

19  1092, 1098 (N.D. Cal. 2014) (rejecting heightened or rigorous rational basis review

20  where party did not "argue or present any evidence that marijuana users are a

21  politically unpopular group specifically targeted by the CSA [Controlled

22  Substances Act]"). As already explained, AB 5 does not target a particular group,

23  but instead addresses the persistent problem of worker misclassification.

24  ///

25  ///

---

26        [8] Notably, these cases did not involve the regulation of labor. Plaintiffs do
    not have a constitutional right to a particular regulatory regime. In response to
27  changes in the workplace, the Legislature is free to update regulations to address
    present-day conditions. This is ordinary economic regulation, not discrimination
28  against the "politically unpopular."

### C. AB 5's Limited Exemptions Do Not Support Plaintiffs' Equal Protection Claim.

Similarly unavailing is Plaintiffs argument that the statutory exemptions in AB 5 were included to "protect politically favored groups." (ECF No. 14-1 at 9.)  The record indicates that many industries—including Uber— sought exemptions from AB 5, some of which the Legislature adopted.  Plaintiffs cannot establish an equal protection violation "merely by alleging that a legislature responded to such [lobbying] efforts." *Gallinger*, 898 F.3d at 1020-21.  As the Ninth Circuit has pointed out, "[a]ccommodating one interest group is not equivalent to intentionally harming another." *Id.* at 1021.  Indeed, to challenge the exemptions on equal protection grounds, because rational basis review applies, Plaintiffs have the burden to "negate 'every conceivable basis' which might have supported the distinction" made between covered occupations and those that are exempted. *Angelotti Chiropractic v. Baker*, 791 F.3d 1075, 1086 (9th Cir. 2015) (quoting *Armour v. City of Indianapolis*, 132 S. Ct. 2073, 2080-81 (2012)).  Plaintiffs have made no effort to satisfy their heavy burden, and they are unlikely to do so.[9]

Plaintiffs place undue reliance on *Fowler Packing Co., Inc. v. Lanier*, 844 F.3d 809 (9th Cir. 2016), which addressed a state law codifying two appellate decisions, and creating a "safe harbor" to protect businesses from unforeseen liability from the decisions.  *Id.* at 812.  However, the plaintiffs claimed that the law's carve-outs from that "safe harbor" precluded three specific employers from benefitting from the protection with respect to certain liability.  *Id.* at 813.  The

---

[9] For instance, the author of AB 5, Assemblymember Gonzalez, explained that she and her colleagues "chose to exempt industries based on how much workers are paid, whether they operate with autonomy and how much power they have to negotiate with their employers."  Sophia Bollage, *New California law will redefine who is an employee. What does it mean for you?*, Sacramento Bee (Sept. 18, 2019), https://www.sacbee.com/news/politics-government/capitol-alert/article234948617.html.  Even without relying on stray comments reported to have been made by a legislator, the Legislature had ample basis to determine that in certain occupations, independent contractor status was lawful and did not cause the systemic harm and associated with misclassification that the Legislature sought to abate through AB 5.

Ninth Circuit held that, assuming their truth, the plaintiffs' allegations that the carve-outs resulted from "closed negotiations" with interested unions, coupled with a newspaper article stating that statutory exemptions were demanded by the unions as necessary conditions to obtain their support, stated a claim.  *Id.* at 816.  Here, Plaintiffs point to no similar statutory provision that singles them out, and the statutory exemptions do not raise an inference that they are geared towards specific *parties*, but instead broadly cover licensed professionals, including lawyers, architects, dentists, etc.  Cal. Lab. Code § 2750.3(b).  As the Ninth Circuit subsequently noted, the safe harbor provision at issue in *Fowler Packing* "clearly suggest[ed] improper favoritism," because "the only conceivable explanation" was the need to win the political support of a particular labor union.  *Allied Concrete & Supply Co. v. Baker*, 904 F.3d 1053, 1065-66 (9th Cir. 2018); *see also Prime Healthcare Services, Inc. v. Harris*, No. 16-cv-00778-GPS, 2017 WL 3525169, at **16-17 (S.D. Cal. Aug. 16, 2017) ("In *Fowler*, the California legislature evinced an utter lack of any rational basis for adding the carve-outs, beyond currying political favor.").  No similar provision demonstrates favoritism here.

Citing *Merrifield v. Lockyer*, 547 F.3d 978 (9th Cir. 2008), Plaintiffs also argue that AB 5 does not further its stated purpose.  (ECF No. 14-1 at 11.)  That case "presented a unique set of facts," where an exemption in the challenged licensing scheme *contradicted* the interest put forth to support it: although the state argued that the scheme was necessary to address public health concerns about exposure to pesticide, it exempted pest-control operators who were "*more* at risk of being exposed to pesticides . . . than similarly-situated operators."  *Allied Concrete & Supply Co.*, 904 F.3d at 1065.  Here, Plaintiffs point to no "similarly-situated" entities who are exempt from the law in a way that contradicts the statute's purpose.  Plaintiffs instead sweep broadly, claiming that it is "irrational to leave nearly all non-app-based independent workers out in the cold," but point to no provision in AB 5 that singles out "app-based independent workers."  (ECF No. 14-1 at 11-12.)

Indeed, far from singling out app-based workers, a recent UC Berkeley Labor Center study determined that AB 5's ABC test applies to 64 percent of workers in a variety of occupations, and will apply to another 27 percent of workers except when strict criteria are met to warrant an exemption.[10]

## II. PLAINTIFFS ARE UNLIKELY TO SUCCEED ON THE MERITS OF THEIR DUE PROCESS AND CONTRACT CLAUSE CLAIMS.

### A. AB 5 PROPERLY REGULATES EMPLOYMENT RIGHTS AND RELATIONSHIPS GENERALLY, NOT CHOICE OF OCCUPATION.

Plaintiffs contend that AB 5 violates their due process rights to work in their chosen occupation. (ECF No. 14-1 at 12-13.) But AB 5 does not prohibit anyone from working in an occupation of his or her choosing, and the claim thus fails under the applicable deferential standard.

Courts have found a liberty interest based on some "generalized due process right to choose one's field of private employment." *Conn v. Gabbert*, 526 U.S. 286, 291-92 (1999). But "that right is subject to reasonable government regulation." *Franceschi v. Yee*, 887 F.3d 927, 937-38 (9th Cir. 2018).[11] To the extent Plaintiffs contend that this right includes a right to work as an independent contractor, that argument is meritless. (ECF No. 14-1 at 13.) Independent contractor is a *classification* for purposes of labor laws; it is not an occupation or "field of private employment," akin to teacher, doctor, attorney, etc. *Cf. Conn*, 526 U.S. at 292 (citing cases addressing right to profession claims, including right to practice medicine and practice of law). AB 5 does not regulate occupation, it regulates the relationship between all workers and employers, regardless of

---

[10] Sarah Thomason, Ken Jacobs & Sharon Jan, *Estimating the Coverage of California's New AB 5 Law*, UC Berkeley Labor Center Data Brief (Nov. 12, 2019), http://laborcenter.berkeley.edu/estimating-the-coverage-of-californias-new-ab-5-law/.

[11] Plaintiffs do not appear to raise a procedural due process claim, and such a challenge would fail because "[w]hen the action complained of is legislative in nature, due process is satisfied when the legislative body performs its responsibilities in the normal manner prescribed by law." *Halverson v. Skagit Cty.*, 42 F.3d 1257, 1260 (9th Cir. 1994).

occupation.  Thus, cases asserting a right to mine, claims by hair stylists to occupational regulations, and a challenge to a law that "forced [the plaintiff] out of his employment as a cook in a restaurant, simply because he is an alien," do not govern here.  *Hardesty v. Sacramento Metro. Air Quality Mgmt. Dist.*, 307 F. Supp. 3d 1010, 1024 (E.D. Cal. 2018); *Cornwell v. Hamilton*, 80 F. Supp. 2d 1101 (S.D. Cal. 1999); *Truax v. Raich*, 239 U.S. 33, 41 (1915).[12]  Plaintiffs have not established that they have a constitutional right to classification as independent contractors, nor can they, given longstanding authority that states are free to define whether a worker is an employee irrespective of the parties' attempt to define that status by contract.  *Erotic Serv. Provider Legal Educ. and Research Project v. Gascon*, 880 F.3d 450, 459 (9th Cir. 2018) (holding that protectable interests in employment "arise only 'where not affirmatively restricted by reasonable laws or regulations of general application'") (citation omitted); *Alexander v. FedEx Ground Package Sys., Inc.*, 765 F.3d 981, 989 (9th Cir. 2014).

Moreover, the "generalized due process right to choose one's field of private employment" is subject to "reasonable government regulation."  *Franceschi*, 887 F.3d at 937-38.  In this regard, the Ninth Circuit has held that "a plaintiff can make out a substantive due process claim if she is unable to pursue an occupation and this inability is caused by government actions that were arbitrary and lacking a rational basis."  *Engquist v. Or. Dep't of Agric.*, 478 F.3d 985, 997 (9th Cir. 2007).  Here, AB 5 does not dictate occupation, or otherwise create an impediment to pursuit of any occupation; it merely establishes the standard for ascertaining, for any occupation, whether a worker is an employee or an independent contractor under

---

[12] The two state court cases cited by Plaintiffs are similarly inapposite. *Purdy & Fitzpatrick v. State*, 71 Cal. 2d 566 (Cal. 1969), involved a California law "which basically prohibits the employment of aliens on public works." *Ganley v. Claeys*, 2 Cal. 2d 266 (Cal. 1935) involved a local ordinance which regulated the opening and closing hours of barbershops but had "no reasonable relation to the alleged purpose of protecting public health."

California law.[13]  *See Western States Trucking Ass'n v. Schoorl*, 377 F. Supp. 3d 1056, 1072 (E.D. Cal. 2019) (holding, pre-AB 5, that the "ABC" test adopted in *Dynamex* does not preclude a hiring entity "from hiring an independent contractor for individual jobs or assignments").

**B.  THE CONTRACT CLAUSE DOES NOT INSULATE BUSINESS FROM REGULATION OR REGULATORY CHANGE.**

The Contract Clause provides that "No State shall . . . pass any . . . Law impairing the Obligation of Contracts."  U.S. Const. art. I, § 10, cl. 1.  "Although the language of the Contract Clause is facially absolute, its prohibition must be accommodated to the inherent police power of the State 'to safeguard the vital interests of its people.'"  *Energy Reserves Grp., Inc. v. Kansas Power & Light Co.*, 459 U.S. 400, 410 (1983) (citation omitted).

Unless a challenged statute impairs a state's own obligations, courts apply deferential review, asking: "(1) whether the state law has operated as a substantial impairment of a contractual relationship; (2) whether the state has a significant and legitimate public purpose for the law; and (3) whether the adjustment of the rights and responsibilities of contracting parties is based upon reasonable conditions and is of a character appropriate to the public purpose justifying the legislation's adoption."  *Washington Health Care Ass'n v. Arnold-Williams*, 601 F. Supp. 2d 1224, 1234 (W.D. Wash. 2009) (citing *RUI One Corp. v. City of Berkeley*, 371 F.3d 1137, 1147 (9th Cir. 2004)).  Even if Plaintiffs can establish that AB 5 is a substantial impairment, their Contract Clause claim fails if the State "ha[s] a significant and legitimate public purpose behind the regulation . . . such as the

---

[13] Plaintiffs' due process claim under the California constitution fails for the same reasons as their federal constitutional claim.  *Owens v. City of Signal Hill*, 154 Cal. App. 3d 123, 127 n.2 (Cal. Ct. App. 1984) ("The [California] state constitution's due process and privileges and immunities clauses are identical in scope with the federal due process clause."); *Sanchez v. City of Reno*, 914 F. Supp. 2d 1079, 1116 (E.D. Cal. 2012).

1   remedying of a broad and general social or economic problem." *Energy Reserves*

2   *Grp., Inc.*, 459 U.S. at 412.

3       Plaintiffs conclude that AB 5 "invalidate[s] thousands of on-demand economy

4   contracts, which specify work as independent contractors," but provide no evidence

5   in support, demonstrating the nature of the contracts or the way in which they are

6   impaired.  (ECF No. 14-1 at 14.)  At the threshold, Plaintiffs' motion thus fails for

7   lack of proof.  While a "verified complaint or supporting affidavit may afford the

8   basis for a preliminary injunction," such an injunction cannot be supported by mere

9   "general assertions."  *K-2 Ski Co. v. Head Ski Co.*, 467 F.2d 1087, 1088 (9th Cir.

10  1972).

11      More importantly, a contract is not and has never been determinative on the

12  question of whether a worker is properly classified as an employee or an

13  independent contractor for purposes of state law.  *Narayan v. EGL, Inc.*, 616 F.3d

14  895, 903 (9th Cir. 2010) (noting that the fact that workers "had contracts 'expressly

15  acknowledging that they were independent contractors' is simply not dispositive

16  under California's test of employment"); *Alexander v. FedEx Ground Package Sys.,*

17  *Inc.*, 765 F.3d 981, 989 (9th Cir. 2014) ("California law is clear that '[t]he label

18  placed by the parties on their relationship is not dispositive, and subterfuges are not

19  countenanced.'") (citation omitted).  Against this legal background, Plaintiffs'

20  contention that they "had no reasonable expectation that their contracts were

21  vulnerable" is unpersuasive.  (ECF No. 14-1 at 15.)  *See O'Connor v. Uber*

22  *Technologies, Inc.*, 82 F. Supp. 3d 1133, 1138 (N.D. Cal. 2015) (holding that there

23  was a trial of fact for the jury on whether drivers for Uber are employees despite

24  contractual language); *Doe v. Uber Technologies, Inc.*, 184 F. Supp. 3d 774, 783

25  (N.D. Cal. 2016) (in action by customers alleging sexual assault by Uber drivers,

26  holding at motion to dismiss stage that plaintiffs "alleged sufficient facts that

27  employment relationship may plausibly exist").

28

The intent and effect of AB 5 was to address the Legislature's concern that misclassification of employees was depriving workers of various labor protections, and leading to their exploitation and the erosion of the middle class.  Under the case law, this is a proper government purpose, particularly given that labor relations and employer-employee relations are traditional areas of state regulation.  *See Fort Halifax Packing Co., Inc. v. Coyne*, 482 U.S. 1, 21 (1987) (in preemption context, noting that "the establishment of labor standards falls within the traditional police power of the State").  Courts have rejected challenges to other similar labor regulations under the Contract Clause, including a challenge to a local living wage ordinance.  *RUI One Corp.*, 371 F.3d at 1137.  "The power to regulate wages and employment conditions lies clearly within a state's or municipality's police power."  *Id.* at 1150.  As the Supreme Court has pointed out, "States possess broad authority under their police powers to regulate the employment relationship to protect workers within the State," including minimum wage and other wage laws, and laws affecting occupational health and safety.  *Id.*  Plaintiffs cannot establish a likelihood of success on the merits of their Contract Clause claim.[14]

### III.  PLAINTIFFS' DELAY IN SEEKING INJUNCTIVE RELIEF UNDERMINES THEIR CLAIM OF IRREPARABLE HARM, AND THE BALANCE OF EQUITIES TIPS IN DEFENDANTS' FAVOR.

Even if Plaintiffs could establish a likelihood of success on the merits, they could not establish irreparable harm.  Individual Plaintiffs Olson and Perez contend that they will suffer irreparable harm from "forced reclassification" and financial

---

[14]     Plaintiffs filed five supporting declarations with their Motion for a Preliminary Injunction, none of which address the gaps in Plaintiffs' legal claims or otherwise support their viability.  Instead, they generally seek to establish that Uber's business model falls outside the scope of AB 5, (ECF 18 at 10 [Rosenthal Decl.]; ECF No. 17 at 5 ¶ 10 [Andres Decl.]).

These declarations also fail to support arguments that irreparable harm will befall Plaintiffs absent preliminary injunctive relief, as they are riddled with speculation and otherwise lack foundation.  (ECF No. 18 at 13 ¶ 63 [speculating that Uber drivers would "stop using the Uber apps if the no longer had the freedom to choose when to login or log out"]; ECF No. 17 at 14 ¶ 42 [stating that if AB 5 were enforced "against Plaintiffs in a manner consistent with the sponsors' stated intent  .  . Postmates expects that many independent couriers would stop using the Postmates app"].)

losses.  (ECF No. 14-1 at 17-19).  On the other hand, while arguing that they are properly classifying their workers, Uber and Postmates allege that they face an "impossible dilemma" whether to reclassify their service providers, and risk having to defend against civil actions and potential penalties.  (*Id.*)  But AB 5 does not compel a "forced reclassification," but instead provides the applicable standard to ascertain whether an individual is an employee or an independent contractor.  *See Western States Trucking Ass'n*, 377 F. Supp. 3d at 1072 (holding that the *Dynamex* "ABC test" does not "preclude[] a motor carrier from hiring an independent contractor for individual jobs or assignments").[15]

Moreover, these allegations of irreparable harm are belied by Plaintiffs' delay in seeking preliminary relief.  The ABC test was adopted in April 2018.  *Dynamex*, 4 Cal. 5th at 903.  AB 5 was signed by the Governor on September 18, 2019, and went into effect on January 1, 2020.  (ECF No. 1 at 7 ¶ 16.)  Plaintiffs knew about AB 5 and its potential effects even before this, since they actively participated in the legislative process and sought an exemption from the ABC test.[16]  In fact, according to news stories, shortly after AB 5 was approved, Plaintiffs Uber and Postmates pledged at least $30 million dollars to qualify an initiative to limit AB 5's application to their business model.[17]  Despite this, Plaintiffs did not file suit until December 30, 2019, one day before the statute's operative date, and did not

---

[15] Plaintiffs also proffer the opinion of an economist who was asked to "analyze whether there are economic harms associated [with AB 5] to Plaintiffs and on-demand economy companies in general . . . if AB 5 were enforced against Plaintiffs in a manner consistent with what I understand is its sponsors' stated intent to require that all workers . . . be reclassified as employees."  (ECF No. 19 at 3 ¶ 13.)  As explained above, AB 5 does not require "forced reclassification," but instead modifies the test for ascertaining whether an individual is properly classified as an independent contractor or employee.  This putative expert report does not improve Plaintiffs' likelihood of success on the merits of their claims.

[16] Alexia Fernandez Campbell, *Gig Workers' Win in California Is a Victory for Workers Everywhere*, Vox (Sept. 11, 2019) https://www.vox.com/2019/9/11/20851034/california-ab-5-workers-labor-unions ("Uber and Lyft, in particular, had been lobbying for an exemption to the bill in the Senate.").

[17] Judy Lin, *What happens to Uber and Lyft drivers if AB 5 becomes law?*, KQED News (Sept. 6, 2019), https://www.kqed.org/news/11772787/what-happens-to-uber-and-lyft-drivers-if-ab-5-passes.

1    seek injunctive relief until January 8, 2020, one week after the law went into effect.

2    (ECF Nos. 1 & 14.)  Plaintiffs claim that they did not unduly delay because they

3    filed suit "once their irreparable injury ripened to imminence with Assemblywoman

4    Gonzalez's incitement of an enforcement action against them in her recent tweets"

5    in November and December 25, 2019.  (ECF No. 14-1 at 16 n.7.)  But Plaintiffs are

6    not seeking relief from these tweets or from any action by a state legislator—they

7    seek relief from AB 5 and enforcement action under its statutory provisions, which

8    became law on September 18, 2019.  (ECF No. 14-1 at 25.)

9         As the Ninth Circuit has noted, a plaintiff's "long delay before seeking a

10   preliminary injunction implies a lack of urgency and irreparable harm."  *Miller for*

11   *and on behalf of N.L.R.B. v. Cal. Pac. Medic. Ctr.*, 991 F.2d 536, 544 (9th Cir.

12   1993) (citation omitted); *see also Kobell v. Suburban Lines, Inc.*, 731 F.2d 1076,

13   1091 n.27 (3d Cir. 1984) ("[T]he district court may legitimately think it suspicious

14   that the party who asks to preserve the status quo through interim injunctive relief

15   has allowed the status quo to change through unexplained delay.").  Courts in this

16   Circuit have found unexplained delays of three months in seeking injunctive relief

17   supported a finding of lack of irreparable harm.  *First Franklin Fin. Corp. v.*

18   *Franklin First Fin. Ltd.*, 356 F. Supp. 2d 1048, 1055 (N.D. Cal. 2005); *see also*

19   *Metromedia Broad. Corp. v. MGM/UA Entm't Co, Inc.*, 611 F. Supp. 415, 427

20   (C.D. Cal. 1985) (concluding that four month delay warranted denying injunctive

21   relief); *Kiva Health Brands LLC v. Kiva Brands Inc.*, 402 F. Supp.3d 877, 898-99

22   (N.D. Cal. 2019) (same).  In another challenge to AB 5, the district court denied the

23   challengers' application for a temporary restraining order where the plaintiffs filed

24   suit less than 15 days before AB 5's effective date, and did not seek relief until a

25   couple days before its effective date.  (Decl. J. Zelidon-Zepeda Opp. Mot. Prelim.

26   Inj., Exh. 1.)

27        Moreover, the State will suffer irreparable injury if this Court enjoins AB 5's

28   enforcement.  "[A]ny time a State is enjoined by a court from effectuating statutes

enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, ___, 133 S. Ct. 1, 3 (2012) (Roberts, C.J., in chambers) (citation omitted); *Coalition for Econ. Equity v. Wilson*, 122 F.3d 718, 719 (9th Cir. 1997) ("[I]t is clear that a state suffers irreparable injury whenever an enactment of its people or their representatives is enjoined."). These concerns are particularly acute here, because a preliminary injunction would prevent the State from enforcing laws designed to address the widespread problem of misclassification of employees, and the attendant deprivation of protections under state labor law to which they are properly entitled. Plaintiffs respond that there is no valid state interest in enforcing an unconstitutional statute (ECF No. 14-1 at 22-23), but that argument presupposes that Plaintiffs' substantive claims will prevail, which is undermined by the case law discussed above.

Lastly, Plaintiffs incorrectly contend that an injunction will preserve the status quo. (ECF No. 14-1 at 23.) Here, the "status quo" is the ABC test, which has been effective since January 1, 2020 under AB 5 and since the California Supreme Court's adoption of the ABC test in April 2018. *Golden Gate Restaurant Ass'n v. City & Cty. of San Francisco*, 512 F.3d 1112, 1116 (9th Cir. 2008). Although Plaintiffs seek to *alter* this status quo, they have not shown that the facts and the law "clearly favor" such relief. *Anderson v. U.S.*, 612 F.2d 1112, 1114 (9th Cir. 1979) (citation omitted).

Plaintiffs have not established harm sufficient to outweigh the injury their requested injunction would inflict on the State.

## IV.  THE PUBLIC INTEREST WEIGHS AGAINST A PRELIMINARY INJUNCTION.

Plaintiffs must also establish that the public interest warrants preliminary injunctive relief. In this regard, Plaintiffs argue that the public interest warrants "prevent[ing] the violation of a party's constitutional rights." (ECF No. 14-1 at 23, *citing Melendres v. Arpaio*, 695 F.3d 990 (9th Cir. 2012).) They also rely on the

1  purported injury from "forced reclassification." (*Id.* at 24.)  These arguments

2  notwithstanding, the public interest weighs heavily against enjoining state law.

3      Here, a court order enjoining the State's enforcement of AB 5 would further

4  delay the State's ability to effectively address the misclassification of workers and

5  the public consequences of such misclassification, which the Legislature concluded

6  warranted remediation.  (AB 5 § 1(c).)  In enacting the statute, the Legislature

7  intended "to ensure workers who are currently exploited by being misclassified as

8  independent contractors instead of recognized as employees have the basic rights

9  and protections they deserve under the law," including minimum wage, workers'

10  compensation, unemployment insurance, paid sick leave, and paid family leave.

11  (*Id.* § 1(e).)  AB 5 "restores these important protections to potentially several

12  million workers who have been denied these basic workplace rights that all

13  employees are entitled to under the law."  (*Id.*)  These paramount state interests

14  outweigh Plaintiffs' interests in delaying complying with the law.

15      "In cases where the public interest is involved, the district court must also

16  examine whether the public interest favors the plaintiff."  *Fund for Animals v.*

17  *Lujan*, 962 F.2d 1391, 1400 (9th Cir. 1992); *see also Weinberger v. Romero-*

18  *Barcelo*, 456 U.S. 305, 312 (1982) ("In exercising their sound discretion, courts of

19  equity should pay particular regard for the public consequences in employing the

20  extraordinary remedy of injunction.").  The public interest is involved when an

21  injunction impacts individuals beyond the parties.  *Stormans, Inc. v. Selecky*, 586

22  F.3d 1109, 1139 (9th Cir. 2009).

23      The Legislature concluded that misclassification of workers as independent

24  contractors has harmed workers, and has contributed to the shrinking of the middle

25  class, and to that end enacted the protections of AB 5.  (AB 5 § 1(c) & (e).)  Given

26  that AB 5 was enacted after a full legislative process, including discussion about its

27  impact and the necessity for it, and negotiation with various stakeholders including

28  industry, labor, and others, the public interest weighs against a preliminary

injunction.  As noted above, courts hold that states suffer harm when enforcement of their laws is enjoined.  *Maryland v. King*, 567 U.S. 1301, ___, 133 S. Ct. 1, 3 (2012) (Roberts, C.J., in chambers) (citation omitted).  Where, as here, "responsible public officials" have considered the public interest and enacted a statute, the public interest weighs against enjoining such legislation.  *Golden Gate Restaurant Ass'n*, 512 F.3d at 1126-27.  "[I]t is in the public interest that federal courts of equity should exercise their discretionary power with proper regard for the rightful independence of state governments in carrying out their domestic policy."  *Burford v. Sun Oil Co.*, 319 U.S. 315, 318 (1943).

## CONCLUSION

For these reasons, the Court should deny Plaintiffs' motion for a preliminary injunction.

Dated:  January 17, 2020

Respectfully submitted,

XAVIER BECERRA
Attorney General of California
TAMAR PACHTER
Supervising Deputy Attorney General


/s/ *Jose A. Zelidon-Zepeda*
JOSE A. ZELIDON-ZEPEDA
Deputy Attorney General
*Attorneys for the State of California and Attorney General Xavier Becerra, in his official capacity*

SA2020100015
Opposition to Preliminary Injunction Motion FINAL.docx