1   XAVIER BECERRA
    Attorney General of California
2   TAMAR PACHTER
    Supervising Deputy Attorney General
3   JOSE A. ZELIDON-ZEPEDA
    Deputy Attorney General
4   State Bar No. 227108
     455 Golden Gate Avenue, Suite 11000
5    San Francisco, CA  94102-7004
     Telephone:  (415) 510-3879
6    Fax:  (415) 703-1234
     E-mail:  Jose.ZelidonZepeda@doj.ca.gov
7   *Attorneys for the State of California and Attorney
    General Xavier Becerra, in his official capacity*
8

9              IN THE UNITED STATES DISTRICT COURT

10          FOR THE CENTRAL DISTRICT OF CALIFORNIA

11                      WESTERN DIVISION

12

| 13 | **LYDIA OLSON; et al.,** | 2:19-CV-10956-DMG-RAO |
|---|---|---|
| 14 | Plaintiffs, | **MEMORANDUM OF POINTS AND AUTHORITIES** |
| 15 | | **SUPPORTING DEFENDANTS' MOTION TO DISMISS** |
| 16 | **v.** | |
| 17 | **STATE OF CALIFORNIA; et al.,** | Date:         April 24, 2020 |
| 18 | Defendants. | Time:         9:30 a.m. |
| | | Courtroom:  8C, 8th Floor |
| 19 | | Judge:        Hon. Dolly M. Gee |
| 20 | | Trial Date:   Not set |
| | | Action Filed: December 30, 2019 |

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

Introduction..................................................................................................... 1

Background ...................................................................................................... 2

    A.    In *Dynamex*, the California Supreme Court Adopted the ABC Test. ................................................................................................. 2

    B.    Assembly Bill 5 Codified the ABC Test to Remedy Widespread Misclassification of Employees as Independent Contractors. ............................................................. 3

    C.    The Statutory Exemptions. ........................................................... 4

    D.    Allegations of the Complaint........................................................ 6

Legal Standard ................................................................................................ 7

Argument ........................................................................................................ 8

I.    Plaintiffs' Equal Protection Claims (Claims I and II) Fail Because AB 5 is rationally related to a legitimate government interest. ................................................................................................ 8

    A.    The Legislature's Interest in Protecting Exploited Workers to Address the Erosion of the Middle Class and Income Inequality Is a Rational Basis for Any Ostensible Targeting of Gig Economy Employers and Workers. ................. 9

    B.    The Complaint's Allegations of "Animus" Do Not Suffice to Allege Actionable Claims...................................................... 10

II.    Plaintiffs' Due Process Claims (Claims IV, V, and VIII) Fail because AB 5 Determines Legal Classification, Not Occupation ...... 14

III.    Plaintiffs' Contract Clause Claims (Claims IX and X) Fail to Allege any Unconstitutional Impairment............................................. 16

IV.    Plaintiffs' Claims for Violation of The Ninth Amendment, "Baby Ninth," and Inalienable Rights Provision of the California Constitution (Claims VI, III, and VII) Fail For Lack of Enforceable Rights. .................................................................... 20

V.    The State of California Is Immune From Suit in Federal Court. ........ 23

Conclusion .................................................................................................... 23

i

# TABLE OF AUTHORITIES

**Page**

C**ASES**

*Alexander v. FedEx Ground Package Sys., Inc.*
   765 F.3d 981 (9th Cir. 2014)............................................................. 16

*Allen v. Bd. of Administration*
   34 Cal. 3d 114 (Cal. 1983) .............................................................. 18

*Amer. Law Foundation v. Meyer*
   120 F.3d 1092 (10th Cir. 1997)........................................................ 22

*Anchorage v. Integrated Concepts & Research Corp.*
   1 F. Supp. 3d 1001 (D. Alaska 2014)................................................. 8

*Angelotti Chiropractic v. Baker*
   791 F.3d 1075 (9th Cir. 2015).......................................................... 14

*Arizona Hospital & Healthcare Ass'n v. Betlach*
   862 F. Supp. 2d 978 (D. Ariz. 2012)................................................... 7

*Ashcroft v. Iqbal*
   556 U.S. 662 (2009) .................................................................... 7, 8

*Bell Atlantic Corp. v. Twombly*
   550 U.S. 544 (2007) ....................................................................... 7

*Berwick v. Uber Technologies, Inc.*
   Case No. 11-46739 EK, 2015 WL 4153765 (Cal. Lab. Comm'r
   June 3, 2015)................................................................................ 6

*Chorn v. Workers' Comp. Appeals Bd.*
   245 Cal. App. 4th 1370 (Cal. Ct. App. 2016) ..................................... 19

*City of Carmel-by-the-Sea v. Young*
   2 Cal. 3d 259 (Cal. 1970) .............................................................. 23

*City of Cleburne v. Cleburne Living Ctr.*
   473 U.S. 432 (1985) ....................................................................... 9

# TABLE OF AUTHORITIES
### (continued)

Page

*Clausing v. San Francisco Unified School Dist.*
221 Cal. App. 3d 1224 (Cal. Ct. App. 1990)..........................................................23

*Clements v. Fashing*
457 U.S. 957 (1982) ...............................................................................................13

*Coakley v. Murphy*
884 F.2d 1218 (9th Cir. 1989)..................................................................................8

*Conn v. Gabbert*
526 U.S. 286 (1999) .........................................................................................15, 16

*Cornwell v. Hamilton*
80 F. Supp. 2d 1101 (S.D. Cal. 1999) ...................................................................16

*Cotter v. Lyft, Inc.*
60 F. Supp. 3d 1067 (N.D. Cal. 2015).....................................................................6

*Deanco Healthcare, LLC v. Becerra*
365 F. Supp. 3d 1029 (C.D. Cal. 2019)..................................................................24

*Dittman v. California*
191 F.3d 1020 (9th Cir. 1999)................................................................................16

*Doe v. Uber Technologies, Inc.*
184 F. Supp. 3d 774 (N.D. Cal. 2016).....................................................................6

*Dynamex Operations W. v. Superior Court*
4 Cal. 5th 903 (Cal. 2018) ....................................................................2, 3, 10, 17

*Energy Reserves Group, Inc. v. Kansas Power & Light Co.*
459 U.S. 400 (1983) .................................................................................18, 19, 20

*Engquist v. Or. Dep't of Agric.*
478 F.3d 985 (9th Cir. 2007)..................................................................................17

*Erotic Serv. Provider Legal Educ. and Research Project v. Gascon*
880 F.3d 450 (9th Cir. 2018)..................................................................................17

*FCC v. Beach Communications, Inc.*
508 U.S. 307 (1993) ...........................................................................................9, 10

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Franceschi v. Yee*
    887 F.3d 927 (9th Cir. 2018) ....................................................................... 15, 17

*Gallinger v. Becerra*
    898 F.3d 1012 (9th Cir. 2018) ............................................................................ 14

*Gibson v. Matthews*
    926 F.2d 532 (7th Cir. 1991) .............................................................................. 22

*Greene v. Dayton*
    806 F.3d 1146 (8th Cir. 2015) ............................................................................ 20

*Halverson v. Skagit Cty.*
    42 F.3d 1257 (9th Cir. 1994) .............................................................................. 15

*Hardesty v. Sacramento Metro. Air Quality Mgmt. Dist.*
    307 F. Supp. 3d 1010 (E.D. Cal. 2018) .............................................................. 16

*Hertzberg v. Dignity Partners, Inc.*
    191 F.3d 1076 (9th Cir. 1999) ............................................................................ 14

*Hoohuli v. Ariyoshi*
    631 F. Supp. 1153 (D. Hawaii 1986) ................................................................. 12

*Hudson Water Co. v. McCarter*
    209 U.S. 349 (1908) ........................................................................................... 19

*In re Cutera Securities Litig.*
    610 F.3d 1103 (9th Cir. 2010) .............................................................................. 7

*In re Kelly*
    841 F.2d 908 (9th Cir. 1988) .............................................................................. 14

*In re Monrovia Evening Post*
    199 Cal. 263 (Cal. 1926) .................................................................................... 21

*Leger v. Stockton Unif. Sch. Dist.*
    202 Cal. App. 3d 1448 (Cal. Ct. App. 1988) ..................................................... 23

*Lindsley v. Natural Carbonic Gas Co.*
    220 U.S. 61 (1911) ............................................................................................. 13

# TABLE OF AUTHORITIES
## (continued)

Page

*Linton v. Desoto Cab Co., Inc.*
15 Cal. App. 5th 1208 (2017)....................................................................1

*Manduley v. Super. Ct.*
27 Cal. 4th 537 (Cal. 2002) .......................................................................9

*McCarthy v. United States*
850 F.2d 558 (9th Cir. 1988)......................................................................8

*Nordlinger v. Hahn*
505 U.S 1 (1992) ..................................................................................9, 10

*O'Connor v. Uber Technologies, Inc.*
82 F. Supp. 3d 1133 (N.D. Cal. 2015).......................................................6

*Owens v. City of Signal Hill*
154 Cal. App. 3d 123 (Cal. Ct. App. 1984)..............................................16

*Pennhurst State Sch. & Hosp. v. Halderman*
465 U.S. 89 (1984) ...................................................................................24

*People v. Cruz*
207 Cal. App. 4th 664 (Cal. Ct. App. 2012) ..............................................9

*People v. De La Torre*
257 Cal. App. 2d 162 (Cal. Ct. App. 1967).............................................21

*Real v. Driscoll Strawberry Associates, Inc.*
603 F.2d 748 (9th Cir. 1979)....................................................................21

*RUI One Corp. v. City of Berkeley*
371 F.3d 1137 (9th Cir. 2004)...............................................................9, 20

*S.G. Borello & Sons, Inc. v. Dep't of Indus. Relations*
48 Cal. 3d 341 (Cal. 1988) ............................................................1, 2, 6, 21

*San Diego Cty. Gun Rights Comm. v. Reno*
98 F.3d 1121 (9th Cir. 1996)....................................................................22

*Sanchez v. City of Reno*
914 F. Supp. 2d 1079 (E.D. Cal. 2012)....................................................16

**TABLE OF AUTHORITIES**
(continued)

Page

*Schowengerdt v. U.S.*
944 F.2d 483 (9th Cir. 1991) ................................................................. 22

*Severns v. Union Pacific Railroad Co.*
101 Cal. App. 4th 1209 (Cal. Ct. App. 2002) ....................................... 18

*Smith v. Reyes*
904 F. Supp. 2d 1070 (S.D. Cal. 2012) .................................................. 8

*Strandberg v. City of Helena*
791 F.2d 744 (9th Cir. 1986) ................................................................. 22

*Tieberg v. Unemployment Ins. App. Bd.*
2 Cal 3d 943 (Cal. 1970) ....................................................................... 21

*Truax v. Raich*
239 U.S. 33 (1915) ................................................................................. 16

*U.S. v. Ninety Three Firearms*
330 F.3d 414 (6th Cir. 2003) ................................................................. 14

*U.S. v. Ritchie*
342 F.3d 903 (9th Cir. 2003) .................................................................. 8

*Washington Health Care Ass'n v. Arnold-Williams*
601 F. Supp. 2d 1224 (W.D. Wash. 2009) ............................................ 18

*Western States Trucking Ass'n v. Schoorl*
377 F. Supp. 3d 1056 (E.D. Cal. 2019) ................................................ 17

**STATUTES**

California Labor Code
§ 2750.3(a)(1) ................................................................................... 4, 10
§ 2750.3(c) ........................................................................................... 13
§ 2750.3(e) ........................................................................................... 13
§ 3351(i) ........................................................................................... 4, 10

vi

# TABLE OF AUTHORITIES
### (continued)

Page

**CONSTITUTIONAL PROVISIONS**

California Constitution
    Article I, § 9 ............................................................................. 18
    Article I, § 24 ........................................................................... 22
    Article 14, § 1 .......................................................................... 21

United States Constitution
    Ninth Amendment ........................................................ 2, 7, 21, 22
    Eleventh Amendment ................................................................ 24
    Fourteenth Amendment ....................................................... *passim*
    Article I, § 10, cl. 1 ............................................................ *passim*

**COURT RULES**

Federal Rule of Civil Procedure
    Rule 12(b)(1) ............................................................................. 8
    Rule 12(b)(6) ......................................................................... 7, 8

**OTHER AUTHORITIES**

California Assembly Bill
    5 ................................................................................................. 3
    5, § 1(c) ................................................................................ 3, 10
    5, § 1(e) ................................................................................ 4, 10
    5, § 1(g) ................................................................................... 17

**INTRODUCTION**

In denying Plaintiffs' request for a preliminary injunction, the Court correctly held that Plaintiffs' attacks on AB 5 fail to raise any serious questions as to the constitutionality of the law. For many of the same reasons contained in that decision, the Court should now dismiss Plaintiffs' challenge in its entirety.

To combat the ills of worker misclassification, California enacted Assembly Bill (AB) 5, which defines how employment status is determined for purposes of certain state laws. AB 5 did not create the employee/independent contractor distinction, which is both longstanding and of significance. Under California's protective labor laws, workers have long been presumed to be employees with a variety of rights,[1] including the minimum wage, safe working conditions, sick leave, worker's compensation benefits if they are injured on the job, unemployment benefits if they lose their job, and disability benefits if they are disabled and cannot work. Bona fide independent contractors do not enjoy such protections.

Given the difference in protections employees enjoy under the law, in enacting AB 5, the Legislature recognized that worker misclassification exploits workers, harms their families, and puts competitors who properly classify workers at a competitive disadvantage. The public good also suffers. Misclassification shifts costs from employers to taxpayers, robs the state of taxes it uses to fund the social safety net, and degrades the quality of jobs, causing more workers (and their families) to require the social safety net and contributing to income inequality. Thus, to mitigate these harms, AB 5 codified and expanded application of the simplified "ABC" test, which the California Supreme Court previously adopted in 2018 after recognizing the "significant disadvantages" the then-existing generally

---

[1] *See, e.g., S.G. Borello & Sons, Inc. v. Dep't of Indus. Relations*, 48 Cal. 3d 341, 349 (Cal. 1988) ("One seeking to avoid liability has the burden of proving that persons whose services he has retained are independent contractors rather than employees."); *Linton v. Desoto Cab Co., Inc.*, 15 Cal. App. 5th 1208, 1220-21 (2017) (noting that *Borello* rebuttable presumption of employment applies to Labor Code "provisions falling outside workers' compensation").

applicable multi-factor test had.  *See Dynamex Operations W. v. Superior Court*, 4 Cal. 5th 903, 954-55 (Cal. 2018).

In this case, two corporate and two individual Plaintiffs seek to invalidate and enjoin enforcement of AB 5, alleging a lengthy list of federal and state constitutional violations.  Plaintiffs claim that the law unfairly "targets" online companies, discriminates on the basis of occupation, and prevents the pursuit of a chosen occupation.  None of these claims has merit.  Plaintiffs' Equal Protection, Due Process, and Contract Clause claims under the U.S. and California Constitutions fail as a matter of law for the same reasons the Court cataloged in its order denying preliminary injunctive relief.  For similar reasons, Plaintiffs' related claims under the Ninth Amendment, and the "Baby Ninth" and Inalienable Rights provision of the California Constitution also fail as a matter of law.  Accordingly, the Court should dismiss the Complaint without leave to amend.

## BACKGROUND[2]

### A.   In *Dynamex*, the California Supreme Court Adopted the ABC Test.

The distinction between workers classified as employees and those classified as independent contractors is significant because California law affords employees rights that independent contractors do not enjoy.  *See Dynamex*, 4 Cal. 5th at 912. Prior to 2018, regulatory agencies and courts used a multi-factor test enunciated in *S.G. Borello & Sons, Inc. v. Department of Industrial Relations*, 48 Cal. 3d 341 (Cal. 1989) (*Borello*).  In April 2018, the California Supreme Court held that courts must apply the ABC test, rather than *Borello*, to determine whether a worker is classified as an employee for certain purposes under California's labor laws.  *Id.* at 916.  *Dynamex* noted that the "critically important objectives" of wage and hour laws, including ensuring low income workers' wages and conditions despite their

---

[2] This section is substantially drawn from Defendants' opposition to Plaintiffs' motion for a preliminary injunction, except section C.

weak bargaining power, "support a very broad definition of the workers" who fall within the employee classification. *Dynamex*, 4 Cal. 5th at 952. Similarly, a broad definition benefits "those law-abiding businesses that comply with the obligations imposed" by state labor laws, "ensuring that such responsible companies are not hurt by unfair competition from competitor businesses that utilize substandard employment practices." *Id.* Lastly, the ABC test also benefits "the public at large, because if the wage orders' obligations are not fulfilled, the public often will be left to assume the responsibility of the ill effects to workers and their families resulting from substandard wages or unhealthy and unsafe working conditions." *Id.* at 953.

Under the ABC test, a worker is classified as an employee, rather than an independent contractor, unless the hiring entity establishes: (a) that the worker is "free from the control and direction of the hirer in connection with the performance of the work, both under the contract for the performance of such work and in fact;" (b) that the worker "performs work that is outside the usual course of the hiring entity's business;" and (c) that the worker is "customarily engaged in an independently established trade, occupation, or business of the same nature as the work performed for the hiring entity." *Id.* at 916-17.

### B. Assembly Bill 5 Codified the ABC Test to Remedy Widespread Misclassification of Employees as Independent Contractors.

On September 18, 2019, California enacted AB 5, which became effective January 1, 2020. AB 5 codified and expanded the scope of the ABC test adopted in *Dynamex.* The Legislature found that "[t]he misclassification of workers as independent contractors has been a significant factor in the erosion of the middle class and the rise in income inequality." (AB 5 § 1(c).) In enacting AB 5, the Legislature intended "to ensure workers who are currently exploited by being misclassified as independent contractors instead of recognized as employees have the basic rights and protections they deserve under the law," including minimum

wage, workers' compensation, unemployment insurance, paid sick leave, and paid family leave.  (*Id.* § 1(e).)

The Legislature noted that "a 2000 study commissioned by the U.S. Department of Labor found that nationally between 10% and 30% of audited employers misclassified workers," and that a 2017 audit program by the California Employment Development Department that conducted 7,937 audits and investigations "identified nearly *half a million* unreported employees."  (Bill Analysis, Assembly Committee on Labor and Employment 7/5/19 at p. 2, available at https://leginfo.legislature.ca.gov/faces/billAnalysisClient.xhtml?bill_id=201920200AB5 [last visited Feb. 12, 2020] (emphasis in original).)  Misclassification, the Legislature further noted, is particularly prevalent in certain growing industries.  "Recent research also supports the prevalence of misclassification and finds some of the highest misclassification rates in the economy's growth industries, including home care, janitorial, trucking, construction, hospitality, security, and the app-based 'on demand' sector."  (*Id.*)

By adopting the ABC test, AB 5 "restores these important protections to potentially several million workers who have been denied these basic workplace rights that all employees are entitled to under the law."  (AB 5 § 1(e).)  AB 5 extends the ABC test to include (among other things) workers' compensation, unemployment insurance, and disability insurance.  Cal. Lab. Code, § 2750.3(a)(1); *id.* § 3351(i).

## C.   The Statutory Exemptions.

AB 5 also created limited statutory exemptions to the ABC test for certain occupations and industries, where the Legislature felt the ABC test was not a good fit.  The Legislature considered various factors in deciding on these exemptions, including whether the individuals hold professional licenses (for example, insurance brokers, physicians and surgeons, and securities dealers).  (Bill Analysis,

Senate Committee on Labor Employment and Retirement 7/8/19 at pp. 2-3, https://leginfo.legislature.ca.gov/faces/billAnalysisClient.xhtml?bill_id=201920200 AB5 [last visited Feb. 12, 2020].)  Other factors considered included whether the worker is truly free from direction or control of the hiring entity (for example, workers providing hairstyling and barbering services who have their own set of clients and set their own rates).  (*Id.*)  Still others were considered for an exemption if they perform "professional services," as a sole proprietor or other business entity and meet specific indicia of status as independent businesses.  (*Id.*)  In its effort to identify the hallmarks of true independent contractors for purpose of exemptions from the ABC test, the Legislature also considered the bargaining power of workers in particular occupations and industries, the ability of the worker in particular occupations and industries to set their own rate of pay, and the nature of the relationship between the contractor and the client.  (*Id.* at 8-10.)

The legislative history also specifically addressed concerns about AB 5's impact on "digital applications," and the "gig economy," noting that while there had been significant media attention on the issue, the bill in fact made no distinction between app-based companies and traditional businesses.  (Bill Analysis, Senate Committee on Labor Employment and Retirement 7/8/19 at p. 10, https://leginfo.legislature.ca.gov/faces/billAnalysisClient.xhtml?bill_id=201920200 AB5 [last visited Feb. 12, 2020].)  In discussing the exemptions, the legislature noted that the means by which a customer obtains the worker's services are irrelevant to the worker's status as an employee or independent contractor.  (*Id.*)  "[I]f a client secures the services of a contractor through an intermediary, it is unclear how the People of California are well served if a law makes a distinction between the intermediary being contacted through the Yellow Pages or the internet."  (*Id.*)  Ultimately, "[t]he core question is if the intermediary is, to use the legal world as a model, deriving disproportionate benefits from the relationship."  (*Id.*)  "A company that utilizes the independent contractor model to undercut the

1  employer-based model to cut costs and achieve profitability or scale is a company

2  that misclassifies its workers." (*Id.*)

3  **D.  Allegations of the Complaint.**

4      Plaintiffs Uber and Postmates (the Company Plaintiffs) operate application-

5  based platforms to deliver transportation services to individual consumers.  (ECF

6  No. 1 at ¶¶ 32-33.)  Plaintiffs Olson and Perez are individuals who use app-based

7  platforms of Uber and Postmates "to get leads" for passenger and delivery requests.

8  (*Id.* at 13 ¶¶ 30-31.)  Plaintiffs challenge AB 5 as "vague" and "incoherent," and

9  contend that it does not further the Legislature's goals.  (*Id.* at 8 ¶ 19.)  They argue

10  that AB 5 requires the Company Plaintiffs to fundamentally restructure their

11  business model, thus imposing economic, administrative and other costs.  (*Id.* at 8-9

12  ¶ 20.)

13      The complaint notes that AB 5 has numerous exemptions, and alleges that

14  "[t]he legislature added these carve-outs to AB 5 solely for interest groups and

15  labor."  (ECF No. 1 at 18 ¶ 54.)  "The statutory exemptions carve out most types of

16  workers traditionally considered to be independent contractors, with a glaring and

17  intentional exception: app-based independent services providers."  (*Id.* ¶ 56.)[3]

18  Plaintiffs cite alleged inconsistencies or purported irrationality in AB 5's

19  exemptions, and complain that the law "does not identify any data, studies, reports,

20  or other justification or explanation for its exemptions."  (*Id.* at 21 ¶¶ 59-60.)

21      [3] The complaint alleges no facts supporting the conclusion that these workers were "traditionally considered to be independent contractors" other than a citation

22  to one court decision.  (*Id.* ¶ 55.)  Indeed, the California Labor Commissioner has already determined that, under *Borello*, one of Plaintiff Uber's drivers was

23  misclassified as an independent contractor.  *See Berwick v. Uber Technologies, Inc.*, Case No. 11-46739 EK, 2015 WL 4153765 (Cal. Lab. Comm'r June 3, 2015).

24  Moreover, multiple court decisions have rejected attempts by app-based employers to dismiss claims that their drivers are employees, concluding that there are

25  disputed issues of fact.  *O'Connor v. Uber Technologies, Inc.*, 82 F. Supp. 3d 1133, 1138 (N.D. Cal. 2015); *see also Doe v. Uber Technologies, Inc.*, 184 F. Supp. 3d

26  774, 783 (N.D. Cal. 2016) (in action by customers alleging sexual assault by Uber drivers, holding at motion to dismiss stage that plaintiffs "alleged sufficient facts

27  that employment relationship may plausibly exist"); *Cotter v. Lyft, Inc.*, 60 F. Supp. 3d 1067 (N.D. Cal. 2015) (holding that genuine issue of material fact whether

28  carrier improperly classified drivers as independent contractors).

1    Plaintiffs also conclude, without alleging any facts, that "many of the exemptions

2    [were included] as political favors or to politically favored groups without any valid

3    legislative purpose or rational basis." (*Id.* ¶ 61.)

4        Plaintiffs allege that AB 5 violates a litany of state and federal constitutional

5    provisions (ECF No. 1 at 35-37). "Plaintiffs' Complaint contains 10 claims against

6    Defendants for violations of the U.S. Constitution's Ninth Amendment and Equal

7    Protection, Due Process, and Contract Clauses and the California Constitution's

8    'Baby Ninth Amendment' and Inalienable Rights, Equal Protection, Due Process,

9    and Contract Clauses." (ECF No. 52 at 7.) Plaintiffs seek declaratory and

10   injunctive relief, as well as attorney's fees. (ECF No. 1 at 47-48.)

11                                **LEGAL STANDARD**

12       Under Federal Rule of Civil Procedure 12(b)(6), a complaint should be

13   dismissed if it fails to state a claim upon which relief can be granted. Although a

14   complaint attacked by a motion to dismiss does not need "detailed factual

15   allegations," it must contain "more than labels and conclusions, and a formulaic

16   recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v.*

17   *Twombly*, 550 U.S. 544, 555 (2007) (internal citation omitted). A court should

18   dismiss a complaint "if it fails to plead enough facts to state a claim to relief that is

19   plausible in its face." *In re Cutera Securities Litig.*, 610 F.3d 1103, 1107 (9th Cir.

20   2010) (citation omitted).

21       In ruling on a motion to dismiss, a court does not accept as true a complaint's

22   legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial

23   plausibility when the plaintiff pleads factual content that allows the court to draw

24   the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

25   at 678. "Legal conclusions couched as factual allegations 'are not entitled to the

26   assumption of truth.'" *Arizona Hospital & Healthcare Ass'n v. Betlach*, 862 F.

27   Supp. 2d 978, 987 (D. Ariz. 2012) (quoting *Iqbal*). "Threadbare recitals of the

28

elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Under Rule 12(b)(1), a party can move to dismiss a complaint of lack of subject-matter jurisdiction.[4]  Courts can consider certain materials outside the complaint without converting the motion into a motion for summary judgment, whether under Rule 12(b)(1) or (b)(6).  *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988) (Rule 12(b)(1)); *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (noting that a court ruling on a motion to dismiss may consider certain documents outside the complaint, including documents incorporated by reference in the complaint, or judicially noticeable).  If a complaint's defects are not curable, the court should dismiss without leave to amend.  *See Coakley v. Murphy*, 884 F.2d 1218, 1222 (9th Cir. 1989).

## ARGUMENT

### I.   PLAINTIFFS' EQUAL PROTECTION CLAIMS (CLAIMS I AND II) FAIL BECAUSE AB 5 IS RATIONALLY RELATED TO A LEGITIMATE GOVERNMENT INTEREST.

Plaintiffs claim that AB 5 violates their equal protection rights under the U.S. and California Constitutions (Claims I and II).  (ECF No. 1 at 35-38 ¶¶ 100-115.) They allege that AB 5 improperly "draws classifications between network companies and non-network companies," and "between independent service providers and non-independent service providers."  (*Id.* at 35 ¶¶ 101-102.) Focusing on exemptions granted in the statute to "non-network companies," they claim that this is evidence of "irrational animus," and contend that strict scrutiny applies because the statute purportedly burdens the fundamental right to pursue a chosen profession.  (*Id.* at 36 ¶ 104.)  As the Court concluded in denying Plaintiffs' motion for a preliminary injunction, this claim is subject to deferential rational

---

[4] Courts have found that sovereign immunity is properly raised under Rule 12(b)(6) and 12(b)(1).  *Compare Smith v. Reyes*, 904 F. Supp. 2d 1070, 1072-72 (S.D. Cal. 2012), *with Anchorage v. Integrated Concepts & Research Corp.*, 1 F. Supp. 3d 1001, 1006 (D. Alaska 2014).  In an abundance of caution, Defendants bring this motion under both provisions.

basis review, under which state law benefits from a presumption of validity and the party attacking the legislative classification bears the burden "to negative every conceivable basis which might support it," (ECF No. 52 at 7 (internal citations and quotations omitted)), and satisfies that standard as a matter of law.

**A.    The Legislature's Interest in Protecting Exploited Workers to Address the Erosion of the Middle Class and Income Inequality Is a Rational Basis for Any Ostensible Targeting of Gig Economy Employers and Workers.**

The Equal Protection Clause forbids the government from "deny[ing] to any person within its jurisdiction the equal protection of the laws." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  It is clear that, "unless a [statutory] classification warrants some form of heightened review because it jeopardizes exercise of a fundamental right or categorizes on the basis of an inherently suspect characteristic, the Equal Protection Clause requires only that the classification rationally further a legitimate state interest." *Nordlinger v. Hahn*, 505 U.S 1, 10 (1992).[5]

Absent a suspect class, distinctions drawn in legislation are subject to rational basis review.  *FCC v. Beach Communications, Inc.*, 508 U.S. 307, 313 (1993). Under this standard, "legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *City of Cleburne*, 473 U.S. at 440.  Thus, when social or economic legislation is at issue, the Equal Protection Clause allows the States "wide latitude." *Id.*  As stated by the Supreme Court:

---

[5] Plaintiffs' claim under the California Constitution's Equal Protection Clause fails because both equal protection provisions are interpreted similarly. *Manduley v. Super. Ct.*, 27 Cal. 4th 537, 571-72 (Cal. 2002) ("[W]e deem our analysis of petitioners' equal protection claim under the Fourteenth Amendment to the United States Constitution also applicable to their equal protection claim made pursuant to provisions in the California Constitution."); *see also People v. Cruz*, 207 Cal. App. 4th 664, 674 (Cal. Ct. App. 2012).  Federal courts have held that the "equal protection analysis under the California Constitution is 'substantially similar' to analysis under the federal Equal Protection Clause.'" *RUI One Corp. v. City of Berkeley*, 371 F.3d 1137, 1154 (9th Cir. 2004).

> Whether embodied in the Fourteenth Amendment or inferred from the Fifth, equal protection is not a license for courts to judge the wisdom, fairness, or logic of legislative choices. In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.

*Beach Communications, Inc.*, 508 U.S. at 313.

The legislative history makes clear that AB 5 seeks to remedy the widespread misclassification of workers as independent contractors, which the Legislature determined "has been a significant factor in the erosion of the middle class and the rise in income inequality." (AB 5 § 1(c).) The Legislature wanted to ensure that workers were afforded the appropriate protections under state law, including minimum wage, workers' compensation, unemployment insurance, paid sick leave, and paid family leave. (*Id.* § 1(e).) To this end, AB 5 codifies the ABC test adopted in *Dynamex*, and uses this standard to determine the proper classification of workers for purposes of the California Labor Code, California Unemployment Insurance Code, and the Industrial Welfare Commission (IWC) Wage Orders. Cal. Lab. Code, § 2750.3, subd. (a)(1); *id.*, § 3351(i).

Given this evidence in the legislative history of the policy reasons for the classification, AB 5 passes muster under the deferential rational basis review accorded to economic legislation. *Nordlinger*, 505 U.S. at 11 ("In general, the Equal Protection Clause is satisfied so long as there is a plausible policy reason for the classification."). "Those attacking the rationality of the legislative classification have the burden 'to negative every conceivable basis which might support it.'" *Beach Communications*, 508 U.S. at 315. Plaintiffs have not done so.

**B. The Complaint's Allegations of "Animus" Do Not Suffice to Allege Actionable Claims.**

Plaintiffs contend that AB 5 "singles out" app-based companies and what they label "independent service providers" but cite nothing in AB 5 that actually

targets these companies for negative treatment (or even mentions them).  (ECF No. 1 at 35-36 ¶ 103.)  Nor can they—AB 5 is generally applicable to all employment arrangements except those that are specifically exempted.[6]  The Complaint also singles out some of these exemptions as "wholly arbitrary," and complains that AB 5 provides no supporting studies or reports for its exemptions.  (*Id.* at 21 ¶¶ 59-60).

As the legislative history demonstrates, the Legislature considered concerns about the impact of AB 5 on "digital applications," and the "gig economy," and ultimately concluded that workers in these industries face the same risk of misclassification and should not be treated differently from those working for traditional businesses.  (Bill Analysis, Senate Committee on Labor Employment and Retirement 7/8/19 at p. 10 [last visited Feb. 12, 2020] (discussing the law's "[t]echnological [n]eutrality.").)  Moreover, the Legislature considered various factors in carving out exemptions from AB 5, including whether the individuals hold professional licenses, whether the worker is wholly free from direction or control of the hiring entity (for example, workers providing hairstyling and barbering services who have their own set of clients and set their own rates), and if the worker performs "professional services," as a sole proprietor or other business entity operating as a truly independent business.  (Bill Analysis, Senate Committee on Labor Employment and Retirement 7/8/19 at pp. 2-3 [last visited Feb. 12, 2020].)  Attempting to identify true independent contractors, the Legislature also considered the bargaining power of workers in particular occupations and industries, the ability of the worker in particular occupations and industries to set their own rate of pay, and the nature of the relationship between the contractor and the client.  (*Id.* at 8-10.)  This is within the Legislature's prerogative, and fully consonant with the legislative goals to address misclassification in growth industries.  *See Hoohuli v. Ariyoshi*, 631 F. Supp. 1153, 1161 (D. Hawaii 1986)

---

[6] As the Court noted in denying Plaintiffs' motion for a preliminary injunction, the allegation that AB 5 is "inexplicable" by anything but animus, "is plainly belied by the expansive language of the statute."  (ECF No. 52 at 11.)

1   ("Although the plaintiffs might *disagree* with the legislature's bases for line-

2   drawing, it is clear that these bases are rational and reasonably further the

3   legislative purpose.").  Notably, as the Court recognized, the exempted occupations

4   that Plaintiffs identify as purported evidence that the statute is "targeting" them for

5   "disfavored treatment" actually contain numerous criteria that render them

6   substantially different from app-based drivers.  (ECF No. 52 at 8-9 (discussing the

7   outside sales and service provider exemptions).)  The same is true of the business-

8   to-business exemption and the exemptions for freelancers and barbers about which

9   Plaintiffs also complain.  *See* Cal. Lab. Code 2750.3(c) & (e).

10       In the area of economics and social welfare, a state does not violate the Equal

11   Protection Clause if the classification has some "reasonable basis."  *Lindsley v.*

12   *Natural Carbonic Gas Co.*, 220 U.S. 61, 78 (1911); *Clements v. Fashing*, 457 U.S.

13   957, 963 (1982) ("Classifications are set aside only if they are based solely on

14   reasons totally unrelated to the pursuit of the State's goals and only if no grounds

15   can be conceived to justify them.").  All the exemptions in AB 5 fall into the

16   category of discretionary legislative line-drawing in generally applicable economic

17   regulation, and are presumptively valid.

18       Plaintiffs' equal protection claim hinges on their assertion that AB 5 was

19   motivated by an intent to "target" network companies, and that it is "inexplicable

20   by anything but animus toward the class it is designed to affect."  (ECF No. 1 at 37-

21   38 ¶¶ 107, 111.)  The facts alleged to support this conclusion are media reports of

22   comments made by individual legislators that the statute was meant to address in

23   part concerns about the so-called "gig economy."  (*Id.* at 7 ¶ 15.)  However, as the

24   legislative history demonstrates, the Legislature was concerned that

25   misclassification is rampant in particular growth industries, including the app-based

26   sector.  (Bill Analysis, Assembly Committee on Labor and Employment 7/5/19 at

27   p. 2, available at

28   https://leginfo.legislature.ca.gov/faces/billAnalysisClient.xhtml?bill_id=201920200

1   AB5 [last visited Feb. 11, 2020].)  This concern was well-founded.  As noted

2   above, the California Labor Commissioner had previously determined that Plaintiff

3   Uber misclassified one of its app-based drivers, and courts have rejected Uber's and

4   other similar companies' attempts to dismiss misclassification cases.  *See*, *supra*, 6

5   n.2.  Indeed, the comments Plaintiffs rely on reflect this particular concern.  (ECF

6   No. 52 at 12 n.12 ["The Court notes that many of the legislators' comments

7   selected by Plaintiffs appear to refer to Uber, Postmates, and other gig economy

8   companies as examples of a larger problem of misclassification by corporations, not

9   as the sole targets of AB 5."].)[7]  Relying on bare assertions of "commentators,"

10  Plaintiffs also cite "explicit targeting" of companies like Uber and Lyft as evidence

11  of purported "animus." (ECF No. 1 at 26 ¶ 68 & n.44.)  These comments and

12  opinions also fail to state a claim.  *Gallinger v. Becerra*, 898 F.3d 1012, 1020 (9th

13  Cir. 2018) (rejecting conclusory allegations that statute was motivated by animus).

14       The Complaint also alleges that the statutory exemptions in AB 5 resulted

15  from "back door" deals and "political favors to industry groups," and complain that

16  Plaintiffs also sought an exemption but were unsuccessful.  (ECF No. 1 at 37 ¶

17  109.)  As the Ninth Circuit has pointed out, "[a]ccommodating one interest group is

18  not equivalent to intentionally harming another."  *Gallinger*, 898 F.3d at 1021.

19  Indeed, to challenge the exemptions on equal protection grounds, because rational

20  basis review applies, Plaintiffs have the burden to "negate 'every conceivable basis'

21  which might have supported the distinction" made between covered occupations

22  and those that are exempted.  *Angelotti Chiropractic v. Baker*, 791 F.3d 1075, 1086

23

24

---

25  [7] As federal courts have noted in other contexts, stray comments from a handful of legislators in the legislative history do not demonstrate the intent of a legislative body.  *Cf. U.S. v. Ninety Three Firearms*, 330 F.3d 414, 423 (6th Cir.

26  2003) (noting that "reliance on one stray comment in the legislative history cannot override the statute's structure, meaning, and purpose," and that a legislative body

27  "votes on the statute in its entirety" rather than one sponsor's comments alone); *Hertzberg v. Dignity Partners, Inc.*, 191 F.3d 1076, 1082 (9th Cir. 1999); *see also*

28  *In re Kelly*, 841 F.2d 908, 912 n.3 (9th Cir. 1988).

1  (9th Cir. 2015) (quoting *Armour v. City of Indianapolis*, 132 S. Ct. 2073, 2080-81
2  (2012)).

3      Ultimately, as the Court previously pointed out, even assuming animus, such
4  allegations "do[] not establish an Equal Protection violation where the statute
5  addresses legitimate concerns of deleterious misclassification of workers in many
6  industries, not just the gig economy."  (ECF No. 52 at 13.)

7  **II.  PLAINTIFFS' DUE PROCESS CLAIMS (CLAIMS IV, V, AND VIII) FAIL
      BECAUSE AB 5 DETERMINES LEGAL CLASSIFICATION, NOT
8      OCCUPATION.**

9      Plaintiffs contend that AB 5 violates their due process rights to "pursue
10  chosen occupation."  (ECF No. 1 at 40-41 ¶¶ 121-128; ECF No. 1 at 42 ¶¶ 134-
11  135.)  But AB 5 does not prohibit anyone from working in an occupation of his or
12  her choosing, and the due process claims thus fail under the applicable deferential
13  standard under both the U.S. and California Constitutions (Claims IV, V, and
14  VIII).[8]  As this Court recognized, Plaintiffs confuse classification on the one hand,
15  with occupation or profession on the other.  (ECF No. 52 at 14.)

16      Courts have found a liberty interest based on some "generalized due process
17  right to choose one's field of private employment."  *Conn v. Gabbert*, 526 U.S.
18  286, 291-92 (1999).  But "that right is subject to reasonable government
19  regulation."  *Franceschi v. Yee*, 887 F.3d 927, 937-38 (9th Cir. 2018).  The cases
20  establishing a liberty interest in pursuing a chosen profession "all deal[] with a
21  complete prohibition of the right to engage in a calling."  *Id.* at 938 (citing *Conn*,
22  526 U.S. at 292).  Moreover, because this liberty interest is not a fundamental right,

23

24  ─────────────
    [8] Plaintiffs' Claims V and VIII both arise under the California Constitution's
    Due Process Clause, but the Complaint does not differentiate between the claims.
25  (*Compare* ECF No. 1 at 41 ¶¶ 127-128, with *id.* at 42 ¶¶ 134-135.)  The sole
    difference appears to be that the former claim focusses on a purported "right to
26  pursue chosen occupation," while the latter arises under a generalized due process
    right.  Plaintiffs do not appear to raise a procedural due process claim, and such a
27  challenge would fail because "[w]hen the action complained of is legislative in
    nature, due process is satisfied when the legislative body performs its
    responsibilities in the normal manner prescribed by law."  *Halverson v. Skagit Cty.*,
28  42 F.3d 1257, 1260 (9th Cir. 1994).

the Court asks "whether the legislation has a 'conceivable basis' on which it might survive constitutional scrutiny." *Dittman v. California*, 191 F.3d 1020, 1031 & n.5 (9th Cir. 1999).

Initially, to the extent Plaintiffs contend that they have a due process right to work as an independent contractor, that argument is meritless—independent contractor is a *classification* for purposes of labor laws; it is not an occupation or "field of private employment," akin to teacher, doctor, attorney, etc. *Cf. Conn*, 526 U.S. at 292 (citing cases addressing right to profession claims, including right to practice medicine and practice of law).[9] AB 5 does not regulate an individual's ability to engage in a particular *occupation*, but instead regulates the relationship between all workers and employers, regardless of occupation. Thus, cases asserting a right to mine, claims by hair stylists to work free from irrelevant occupational regulations, and a challenge to a law that "forced [the plaintiff] out of his employment as a cook in a restaurant, simply because he is an alien," do not govern here. *See Hardesty v. Sacramento Metro. Air Quality Mgmt. Dist.*, 307 F. Supp. 3d 1010, 1024 (E.D. Cal. 2018); *Cornwell v. Hamilton*, 80 F. Supp. 2d 1101 (S.D. Cal. 1999); *Truax v. Raich*, 239 U.S. 33, 41 (1915).

Plaintiffs cannot establish that they have a constitutional right to classification as independent contractors. It is well established that states are free to define whether a worker is an employee irrespective of the parties' attempt to define that status by contract. "California law is clear that '[t]he label placed by the parties on their relationship is not dispositive, and subterfuges are not countenanced.'" *Alexander v. FedEx Ground Package Sys., Inc.*, 765 F.3d 981, 989 (9th Cir. 2014) (citation omitted). And under federal law, protectable interests in

_____

[9] Plaintiffs' due process claim under the California constitution fails for the same reasons as their federal constitutional claim. *Owens v. City of Signal Hill*, 154 Cal. App. 3d 123, 127 n.2 (Cal. Ct. App. 1984) ("The [California] state constitution's due process and privileges and immunities clauses are identical in scope with the federal due process clause."); *Sanchez v. City of Reno*, 914 F. Supp. 2d 1079, 1116 (E.D. Cal. 2012).

employment "arise only 'where not affirmatively restricted by reasonable laws or regulations of general application.'" *Erotic Serv. Provider Legal Educ. and Research Project v. Gascon*, 880 F.3d 450, 459 (9th Cir. 2018) (citation omitted).

In addition, "AB 5 is not a 'complete prohibition' on [] Plaintiffs' ability to pursue any profession." (ECF No. 52 at 14.)  The Ninth Circuit has pointed out that the "generalized due process right to choose one's field of private employment" is subject to "reasonable government regulation." *Franceschi*, 887 F.3d at 937-38.  In this regard, "a plaintiff can make out a substantive due process claim if she is unable to pursue an occupation and this inability is caused by government actions that were arbitrary and lacking a rational basis." *Engquist v. Or. Dep't of Agric.*, 478 F.3d 985, 997 (9th Cir. 2007).  Here, AB 5 does not dictate occupation, or otherwise create an impediment to pursuit of any occupation; it merely establishes the standard for ascertaining, for any occupation, whether a worker is an employee or an independent contractor under California law.  *See Western States Trucking Ass'n v. Schoorl*, 377 F. Supp. 3d 1056, 1072 (E.D. Cal. 2019) (holding, pre-AB 5, that the "ABC" test adopted in *Dynamex* does not preclude a hiring entity "from hiring an independent contractor for individual jobs or assignments").  Indeed, nothing in AB 5 prevents Uber and Postmates from offering their drivers the flexibility and autonomy that Ms. Olson and Mr. Perez desire while still treating them as employees.  *See Dynamex*, 4 Cal.5th at 961, n.28 (explaining that nothing in the ABC test prevents an employer from offering workers flexible hours or other freedoms while still treating them as employees); AB 5 § 1(g). That the Company Plaintiffs' business models are unable to provide that flexibility and autonomy while treating the Individual Plaintiffs as employees is not the fault of AB 5.

## III.  PLAINTIFFS' CONTRACT CLAUSE CLAIMS (CLAIMS IX AND X) FAIL TO ALLEGE ANY UNCONSTITUTIONAL IMPAIRMENT.

Plaintiffs also allege that AB 5 violates the Contract Clause under the U.S. and California Constitutions because the Company Plaintiffs have contracts with

their workers providing that the workers are independent contractors for the work they perform on the app-based platforms, and AB 5 would allegedly invalidate these contracts.  (ECF No. 1 at 43 ¶¶ 138-139.)  As the Court has noted, these claims (Claims IX and X) fail to allege any unconstitutional impairment.  (ECF No. 52 at 15-18.)

The Contract Clause provides that "No State shall . . . pass any . . . Law impairing the Obligation of Contracts."  U.S. Const. art. I, § 10, cl. 1; Cal. Const. Article I, § 9 ("A . . .  law impairing the obligation of contracts may not be passed.").  "Although the language of the Contract Clause is facially absolute, its prohibition must be accommodated to the inherent police power of the State 'to safeguard the vital interests of its people.'"  *Energy Reserves Group, Inc. v. Kansas Power & Light Co.*, 459 U.S. 400, 410 (1983) (citation omitted); *Allen v. Bd. of Administration*, 34 Cal. 3d 114, 124 (Cal. 1983) (the Contract Clause "demands that contracts be enforced according to their 'just and reasonable purport;' not only is the existing law read into the contracts in order to fix their obligations, but the reservation of the essential attributes of continuing governmental power is also read into contracts as a postulate of the legal order") (citation omitted).

Because the challenged statute does not impair a state's own obligations, a deferential review applies, asking: "(1) whether the state law has operated as a substantial impairment of a contractual relationship; (2) whether the state has a significant and legitimate public purpose for the law; and (3) whether the adjustment of the rights and responsibilities of contracting parties is based upon reasonable conditions and is of a character appropriate to the public purpose justifying the legislation's adoption."  *Washington Health Care Ass'n v. Arnold-Williams*, 601 F. Supp. 2d 1224, 1234 (W.D. Wash. 2009) (citing *RUI One Corp. v. City of Berkeley*, 371 F.3d 1137, 1147 (9th Cir. 2004).)  A similar analysis applies under California law.  *Severns v. Union Pacific Railroad Co.*, 101 Cal. App. 4th 1209, 1222 (Cal. Ct. App. 2002) ("The imposition of the requirement will not run

afoul of the constitutional [Contract Clause] provision if it addresses a legitimate state interest and is reasonable and appropriate.").  Here, Plaintiffs' claim fails at the outset because AB 5 does not impose a "substantial impairment" on a contractual relationship.  As the Court pointed out in denying Plaintiffs' motion for a preliminary injunction, "Olson and Perez cannot expect to be considered independent contractors solely because their contracts with Uber and Postmates say so."  (ECF No. 52 at 16.)  "One whose rights, such as they are, are subject to state restriction, cannot remove them from the power of the State by making a contract about them."  *Hudson Water Co. v. McCarter*, 209 U.S. 349, 357 (1908).  The contracts forming the basis of Plaintiffs' claims "w[ere] entered into in the wake of foreseeable potential enforcement of the ABC test to Company Plaintiffs' drivers." (ECF No. 52 at 16.)

Even if Plaintiffs could establish that AB 5 is a substantial impairment, the Contract Clause claims fail because "the State, in justification, [has] a significant and legitimate public purpose behind the regulation," "such as the remedying of a broad and general social or economic problem."  *Energy Reserves Group, Inc.*, 459 U.S. at 412; *Chorn v. Workers' Comp. Appeals Bd.*, 245 Cal. App. 4th 1370, 1392 (Cal. Ct. App. 2016).  "AB 5 is an exercise of the State's police power to protect workers aimed at remedying what it perceives to be a broad economic and social problem."  (ECF No. 52 at 17.)

"Once a legitimate public purpose has been identified, the next inquiry is whether the adjustment of 'the rights and responsibilities of contracting parties [is based] upon reasonable conditions and [is] of a character appropriate to the public purpose justifying [the legislation's] adoption."  *Energy Reserves Group, Inc.*, 459 U.S. at 412 (citation omitted).  Because Plaintiffs' claim does not involve an allegation that the State of California is a contracting party, "[a]s is customary in reviewing economic and social regulation, . . . courts properly defer to legislative

1   judgment as to the necessity and reasonableness of a particular measure." *Id.* at 413

2   (*citing U.S. Trust Co. of New York v. New Jersey*, 431 U.S. 1, 22-23 (1977)).

3         Here, there is no dispute that labor relations and employer-employee

4   relations are highly regulated areas. *Cf. Energy Reserves Group, Inc.*, 459 U.S. at

5   413 ("Significant here is the fact that the parties are operating in a heavily regulated

6   industry."). In *Greene v. Dayton*, individuals who provided homecare services to

7   disabled individuals as part of the state's Medicaid programs brought a Contract

8   Clause claim, challenging a state law deeming them public employees for collective

9   bargaining purposes. 806 F.3d 1146 (8th Cir. 2015). As relevant here, the

10   plaintiffs alleged that the challenged statute impaired their contractual relationships

11   with Medicaid program participants because it deprived them of the right to "deal

12   directly" with their employers, and thus "negate[d] their previously negotiated

13   terms and conditions of employment." *Id.* at 1150. The court held that these

14   allegations did not establish a "substantial impairment" for Contract Clause

15   purposes. *Id.* In this regard, the court noted that even before the statute was

16   passed, a state agency set compensation rates, payment practices, and benefit terms.

17   *Id.* Likewise here, Plaintiffs cannot establish a violation because state law made

18   clear before AB 5's passage that parties cannot contract away their rights to be

19   classified as employees.

20         Courts have squarely rejected challenges to other similar labor regulations

21   under the Contracts Clause, including a challenge to a local living wage ordinance.

22   *RUI One Corp.*, 371 F.3d at 1137. "The power to regulate wages and employment

23   conditions lies clearly within a state's or municipality's police power." *Id.* at 1150.

24   As the Supreme Court has pointed out, "States possess broad authority under their

25   police powers to regulate the employment relationship to protect workers within the

26   State," including minimum wage and other wage laws, and laws affecting

27   occupational health and safety. *Id.*

28

Ultimately, the contractual agreement of the parties has never been deemed conclusive on the issue of whether a worker is an employee or an independent contractor for purposes of state labor laws. *See Tieberg v. Unemployment Ins. App. Bd.*, 2 Cal 3d 943, 952 (Cal. 1970). For decades, California law has made clear that when it comes to employee classification, "the label placed by the parties on their relationship is not dispositive." *Borello*, 48 Cal. 3d at 349; *see also Real v. Driscoll Strawberry Associates, Inc.*, 603 F.2d 748, 755 (9th Cir. 1979) ("Economic realities, not contractual labels, determine employment status for the remedial purposes of the FLSA.").

Moreover, "it is equally true that the state has the inalienable right to reasonably regulate private business enterprises in the interest of public health, peace, morals, or the general welfare." *In re Monrovia Evening Post*, 199 Cal. 263, 269 (Cal. 1926); *People v. De La Torre*, 257 Cal. App. 2d 162, 166-67 (Cal. Ct. App. 1967) ("It is settled that the enjoyment of many personal rights and freedoms is subject to many kinds of restraints under the police power of the state, which includes reasonable conditions as may be determined by the governmental authorities to be essential to the safety, good order and public welfare of the people."). The California Constitution explicitly authorizes the Legislature to enact laws to protect workers within the state. Cal. Const., article 14, § 1 ("The Legislature may provide for minimum wages and for the general welfare of employees.").

## IV. PLAINTIFFS' CLAIMS FOR VIOLATION OF THE NINTH AMENDMENT, "BABY NINTH," AND INALIENABLE RIGHTS PROVISION OF THE CALIFORNIA CONSTITUTION (CLAIMS VI, III, AND VII) FAIL FOR LACK OF ENFORCEABLE RIGHTS.

Lastly, Plaintiffs allege violations of the Ninth Amendment, and the "Baby Ninth" and Inalienable Rights provisions of the California Constitution. (Claims VI, III, and VII.) The Complaint alleges that these provisions protect their "[fundamental] right to work on one's own terms—as an independent service

provider, rather than an employee."  (ECF No. 1 at 42 ¶¶ 129-133.)  None of these provisions are actionable grounds for invalidation of AB 5.

The Ninth Amendment states "the enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." U.S. Const. amend. IX.  It "has not been interpreted as independently securing any constitutional rights for purposes of making out a constitutional violation."  *San Diego Cty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1125 (9th Cir. 1996) (citation omitted); *Strandberg v. City of Helena*, 791 F.2d 744, 748 (9th Cir. 1986); *see also Schowengerdt v. U.S.*, 944 F.2d 483, 490 (9th Cir. 1991) (rejecting claim under Ninth Amendment as meritless, "because that amendment has not been interpreted as independently securing any constitutional rights for purposes of making out a constitutional violation.").  As another circuit explained, "The ninth amendment 'was added to the Bill of Rights to ensure that the maxim *expressio unius est exclusio alterius* would not be used at a later time to deny fundamental rights merely because they were not specifically enumerated in the Constitution.'" *Gibson v. Matthews*, 926 F.2d 532, 537 (7th Cir. 1991) (citation omitted).  This amendment "does not confer substantive rights in addition to those conferred by other portions of our governing law."  *Id.*  Even assuming that this amendment conferred substantive rights, it has not been incorporated in the Fourteenth Amendment.  *Amer. Law Foundation v. Meyer*, 120 F.3d 1092, 1107 (10th Cir. 1997) (rejecting plaintiff's putative claim under the Ninth Amendment because there is no authority that it has been incorporated in the Fourteenth Amendment).

For similar reasons, Plaintiffs' claim under the putative "Baby Ninth" provision of the California Constitution should be dismissed.  (ECF No. 1 at 42.) Article I, section 24 of the California Constitution states, as relevant here, that "[t]his declaration of rights may not be construed to impair or deny others retained by the people."  The Court of Appeal has held that a California Constitution provision must be self-executing in order to provide a private right of action.

1  *Clausing v. San Francisco Unified School Dist.*, 221 Cal. App. 3d 1224, 1237 (Cal.

2  Ct. App. 1990).[10]  "A constitutional provision may be said to be self-executing if it

3  supplies a sufficient rule by means of which the right given may be enjoyed and

4  protected, or the duty imposed may be enforced; and it is not self-executing when it

5  merely indicates principles, without laying down rules by means of which those

6  principles may be given force of law."  *Id.* (citation omitted).

7      Likewise, the Inalienable Rights provision of the California Constitution has

8  not been found to create a private right of action.  *Cf. Clausing*, 221 Cal. App. 3d at

9  1238 n.6 ("No case has ever held that th[e] provision enunciating the inalienable

10  right to obtain safety and happiness is self-executing in the sense that it gives rise,

11  in and of itself, to a private right of action for damages or an affirmative duty on the

12  part of the state to take particular steps to guarantee the enjoyment of safety or

13  happiness by all citizens"); *see also Leger v. Stockton Unif. Sch. Dist.*, 202 Cal.

14  App. 3d 1448, 1455 (Cal. Ct. App. 1988).

15      In any event, there is no case law support for a fundamental constitutional

16  right to work as an independent contractor (or "independent service provider").

17  Although the "fundamental human rights entitled to protection against overbroad

18  intrusion or regulation by government is not limited to those expressly mentioned in

19  the Bill of Rights or elsewhere in the Constitution," it extends to "basic values

20  'implicit in the concept of ordered liberty.'"  *City of Carmel-by-the-Sea v. Young*, 2

21  Cal. 3d 259, 266 (Cal. 1970).  These include the right to marry and to raise

22  children, the right to educate one's children as one chooses, the right to travel, and

23  the freedom to associate.  *Id.* (citing cases).  This type of fundamental right is not

24  implicated by Plaintiffs' desire to work as independent contractors.

25

26

27      [10] Although *Clausing* arises in the context of a cause of action for damages, Defendants have found no cases finding a private right of action for equitable relief

28  under this provision.

22

## V.   THE STATE OF CALIFORNIA IS IMMUNE FROM SUIT IN FEDERAL COURT.

Plaintiffs purport to raise claims against the State of California, "a sovereign state." (ECF No. 1 at 14 ¶ 34.) This they cannot do.

The Eleventh Amendment immunizes the states from suits brought in federal court. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Deanco Healthcare, LLC v. Becerra*, 365 F. Supp. 3d 1029, 1035 (C.D. Cal. 2019). Federal courts recognize three exceptions to this broad immunity. *Deanco Healthcare, LLC*, 365 F. Supp. 3d at 1035. Plaintiffs do not allege that any of these exceptions apply. Accordingly, the Court should dismiss the claims against the State of California.

## CONCLUSION

For these reasons, the Court should dismiss the Complaint, without leave to amend.

Dated:  February 13, 2020

Respectfully submitted,

XAVIER BECERRA
Attorney General of California
TAMAR PACHTER
Supervising Deputy Attorney General

*/s/ Jose A. Zelidon-Zepeda*

JOSE A. ZELIDON-ZEPEDA
Deputy Attorney General
*Attorneys for the State of California and Attorney General Xavier Becerra, in his official capacity*

SA2020100015
MPA Supporting Motion to Dismiss.docx

23