1    XAVIER BECERRA
     Attorney General of California
2    TAMAR PACHTER
     Supervising Deputy Attorney General
3    JOSE A. ZELIDON-ZEPEDA
     Deputy Attorney General
4    State Bar No. 227108
       455 Golden Gate Avenue, Suite 11000
5      San Francisco, CA  94102-7004
       Telephone: (415) 510-3879
6      Fax:  (415) 703-1234
       E-mail:  Jose.ZelidonZepeda@doj.ca.gov
7    *Attorneys for the State of California and Attorney*
     *General Xavier Becerra, in his official capacity*
8

9              IN THE UNITED STATES DISTRICT COURT

10            FOR THE CENTRAL DISTRICT OF CALIFORNIA

11                      WESTERN DIVISION

12

13

14   **LYDIA OLSON; et al.,**              2:19-CV-10956-DMG-RAO

15                          Plaintiffs,    **MEMORANDUM OF POINTS
                                           AND AUTHORITIES
16          **v.**                         SUPPORTING DEFENDANTS'
                                           MOTION TO DISMISS FIRST
17                                         AMENDED COMPLAINT**

18   **STATE OF CALIFORNIA; et al.,**      Date:        May 22, 2020
                                           Time:        9:30 a.m.
19                          Defendants.    Courtroom:   8C, 8th Floor
                                           Judge:       Hon. Dolly M. Gee
20                                         Trial Date:  Not set
                                           Action Filed: December 30, 2019

21

22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2

**Page**

3

4

Introduction..............................................................................................1

Background...............................................................................................2

        A.    In *Dynamex*, the California Supreme Court Adopted the ABC Test. .......................................................................2

        B.    Assembly Bill 5 Codified the ABC Test to Remedy Widespread Misclassification of Employees as Independent Contractors..............................................3

        C.    The Statutory Exemptions. ...........................................4

        D.    Allegations of the First Amended Complaint............................6

Legal Standard ........................................................................................7

Argument ................................................................................................8

    I.    Plaintiffs' Equal Protection Claims (Claims I and II) Fail Because AB 5 Is Rationally Related to a Legitimate Government Interest...................................................8

        A.    The Legislature's Interest in Protecting Exploited Workers to Address the Erosion of the Middle Class and Income Inequality Is a Rational Basis for Any Ostensible Targeting of Gig Economy Employers and Workers. ...............9

        B.    The Complaint's Allegations of "Animus" Do Not Suffice to Allege Actionable Claims..............................11

    II.    Plaintiffs' Due Process Claims (Claims IV and V) Fail because AB 5 Determines Legal Classification, Not Occupation.....................15

    III.    Plaintiffs' Contract Clause Claims (Claims VIII and IX) Fail to Allege any Unconstitutional Impairment..............................17

    IV.    Plaintiffs' Claims for Violation of The Ninth Amendment, "Baby Ninth," and Inalienable Rights Provision of the California Constitution (Claims VI, VII, and III) Fail For Lack of Enforceable Rights...........................................21

Conclusion ..............................................................................................24

# TABLE OF AUTHORITIES

**Page**

CASES

*Alexander v. FedEx Ground Package Sys., Inc.*
  765 F.3d 981 (9th Cir. 2014) ................................................................ 16

*Allen v. Bd. of Administration*
  34 Cal. 3d 114 (Cal. 1983) ................................................................... 18

*Am. Soc. of Journalists & Authors v. Becerra*
  No. CV 19-10645 (C.D. Cal.).......................................................... 10, 12

*Amer. Law Foundation v. Meyer*
  120 F.3d 1092 (10th Cir. 1997).......................................................... 22

*Angelotti Chiropractic v. Baker*
  791 F.3d 1075 (9th Cir. 2015) ........................................................... 14

*Arizona Hospital & Healthcare Ass'n v. Betlach*
  862 F. Supp. 2d 978 (D. Ariz. 2012) .................................................... 8

*Ashcroft v. Iqbal*
  556 U.S. 662 (2009) ............................................................................ 8

*Bell Atlantic Corp. v. Twombly*
  550 U.S. 544 (2007) ............................................................................ 8

*Berwick v. Uber Technologies, Inc.*
  Case No. 11-46739 EK, 2015 WL 4153765 (Cal. Lab. Comm'r
  June 3, 2015).................................................................................... 18

*Chorn v. Workers' Comp. Appeals Bd.*
  245 Cal. App. 4th 1370 (Cal. Ct. App. 2016) ...................................... 19

*City of Carmel-by-the-Sea v. Young*
  2 Cal. 3d 259 (Cal. 1970) .............................................................. 23, 24

*City of Cleburne v. Cleburne Living Ctr.*
  473 U.S. 432 (1985) ......................................................................... 9, 10

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*Clausing v. San Francisco Unified School Dist.*

4

221 Cal. App. 3d 1224 (Cal. Ct. App. 1990)...........................................23

5

*Clements v. Fashing*

6

457 U.S. 957 (1982) .................................................................. 13

7

*Conn v. Gabbert*

8

526 U.S. 286 (1999) .............................................................. 15, 16

9

*Cornwell v. Hamilton*

80 F. Supp. 2d 1101 (S.D. Cal. 1999) ...................................... 16

10

*Cotter v. Lyft, Inc.*

11

60 F. Supp. 3d 1067 (N.D. Cal. 2015)..................................... 18

12

*Dittman v. California*

13

191 F.3d 1020 (9th Cir. 1999)................................................ 15

14

*Doe v. Uber Technologies, Inc.*

15

184 F. Supp. 3d 774 (N.D. Cal. 2016)..................................... 18

16

*Dynamex Operations W. v. Superior Court*

17

4 Cal. 5th 903 (Cal. 2018) .........................................2, 3, 10, 17

18

*Energy Reserves Group, Inc. v. Kansas Power & Light Co.*

19

459 U.S. 400 (1983) ........................................................18, 19, 20

20

*Engquist v. Or. Dep't of Agric.*

478 F.3d 985 (9th Cir. 2007)................................................. 17

21

*Erotic Serv. Provider Legal Educ. and Research Project v. Gascon*

22

880 F.3d 450 (9th Cir. 2018)................................................. 16

23

*FCC v. Beach Communications, Inc.*

24

508 U.S. 307 (1993) ..........................................................9, 10, 11

25

*Franceschi v. Yee*

26

887 F.3d 927 (9th Cir. 2018)............................................. 15, 17

27

*Gallinger v. Becerra*

28

898 F.3d 1012 (9th Cir. 2018)................................................ 14

1

2

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

3

4

*Gibson v. Matthews*
926 F.2d 532 (7th Cir. 1991) ................................................................. 22

5

6

*Greene v. Dayton*
806 F.3d 1146 (8th Cir. 2015) ............................................................... 20

7

8

*Halverson v. Skagit Cty.*
42 F.3d 1257 (9th Cir. 1994) ................................................................ 15

9

*Hardesty v. Sacramento Metro. Air Quality Mgmt. Dist.*
307 F. Supp. 3d 1010 (E.D. Cal. 2018) ................................................ 16

10

11

*Hertzberg v. Dignity Partners, Inc.*
191 F.3d 1076 (9th Cir. 1999) .............................................................. 14

12

13

*Hoohuli v. Ariyoshi*
631 F. Supp. 1153 (D. Hawaii 1986) .................................................... 12

14

15

*Hudson Water Co. v. McCarter*
209 U.S. 349 (1908) .............................................................................. 19

16

17

*In re Cutera Securities Litig.*
610 F.3d 1103 (9th Cir. 2010) ................................................................ 8

18

19

*In re Kelly*
841 F.2d 908 (9th Cir. 1988) ................................................................ 14

20

21

*In re Monrovia Evening Post*
199 Cal. 263 (Cal. 1926) ...................................................................... 21

22

*Leger v. Stockton Unif. Sch. Dist.*
202 Cal. App. 3d 1448 (Cal. Ct. App. 1988) ........................................ 23

23

24

*Lindsley v. Natural Carbonic Gas Co.*
220 U.S. 61 (1911) ................................................................................ 13

25

26

*Linton v. Desoto Cab Co., Inc.*
15 Cal. App. 5th 1208 (2017) ................................................................. 1

27

28

*Manduley v. Super. Ct.*
27 Cal. 4th 537 (Cal. 2002) .................................................................... 9

**TABLE OF AUTHORITIES**
(continued)

Page

*Nordlinger v. Hahn*
    505 U.S 1 (1992) ........................................................................................ 9, 10

*O'Connor v. Uber Technologies, Inc.*
    82 F. Supp. 3d 1133 (N.D. Cal. 2015)................................................................. 18

*Owens v. City of Signal Hill*
    154 Cal. App. 3d 123 (Cal. Ct. App. 1984)......................................................... 16

*Parham v. Hughes*
    441 U.S. 347 (1979) ............................................................................................ 12

*People v. Cruz*
    207 Cal. App. 4th 664 (Cal. Ct. App. 2012) ........................................................ 9

*People v. De La Torre*
    257 Cal. App. 2d 162 (Cal. Ct. App. 1967)........................................................ 21

*Real v. Driscoll Strawberry Associates, Inc.*
    603 F.2d 748 (9th Cir. 1979) ............................................................................. 21

*RUI One Corp. v. City of Berkeley*
    371 F.3d 1137 (9th Cir. 2004)................................................................... 9, 20, 21

*S.G. Borello & Sons, Inc. v. Dep't of Indus. Relations*
    48 Cal. 3d 341 (Cal. 1988) ................................................................... 1, 2, 18, 21

*San Diego Cty. Gun Rights Comm. v. Reno*
    98 F.3d 1121 (9th Cir. 1996) ............................................................................. 22

*Sanchez v. City of Reno*
    914 F. Supp. 2d 1079 (E.D. Cal. 2012).............................................................. 16

*Schowengerdt v. U.S.*
    944 F.2d 483 (9th Cir. 1991).............................................................................. 22

*Severns v. Union Pacific Railroad Co.*
    101 Cal. App. 4th 1209 (Cal. Ct. App. 2002) .................................................... 19

*Strandberg v. City of Helena*
    791 F.2d 744 (9th Cir. 1986).............................................................................. 22

v

**TABLE OF AUTHORITIES**
(continued)

Page

*Tieberg v. Unemployment Ins. App. Bd.*
   2 Cal 3d 943 (Cal. 1970) .................................................................. 21

*Truax v. Raich*
   239 U.S. 33 (1915) ........................................................................... 16

*U.S. v. Ninety Three Firearms*
   330 F.3d 414 (6th Cir. 2003) ........................................................... 13

*Washington Health Care Ass'n v. Arnold-Williams*
   601 F. Supp. 2d 1224 (W.D. Wash. 2009) ...................................... 19

*Western States Trucking Ass'n v. Schoorl*
   377 F. Supp. 3d 1056 (E.D. Cal. 2019) ........................................... 17

STATUTES

California Labor Code
   § 2750.3(a)(1) ............................................................................. 4, 10
   § 2750.3(c) ....................................................................................... 13
   § 2750.3(e) ....................................................................................... 13
   § 3351(i) ...................................................................................... 4, 10

CONSTITUTIONAL PROVISIONS

California Constitution
   Article I, § 9 .................................................................................... 18
   Article I, § 24 .................................................................................. 23
   Article 14, § 1 ................................................................................. 21

United States Constitution
   Ninth Amendment .............................................................. 2, 7, 21, 22
   Fourteenth Amendment .............................................................. *passim*
   Article I, § 10, cl. 1 ................................................................... *passim*

COURT RULES

Federal Rule of Civil Procedure
   Rule 12(b)(6) ...................................................................................... 7

# TABLE OF AUTHORITIES
### (continued)

Page

**OTHER AUTHORITIES**

California Assembly Bill

5 ..............................................................................................................3

5 § 1(c)..................................................................................................3, 10

5 § 1(e)..................................................................................................4, 10

5 § 1(g)........................................................................................................17

**INTRODUCTION**

In denying Plaintiffs' request for a preliminary injunction, the Court correctly held that Plaintiffs' attacks on AB 5 fail to raise any serious questions as to the constitutionality of the law.  For many of the same reasons contained in that decision, the Court should now dismiss Plaintiffs' challenge in its entirety.

To combat the ills of worker misclassification, California enacted Assembly Bill (AB) 5, which defines how employment status is determined for purposes of certain state laws.  AB 5 did not create the employee/independent contractor distinction, which is both longstanding and of significance.  Under California's protective labor laws, workers have long been presumed to be employees with a variety of rights,[1] including the minimum wage, safe working conditions, sick leave, worker's compensation benefits if they are injured on the job, unemployment benefits if they lose their job, and disability benefits if they are disabled and cannot work.  Bona fide independent contractors do not enjoy such protections.

Given the difference in protections employees enjoy under the law, in enacting AB 5, the Legislature recognized that worker misclassification exploits workers, harms their families, and puts employers who properly classify workers at a competitive disadvantage.  The public good also suffers.  Misclassification shifts costs from employers to taxpayers, robs the state of taxes it uses to fund the social safety net (such as unemployment insurance), and degrades the quality of jobs, causing more workers (and their families) to require the social safety net and contributing to income inequality.  Thus, to mitigate these harms, AB 5 codified and expanded application of the simplified "ABC" test, which the California Supreme Court previously adopted in 2018 after recognizing the "significant

---

[1] *See, e.g., S.G. Borello & Sons, Inc. v. Dep't of Indus. Relations*, 48 Cal. 3d 341, 349 (Cal. 1988) ("One seeking to avoid liability has the burden of proving that persons whose services he has retained are independent contractors rather than employees."); *Linton v. Desoto Cab Co., Inc.*, 15 Cal. App. 5th 1208, 1220-21 (2017) (noting that *Borello* rebuttable presumption of employment applies to Labor Code "provisions falling outside workers' compensation").

1

disadvantages" the then-existing generally applicable multi-factor test had.  *See
Dynamex Operations W. v. Superior Court*, 4 Cal. 5th 903, 954-55 (Cal. 2018).

In this case, two corporate and two individual Plaintiffs seek to invalidate
and enjoin enforcement of AB 5, alleging a lengthy list of federal and state
constitutional violations.  Plaintiffs claim that the law unfairly "targets" online
companies, discriminates on the basis of occupation, and prevents the pursuit of a
chosen occupation.  None of these claims has merit.  Plaintiffs' Equal Protection,
Due Process, and Contract Clause claims under the U.S. and California
Constitutions fail as a matter of law for the same reasons the Court cataloged in its
order denying preliminary injunctive relief.  For similar reasons, Plaintiffs' related
claims under the Ninth Amendment, and the "Baby Ninth" and Inalienable Rights
provision of the California Constitution also fail as a matter of law.  Accordingly,
the Court should dismiss the First Amended Complaint, without leave to amend.

## BACKGROUND

### A.   In *Dynamex*, the California Supreme Court Adopted the ABC Test.

The distinction between workers classified as employees and those classified
as independent contractors is significant because California law affords employees
rights that independent contractors do not enjoy.  *See Dynamex*, 4 Cal. 5th at 912.
Prior to 2018, state regulatory agencies and courts applying California law used a
multi-factor test enunciated in *S.G. Borello & Sons, Inc. v. Department of Industrial
Relations*, 48 Cal. 3d 341 (Cal. 1989) (*Borello*).  In April 2018, the California
Supreme Court held that courts applying the "suffer or permit" standard under
California's Industrial Welfare Commission ("IWC") Wage Orders must use the
ABC test, rather than *Borello*, to determine whether a worker is classified as an
employee.  *Id.* at 916.  *Dynamex* noted that the "critically important objectives" of
wage and hour laws, including ensuring low income workers' wages and conditions
despite their weak bargaining power, "support a very broad definition of the

workers" who fall within the employee classification. *Dynamex*, 4 Cal. 5th at 952. Similarly, a broad definition benefits "those law-abiding businesses that comply with the obligations imposed" by state labor laws, "ensuring that such responsible companies are not hurt by unfair competition from competitor businesses that utilize substandard employment practices." *Id.* Lastly, the ABC test also benefits "the public at large, because if the wage orders' obligations are not fulfilled, the public often will be left to assume the responsibility of the ill effects to workers and their families resulting from substandard wages or unhealthy and unsafe working conditions." *Id.* at 953.

Under the ABC test, a worker is classified as an employee, rather than an independent contractor, unless the hiring entity establishes: (a) that the worker is "free from the control and direction of the hirer in connection with the performance of the work, both under the contract for the performance of such work and in fact;" (b) that the worker "performs work that is outside the usual course of the hiring entity's business;" and (c) that the worker is "customarily engaged in an independently established trade, occupation, or business of the same nature as the work performed for the hiring entity." *Id.* at 916-17.

**B.   Assembly Bill 5 Codified the ABC Test to Remedy Widespread Misclassification of Employees as Independent Contractors.**

On September 18, 2019, California enacted AB 5, which became effective January 1, 2020. AB 5 codified and expanded the scope of the ABC test adopted in *Dynamex.* The Legislature found that "[t]he misclassification of workers as independent contractors has been a significant factor in the erosion of the middle class and the rise in income inequality." (AB 5 § 1(c).) In enacting AB 5, the Legislature intended "to ensure workers who are currently exploited by being misclassified as independent contractors instead of recognized as employees have the basic rights and protections they deserve under the law," including minimum

wage, workers' compensation, unemployment insurance, paid sick leave, and paid family leave. (*Id.* § 1(e).)

The Legislature noted that "a 2000 study commissioned by the U.S. Department of Labor found that nationally between 10% and 30% of audited employers misclassified workers," and that a 2017 audit program by the California Employment Development Department that conducted 7,937 audits and investigations "identified nearly *half a million* unreported employees." (Bill Analysis, Assembly Committee on Labor and Employment 7/5/19 at p. 2, available at https://leginfo.legislature.ca.gov/faces/billAnalysisClient.xhtml?bill_id=201920200 AB5 [last visited Feb. 12, 2020] (emphasis in original).) Misclassification, the Legislature further noted, is particularly prevalent in certain growing industries. "Recent research also supports the prevalence of misclassification and finds some of the highest misclassification rates in the economy's growth industries, including home care, janitorial, trucking, construction, hospitality, security, and the app-based 'on demand' sector." (*Id.*)

By adopting the ABC test, AB 5 "restores these important protections to potentially several million workers who have been denied these basic workplace rights that all employees are entitled to under the law." (AB 5 § 1(e).) AB 5 extends the ABC test to include (among other things) workers' compensation, unemployment insurance, and disability insurance. Cal. Lab. Code § 2750.3(a)(1); *id.* § 3351(i).

**C. The Statutory Exemptions.**

AB 5 also created limited statutory exemptions to the ABC test for certain occupations and industries, where the Legislature felt the ABC test was not a good fit. The Legislature considered various factors in deciding on these exemptions, including whether the individuals hold professional licenses (for example, insurance brokers, physicians and surgeons, and securities dealers). (Bill Analysis,

4

1   Senate Committee on Labor Employment and Retirement 7/8/19 at pp. 2-3,

2   https://leginfo.legislature.ca.gov/faces/billAnalysisClient.xhtml?bill_id=201920200

3   AB5 [last visited Feb. 12, 2020].)  Other factors considered included whether the

4   worker is truly free from direction or control of the hiring entity (for example,

5   workers providing hairstyling and barbering services who have their own set of

6   clients and set their own rates).  (*Id.*)  Still others were considered for an exemption

7   if they perform "professional services," as a sole proprietor or other business entity

8   and meet specific indicia of status as independent businesses.  (*Id.*)  In its effort to

9   identify the hallmarks of true independent contractors for purpose of exemptions

10  from the ABC test, the Legislature also considered the bargaining power of workers

11  in particular occupations and industries, the ability of the worker in particular

12  occupations and industries to set their own rate of pay, and the nature of the

13  relationship between the contractor and the client.  (*Id.* at 8-10.)

14      The legislative history also specifically addressed concerns about AB 5's

15  impact on "digital applications," and the "gig economy," noting that while there

16  had been significant media attention on the issue, the bill in fact made no

17  distinction between app-based companies and traditional businesses.  (Bill

18  Analysis, Senate Committee on Labor Employment and Retirement 7/8/19 at p. 10,

19  https://leginfo.legislature.ca.gov/faces/billAnalysisClient.xhtml?bill_id=201920200

20  AB5 [last visited Feb. 12, 2020].)  In discussing the exemptions, the Legislature

21  noted that the means by which a customer obtains the worker's services are

22  irrelevant to the worker's status as an employee or independent contractor.  (*Id.*)

23  "[I]f a client secures the services of a contractor through an intermediary, it is

24  unclear how the People of California are well served if a law makes a distinction

25  between the intermediary being contacted through the Yellow Pages or the

26  internet."  (*Id.*)  Ultimately, "[t]he core question is if the intermediary is, to use the

27  legal world as a model, deriving disproportionate benefits from the relationship."

28  (*Id.*)  "A company that utilizes the independent contractor model to undercut the

5

employer-based model to cut costs and achieve profitability or scale is a company that misclassifies its workers." (*Id.*)

### D.   Allegations of the First Amended Complaint.

Plaintiffs Uber and Postmates (the Company Plaintiffs) operate application-based platforms to provide delivery and transportation services to individual consumers. (ECF No. 59 at 15 ¶¶ 34-35.) Plaintiffs Olson and Perez are individuals who use app-based platforms of Uber and Postmates "to get leads" for passenger and delivery requests. (*Id.* ¶¶ 32-33.) Plaintiffs challenge AB 5 as "vague" and "incoherent," and contend that it does not further the Legislature's goals. (*Id.* at 8 ¶ 19.) They argue that AB 5 requires the Company Plaintiffs to fundamentally restructure their business model, thus imposing economic, administrative and other costs. (*Id.* at 8-9 ¶ 20.)

The FAC notes that AB 5 has numerous exemptions, and alleges that "[t]he legislature added these carve-outs to AB 5 solely for interest groups, labor, and specific industries, many of which have historically donated heavily to the campaigns" of the law's co-sponsors. (ECF No. 59 at 19 ¶ 57.) "The statutory exemptions carve out many types of specifically chosen workers that bear the traditional hallmarks of independent contractors, but do not carve out many others possessing the same characteristics, including app-based independent service providers." (*Id.* at 21 ¶ 60.) Plaintiffs cite alleged inconsistencies or purported irrationality in AB 5's exemptions, claiming that the exemptions "contradict [the law's] stated purpose." (*Id.* at 24 ¶ 64.)

Plaintiffs also allege that the statutory "exemptions also undercut all of the legitimate rationales that could theoretically be derived from the claims put forth in its legislative history." (*Id.* ¶ 65.) For example, Plaintiffs note that, despite concern in the legislative history about misclassification in certain growth industries, AB 5 exempts workers in these same areas. (*Id.* at 24-25 ¶ 65.) Similarly, Plaintiffs note four criteria the Legislature utilized in determining other exemptions—market

1  strength, rate setting, relationship between contractor and client, and technological

2  neutrality—but point out that this report was issued months before some of AB 5's

3  exemptions were added, and contend that "[t]he later-added exemptions both

4  undermine these purported justifications *and* irrationally discriminate against

5  similarly-situated workers." (*Id.* at 25 ¶ 66; 29 ¶ 72.) Plaintiffs assert that "[a]pp-

6  based independent service providers exhibit all the indicia of independent

7  contractors upon which the report claims to justify the exempted industries." (*Id.* at

8  25 ¶ 67.) Plaintiffs further claim that the exemptions in AB 5 "exclud[e] many

9  other similarly situated workers and industries." (*Id.* at 27 ¶ 69.) Plaintiffs likewise

10 complain that AB 5 provides temporary exemptions for "handpicked industries,"

11 which they claim lacks a "rational reason," and ultimately allege that "these

12 reprieves are purely the result of political pressure." (*Id.* at 30-31 ¶¶ 75-76.)

13       Plaintiffs allege that AB 5 violates a litany of state and federal constitutional

14 provisions. (ECF No. 59 at 51-63.) Like the original Complaint, Plaintiffs' First

15 Amended Complaint contains 9 claims against Defendants for violations of the U.S.

16 Constitution's Ninth Amendment and Equal Protection, Due Process, and Contract

17 Clauses and the California Constitution's 'Baby Ninth Amendment' and Inalienable

18 Rights, Equal Protection, Due Process, and Contract Clauses. (*Id.*) Plaintiffs seek

19 declaratory and injunctive relief, as well as attorney's fees. (*Id.* at 65-66.)

20       This Court previously denied Plaintiffs' request for a preliminary injunction,

21 concluding that Plaintiffs failed to establish a likelihood of success on the merits of

22 their equal protection, due process, or Contract Clause claims. (ECF No. 52.)

23 Plaintiffs appealed that order. (ECF No. 62.)

24                            **LEGAL STANDARD**

25       Under Federal Rule of Civil Procedure 12(b)(6), a complaint should be

26 dismissed if it fails to state a claim upon which relief can be granted. Although a

27 complaint attacked by a motion to dismiss does not need "detailed factual

28 allegations," it must contain "more than labels and conclusions, and a formulaic

                                          7

recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation omitted). A court should dismiss a complaint "if it fails to plead enough facts to state a claim to relief that is plausible in its face." *In re Cutera Securities Litig.*, 610 F.3d 1103, 1107 (9th Cir. 2010) (citation omitted).

In ruling on a motion to dismiss, a court does not accept as true a complaint's legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. "Legal conclusions couched as factual allegations 'are not entitled to the assumption of truth.'" *Arizona Hospital & Healthcare Ass'n v. Betlach*, 862 F. Supp. 2d 978, 987 (D. Ariz. 2012) (quoting *Iqbal*). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## ARGUMENT

I. **PLAINTIFFS' EQUAL PROTECTION CLAIMS (CLAIMS I AND II) FAIL BECAUSE AB 5 IS RATIONALLY RELATED TO A LEGITIMATE GOVERNMENT INTEREST.**

Plaintiffs claim that AB 5 violates their equal protection rights under the U.S. and California Constitutions (Claims I and II). (ECF No. 59 at 51-54 ¶¶ 137-152.) They allege that AB 5 improperly "draws classifications between network companies and non-network companies," and "between independent service providers and non-independent service providers that perform work similar in all relevant respects." (*Id.* at 51 ¶¶ 139-140.) Focusing on exemptions granted in the statute to "non-network companies," they claim that this is evidence of "irrational animus," and contend that strict scrutiny applies because the statute purportedly burdens the fundamental right to pursue a chosen profession. (*Id.* at 51-52 ¶ 140.) As the Court concluded in denying Plaintiffs' motion for a preliminary injunction premised on the same substantive claims, this claim is subject to deferential rational

basis review, under which state law benefits from a presumption of validity and the party attacking the legislative classification bears the burden "to negative every conceivable basis which might support it," (ECF No. 52 at 7 (internal citations and quotations omitted)), and satisfies that standard as a matter of law.

### A. The Legislature's Interest in Protecting Exploited Workers to Address the Erosion of the Middle Class and Income Inequality Is a Rational Basis for Any Ostensible Targeting of Gig Economy Employers and Workers.

The Equal Protection Clause forbids the government from "deny[ing] to any person within its jurisdiction the equal protection of the laws." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). It is clear that, "unless a [statutory] classification warrants some form of heightened review because it jeopardizes exercise of a fundamental right or categorizes on the basis of an inherently suspect characteristic, the Equal Protection Clause requires only that the classification rationally further a legitimate state interest." *Nordlinger v. Hahn*, 505 U.S 1, 10 (1992).[2]

Absent a suspect class, distinctions drawn in legislation are subject to rational basis review. *FCC v. Beach Communications, Inc.*, 508 U.S. 307, 313 (1993). Under this standard, "legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *City of Cleburne*, 473 U.S. at 440. Thus, when social or economic legislation is at issue, the Equal Protection Clause allows the States "wide latitude." *Id.* As stated by the Supreme Court:

---

[2] Plaintiffs' claim under the California Constitution's Equal Protection Clause fails because both equal protection provisions are interpreted similarly. *Manduley v. Super. Ct.*, 27 Cal. 4th 537, 571-72 (Cal. 2002) ("[W]e deem our analysis of petitioners' equal protection claim under the Fourteenth Amendment to the United States Constitution also applicable to their equal protection claim made pursuant to provisions in the California Constitution."); *see also People v. Cruz*, 207 Cal. App. 4th 664, 674 (Cal. Ct. App. 2012). Federal courts have held that the "equal protection analysis under the California Constitution is 'substantially similar' to analysis under the federal Equal Protection Clause.'" *RUI One Corp. v. City of Berkeley*, 371 F.3d 1137, 1154 (9th Cir. 2004).

> Whether embodied in the Fourteenth Amendment or inferred from the
> Fifth, equal protection is not a license for courts to judge the wisdom,
> fairness, or logic of legislative choices. In areas of social and economic
> policy, a statutory classification that neither proceeds along suspect lines
> nor infringes fundamental constitutional rights must be upheld against
> equal protection challenge if there is any reasonably conceivable state of
> facts that could provide a rational basis for the classification.

*Beach Communications, Inc.*, 508 U.S. at 313.

The legislative history makes clear that AB 5 seeks to remedy the widespread misclassification of workers as independent contractors, which the Legislature determined "has been a significant factor in the erosion of the middle class and the rise in income inequality." (AB 5 § 1(c).) The Legislature wanted to ensure that workers were afforded the appropriate protections under state law, including minimum wage, workers' compensation, unemployment insurance, paid sick leave, and paid family leave. (*Id.* § 1(e).) To this end, AB 5 codifies the ABC test adopted in *Dynamex*, and uses this standard to determine the proper classification of workers for purposes of the California Labor Code, California Unemployment Insurance Code, and the Industrial Welfare Commission (IWC) Wage Orders. Cal. Lab. Code § 2750.3(a)(1); *id.*, § 3351(i).

Given this evidence in the legislative history of the policy reasons for the classification, AB 5 passes muster under the deferential rational basis review accorded to economic legislation. (ECF No. 52 at 8 [finding "plausible reason for enacting AB 5"].) *See also Nordlinger*, 505 U.S. at 11 ("In general, the Equal Protection Clause is satisfied so long as there is a plausible policy reason for the classification."); Order Denying Mot. for Prelim. Inj. at 8 ("PI Order"), *Am. Soc. of Journalists & Authors v. Becerra*, No. CV 19-10645 PSG(KSx) (C.D. Cal. Mar. 20, 2020) (in denying preliminary injunction against AB 5, concluding "There is a legitimate state interest here."). (Decl. J. Zelidon-Zepeda Supp. Mot. Dismiss FAC Exh. 1.) "Those attacking the rationality of the legislative classification have the

1   burden 'to negative every conceivable basis which might support it.'" *Beach*

2   *Communications*, 508 U.S. at 315.  Plaintiffs have not done so.

3       **B.   The Complaint's Allegations of "Animus" Do Not Suffice to**
        **Allege Actionable Claims.**

4

5           Plaintiffs contend that AB 5 "does not advance a legitimate governmental

6   interest and draws classifications between network companies and non-network

7   companies without a rational basis."  (ECF No. 59 at 51 ¶ 138.)  They also allege

8   that animus toward the "on-demand economy [is] the only *possible* explanation" for

9   AB 5's exemptions.  (*Id.* at 53 ¶ 144.)  But AB 5 is generally applicable to all

10  employment arrangements except those that are specifically exempted.[3]  Although

11  the FAC singles out some of these exemptions as arbitrary, and complains that AB

12  5 provides no supporting studies or reports for its exemptions, these assertions fail

13  to state a claim under the applicable law.  (*Id.* at 19 ¶¶ 56).

14          As the legislative history demonstrates, the Legislature considered concerns

15  about the impact of AB 5 on "digital applications," and the "gig economy," and

16  ultimately concluded that workers in these industries face the same risk of

17  misclassification and should not be treated differently from those working for

18  traditional businesses.  (Bill Analysis, Senate Committee on Labor Employment

19  and Retirement 7/8/19 at p. 10 [last visited Feb. 12, 2020] (discussing the law's

20  "[t]echnological [n]eutrality.").)  Moreover, the Legislature considered various

21  factors in carving out exemptions from AB 5, including whether the individuals

22  hold professional licenses, whether the worker is wholly free from direction or

23  control of the hiring entity (for example, workers providing hairstyling and

24  barbering services who have their own set of clients and set their own rates), and if

25  the worker performs "professional services," as a sole proprietor or other business

26  entity operating as a truly independent business.  (Bill Analysis, Senate Committee

27  ―――――――――――――
        [3] As the Court noted in denying Plaintiffs' motion for a preliminary

28  injunction, the allegation that AB 5 is "inexplicable" by anything but animus, "is
    plainly belied by the expansive language of the statute."  (ECF No. 52 at 11.)

1   on Labor Employment and Retirement 7/8/19 at pp. 2-3 [last visited Feb. 12,

2   2020].)  In an effort to identify true independent contractors, the Legislature also

3   considered the bargaining power of workers in particular occupations and

4   industries, the ability of the workers in particular occupations and industries to set

5   their own rate of pay, and the nature of the relationship between the contractor and

6   the client.  (*Id.* at 8-10.)  This is within the Legislature's prerogative, and fully

7   consonant with the legislative goals to address misclassification in growth

8   industries.  (ECF No. 52 at 10 [finding "rational explanations for AB 5's

9   exemptions"].)  *See also* PI Order at 10, *Am. Soc. Of Journalists & Authors*

10  ("[S]tatutory differences between the exemptions could rationally be related to

11  characteristics of the differing industries and worker-relationships in those

12  industries, including differences in independence exerted, and the State's decision

13  to attack a problem incrementally does not necessarily render the law irrational.").

14  (Decl. J. Zelidon-Zepeda Supp. Mot. Dismiss FAC Exh. 1.)

15        As another district court noted in a similar context, a challenger cannot

16  establish an equal protection claim merely by substituting its own views for those

17  of the legislative body.  "Although the plaintiffs might *disagree* with the

18  legislature's bases for line-drawing, it is clear that these bases are rational and

19  reasonably further the legislative purpose."  *Hoohuli v. Ariyoshi*, 631 F. Supp.

20  1153, 1161 (D. Hawaii 1986); *see Parham v. Hughes*, 441 U.S. 347, 351 (1979)

21  ("In the absence of invidious discrimination, however, a court is not free under the

22  aegis of the Equal Protection Clause to substitute its judgment for the will of the

23  people of a State as expressed in the laws passed by their popularly elected

24  legislatures.").  Notably, as this Court recognized, the exempted occupations that

25  Plaintiffs identify as purported evidence that the statute is "targeting" them for

26  "disfavored treatment" actually contain numerous criteria that render them

27  substantially different from app-based drivers.  (ECF No. 52 at 8-9 (discussing the

28  outside sales and service provider exemptions).)  The same is true of the business-

1  to-business exemption and the exemptions for freelancers and barbers about which

2  Plaintiffs also complain.  *See* Cal. Lab. Code § 2750.3(c) & (e).

3      Ultimately, in the area of economics and social welfare, a state does not

4  violate the Equal Protection Clause if the classification has some "reasonable

5  basis." *Lindsley v. Natural Carbonic Gas Co.*, 220 U.S. 61, 78 (1911); *Clements v.*

6  *Fashing*, 457 U.S. 957, 963 (1982) ("Classifications are set aside only if they are

7  based solely on reasons totally unrelated to the pursuit of the State's goals and only

8  if no grounds can be conceived to justify them.").  All the exemptions in AB 5 fall

9  into the category of discretionary legislative line-drawing in generally applicable

10  economic regulation, and are presumptively valid.

11      Plaintiffs' equal protection claim hinges on their assertion that AB 5 was

12  motivated by an intent to "target" network companies, and that it is "inexplicable

13  by anything but animus toward the class it is designed to affect." (ECF No. 59 at

14  32; *Id.* at 13 ¶ 27.)  However, as the legislative history demonstrates, the

15  Legislature was concerned that misclassification is rampant in particular growth

16  industries, including the app-based sector.  (Bill Analysis, Assembly Committee on

17  Labor and Employment 7/5/19 at p. 2, available at

18  https://leginfo.legislature.ca.gov/faces/billAnalysisClient.xhtml?bill_id=201920200

19  AB5 [last visited Feb. 11, 2020].)  Indeed, the comments Plaintiffs rely on reflect

20  this particular concern: "The Court notes that many of the legislators' comments

21  selected by Plaintiffs appear to refer to Uber, Postmates, and other gig economy

22  companies as examples of a larger problem of misclassification by corporations, not

23  as the sole targets of AB 5."  (ECF No. 52 at 12 n.12.)[4]  Plaintiffs also cite AB 5's

24

25      [4] As federal courts have noted in other contexts, stray comments from a handful of legislators in the legislative history do not demonstrate the intent of a legislative body.  *Cf. U.S. v. Ninety Three Firearms*, 330 F.3d 414, 423 (6th Cir.

26  2003) (noting that "reliance on one stray comment in the legislative history cannot override the statute's structure, meaning, and purpose," and that a legislative body

27  "votes on the statute in its entirety" rather than one sponsor's comments alone); *Hertzberg v. Dignity Partners, Inc.*, 191 F.3d 1076, 1082 (9th Cir. 1999); *see also*

28  *In re Kelly*, 841 F.2d 908, 912 n.3 (9th Cir. 1988).

1  "express exemption of a litany of similarly situated companies" as purported

2  evidence of alleged "animus." (ECF No. 59 at 53 ¶ 144.)  These conclusory and

3  unsupported allegations also fail to state a claim.  *Gallinger v. Becerra*, 898 F.3d

4  1012, 1020 (9th Cir. 2018) (rejecting conclusory allegations that statute was

5  motivated by animus).

6        The FAC also alleges that the statutory exemptions in AB 5 resulted from

7  "back door" deals and "political favors to industry groups," and complain that

8  Plaintiffs also sought an exemption but were unsuccessful.  (ECF No. 59 at 53 ¶

9  146.)  As the Ninth Circuit has pointed out, "[a]ccommodating one interest group is

10  not equivalent to intentionally harming another."  *Gallinger*, 898 F.3d at 1021.

11  Indeed, to challenge the exemptions on equal protection grounds, because rational

12  basis review applies, Plaintiffs have the burden to "negate 'every conceivable basis'

13  which might have supported the distinction" made between covered occupations

14  and those that are exempted.  *Angelotti Chiropractic v. Baker*, 791 F.3d 1075, 1086

15  (9th Cir. 2015) (quoting *Armour v. City of Indianapolis*, 132 S. Ct. 2073, 2080-81

16  (2012)).

17        Ultimately, as this Court previously pointed out, even assuming animus, such

18  allegations "do[] not establish an Equal Protection violation where the statute

19  addresses legitimate concerns of deleterious misclassification of workers in many

20  industries, not just the gig economy."  (ECF No. 52 at 13.)[5]

21      //

22      //

23      //

24

25

26  [5] The FAC claims that strict scrutiny applies to Plaintiffs' equal protection claim "because AB 5 is designed to burden . . . the fundamental rights of network companies and workers to pursue their chosen profession." (ECF No. 59 at 52 ¶

27  141.)  This is incorrect—as explained above, and as the Court ruled in assessing the same basic claim in considering and rejecting the motion for a preliminary

28  injunction, Plaintiffs' claim is subject to deferential review.

## II. PLAINTIFFS' DUE PROCESS CLAIMS (CLAIMS IV AND V) FAIL BECAUSE AB 5 DETERMINES LEGAL CLASSIFICATION, NOT OCCUPATION.

Plaintiffs contend that AB 5 violates their due process rights to "pursue chosen occupation." (ECF No. 59 at 56-59 ¶¶ 158-166.) The FAC alleges that AB 5 will "force" Individual Plaintiffs "to change their occupation from 'business owner' to 'employee.'" (*Id.* at 57 ¶ 160.) But AB 5 does not prohibit anyone from working in an occupation of his or her choosing, and the due process claims thus fail under the applicable deferential standard under both the U.S. and California Constitutions (Claims IV, and V).[6] As this Court recognized, Plaintiffs confuse classification on the one hand, with occupation or profession on the other. (ECF No. 52 at 14.)

Courts have found a liberty interest based on some "generalized due process right to choose one's field of private employment." *Conn v. Gabbert*, 526 U.S. 286, 291-92 (1999). But "that right is subject to reasonable government regulation." *Franceschi v. Yee*, 887 F.3d 927, 937-38 (9th Cir. 2018). The cases establishing a liberty interest in pursuing a chosen profession "all deal[] with a complete prohibition of the right to engage in a calling." *Id.* at 938 (citing *Conn*, 526 U.S. at 292). Moreover, because this liberty interest is not a fundamental right, the Court asks "whether the legislation has a 'conceivable basis' on which it might survive constitutional scrutiny." *Dittman v. California*, 191 F.3d 1020, 1031 & n.5 (9th Cir. 1999).

Initially, to the extent Plaintiffs contend that they have a due process right to work as an independent contractor or "business owner," that argument is meritless—independent contractor is a *classification* for purposes of labor laws; it

---

[6] Plaintiffs do not appear to raise a procedural due process claim, and such a challenge would fail because "[w]hen the action complained of is legislative in nature, due process is satisfied when the legislative body performs its responsibilities in the normal manner prescribed by law." *Halverson v. Skagit Cty.*, 42 F.3d 1257, 1260 (9th Cir. 1994).

15

is not an occupation or "field of private employment," akin to teacher, doctor, attorney, etc.  *Cf. Conn*, 526 U.S. at 292 (citing cases addressing right to profession claims, including right to practice medicine and practice of law).[7]  AB 5 does not regulate an individual's ability to engage in a particular *occupation*, but instead regulates the relationship between all workers and employers, regardless of occupation.  Thus, cases asserting a right to mine, claims by hair stylists to work free from irrelevant occupational regulations, and a challenge to a law that "forced [the plaintiff] out of his employment as a cook in a restaurant, simply because he is an alien," do not govern here.  *See Hardesty v. Sacramento Metro. Air Quality Mgmt. Dist.*, 307 F. Supp. 3d 1010, 1024 (E.D. Cal. 2018); *Cornwell v. Hamilton*, 80 F. Supp. 2d 1101 (S.D. Cal. 1999); *Truax v. Raich*, 239 U.S. 33, 41 (1915).

Plaintiffs cannot establish that they have a constitutional right to classification as independent contractors or "business owners."  It is well established that states are free to define whether a worker is an employee irrespective of the parties' attempt to define that status by contract.  "California law is clear that '[t]he label placed by the parties on their relationship is not dispositive, and subterfuges are not countenanced.'"  *Alexander v. FedEx Ground Package Sys., Inc.*, 765 F.3d 981, 989 (9th Cir. 2014) (citation omitted).  And under federal law, protectable interests in employment "arise only 'where not affirmatively restricted by reasonable laws or regulations of general application.'"  *Erotic Serv. Provider Legal Educ. and Research Project v. Gascon*, 880 F.3d 450, 459 (9th Cir. 2018) (citation omitted).

In addition, "AB 5 is not a 'complete prohibition' on [] Plaintiffs' ability to pursue any profession."  (ECF No. 52 at 14.)  The Ninth Circuit has pointed out that

---

[7] Plaintiffs' due process claim under the California constitution fails for the same reasons as their federal constitutional claim.  *Owens v. City of Signal Hill*, 154 Cal. App. 3d 123, 127 n.2 (Cal. Ct. App. 1984) ("The [California] state constitution's due process and privileges and immunities clauses are identical in scope with the federal due process clause."); *Sanchez v. City of Reno*, 914 F. Supp. 2d 1079, 1116 (E.D. Cal. 2012).

16

the "generalized due process right to choose one's field of private employment" is subject to "reasonable government regulation." *Franceschi*, 887 F.3d at 937-38.  In this regard, "a plaintiff can make out a substantive due process claim if she is unable to pursue an occupation and this inability is caused by government actions that were arbitrary and lacking a rational basis." *Engquist v. Or. Dep't of Agric.*, 478 F.3d 985, 997 (9th Cir. 2007).  Here, AB 5 does not dictate occupation, or otherwise create an impediment to pursuit of any occupation; it merely establishes the standard for ascertaining, for any occupation, whether a worker is an employee or an independent contractor under California law.  *See Western States Trucking Ass'n v. Schoorl*, 377 F. Supp. 3d 1056, 1072 (E.D. Cal. 2019) (holding, pre-AB 5, that the "ABC" test adopted in *Dynamex* does not preclude a hiring entity "from hiring an independent contractor for individual jobs or assignments").  Indeed, nothing in AB 5 prevents Uber and Postmates from offering their drivers the flexibility and autonomy that Ms. Olson and Mr. Perez desire while still treating them as employees.  *See Dynamex*, 4 Cal.5th at 961, n.28 (explaining that nothing in the ABC test prevents an employer from offering workers flexible hours or other freedoms while still treating them as employees); AB 5 § 1(g).  That the Company Plaintiffs' business models are unable to provide that flexibility and autonomy while treating the Individual Plaintiffs as employees is not the fault of AB 5.

## III. PLAINTIFFS' CONTRACT CLAUSE CLAIMS (CLAIMS VIII AND IX) FAIL TO ALLEGE ANY UNCONSTITUTIONAL IMPAIRMENT.

Plaintiffs also allege that AB 5 violates the Contract Clause under the U.S. and California Constitutions because the Company Plaintiffs have contracts with their workers providing that the workers are independent contractors for the work they perform on the app-based platforms, and AB 5 would allegedly invalidate these contracts.  (ECF No. 59 at 59-63 ¶¶ 172-198.)[8]  As the Court has noted, these

---

[8] The FAC alleges that prior to AB 5 authorities "repeatedly had affirmed that similar provisions [as Plaintiffs' contractual arrangements] were suitable to

1    claims (Claims VIII and IX) fail to allege any unconstitutional impairment.  (ECF

2    No. 52 at 15-18.)

3        The Contract Clause provides that "No State shall . . . pass any . . . Law

4    impairing the Obligation of Contracts."  U.S. Const. art. I, § 10, cl. 1; Cal. Const.

5    Article I, § 9 ("A . . .  law impairing the obligation of contracts may not be

6    passed.").  "Although the language of the Contract Clause is facially absolute, its

7    prohibition must be accommodated to the inherent police power of the State 'to

8    safeguard the vital interests of its people.'"  *Energy Reserves Group, Inc. v. Kansas*

9    *Power & Light Co.*, 459 U.S. 400, 410 (1983) (citation omitted); *Allen v. Bd. of*

10   *Administration*, 34 Cal. 3d 114, 124 (Cal. 1983) (the Contract Clause "demands that

11   contracts be enforced according to their 'just and reasonable purport;' not only is

12   the existing law read into the contracts in order to fix their obligations, but the

13   reservation of the essential attributes of continuing governmental power is also read

14   into contracts as a postulate of the legal order") (citation omitted).

15       Because the challenged statute does not impair a state's own obligations, a

16   deferential review applies, asking: "(1) whether the state law has operated as a

17   substantial impairment of a contractual relationship; (2) whether the state has a

18   significant and legitimate public purpose for the law; and (3) whether the

19   adjustment of the rights and responsibilities of contracting parties is based upon

20   reasonable conditions and is of a character appropriate to the public purpose

21   _____

22   establish and maintain an independent contractor relationship."  (ECF No. 59 at 61
     ¶ 185; *id.* at 19-20 ¶ 58.)  In fact, the California Labor Commissioner determined

23   that, under *Borello*, one of Plaintiff Uber's drivers was misclassified as an
     independent contractor nearly five years ago.  *See Berwick v. Uber Technologies,*
24   *Inc.*, Case No. 11-46739 EK, 2015 WL 4153765 (Cal. Lab. Comm'r June 3, 2015).
     Multiple court decisions have rejected attempts by app-based employers to dismiss
25   claims that their drivers are employees, concluding that there are disputed issues of
     fact.  *O'Connor v. Uber Technologies, Inc.*, 82 F. Supp. 3d 1133, 1138 (N.D. Cal.
26   2015); *see also Doe v. Uber Technologies, Inc.*, 184 F. Supp. 3d 774, 783 (N.D.
     Cal. 2016) (in action by customers alleging sexual assault by Uber drivers, holding
27   on motion to dismiss that plaintiffs "alleged sufficient facts that employment
     relationship may plausibly exist"); *Cotter v. Lyft, Inc.*, 60 F. Supp. 3d 1067 (N.D.
28   Cal. 2015) (holding there was a genuine issue of material fact whether carrier
     improperly classified drivers as independent contractors).

justifying the legislation's adoption." *Washington Health Care Ass'n v. Arnold-Williams*, 601 F. Supp. 2d 1224, 1234 (W.D. Wash. 2009) (citing *RUI One Corp. v. City of Berkeley*, 371 F.3d 1137, 1147 (9th Cir. 2004).)  A similar analysis applies under California law.  *Severns v. Union Pacific Railroad Co.*, 101 Cal. App. 4th 1209, 1222 (Cal. Ct. App. 2002) ("The imposition of the requirement will not run afoul of the constitutional [Contract Clause] provision if it addresses a legitimate state interest and is reasonable and appropriate.").  Here, Plaintiffs' claim fails at the outset because AB 5 does not impose a "substantial impairment" on a contractual relationship.  As the Court pointed out in denying Plaintiffs' motion for a preliminary injunction, "Olson and Perez cannot expect to be considered independent contractors solely because their contracts with Uber and Postmates say so."  (ECF No. 52 at 16.)  "One whose rights, such as they are, are subject to state restriction, cannot remove them from the power of the State by making a contract about them." *Hudson Water Co. v. McCarter*, 209 U.S. 349, 357 (1908).  The contracts forming the basis of Plaintiffs' claims "w[ere] entered into in the wake of foreseeable potential enforcement of the ABC test to Company Plaintiffs' drivers." (ECF No. 52 at 16.)

Even if Plaintiffs could establish that AB 5 is a substantial impairment, the Contract Clause claims fail because "the State, in justification, [has] a significant and legitimate public purpose behind the regulation," "such as the remedying of a broad and general social or economic problem." *Energy Reserves Group, Inc.*, 459 U.S. at 412; *Chorn v. Workers' Comp. Appeals Bd.*, 245 Cal. App. 4th 1370, 1392 (Cal. Ct. App. 2016).  "AB 5 is an exercise of the State's police power to protect workers aimed at remedying what it perceives to be a broad economic and social problem."  (ECF No. 52 at 17.)

"Once a legitimate public purpose has been identified, the next inquiry is whether the adjustment of 'the rights and responsibilities of contracting parties [is based] upon reasonable conditions and [is] of a character appropriate to the public

19

1   purpose justifying [the legislation's] adoption." *Energy Reserves Group, Inc.*, 459

2   U.S. at 412 (citation omitted).  Because Plaintiffs' claim does not involve an

3   allegation that the State of California is a contracting party, "[a]s is customary in

4   reviewing economic and social regulation, . . . courts properly defer to legislative

5   judgment as to the necessity and reasonableness of a particular measure." *Id.* at 413

6   (*citing U.S. Trust Co. of New York v. New Jersey*, 431 U.S. 1, 22-23 (1977)).

7           Here, there is no dispute that labor relations and employer-employee

8   relations are highly regulated areas.  *Cf. Energy Reserves Group, Inc.*, 459 U.S. at

9   413 ("Significant here is the fact that the parties are operating in a heavily regulated

10  industry.").  In *Greene v. Dayton*, individuals who provided homecare services to

11  disabled individuals as part of the state's Medicaid programs brought a Contract

12  Clause claim, challenging a state law deeming them public employees for collective

13  bargaining purposes.  806 F.3d 1146 (8th Cir. 2015).  As relevant here, the

14  plaintiffs alleged that the challenged statute impaired their contractual relationships

15  with Medicaid program participants because it deprived them of the right to "deal

16  directly" with their employers, and thus "negate[d] their previously negotiated

17  terms and conditions of employment." *Id.* at 1150.  The court held that these

18  allegations did not establish a "substantial impairment" for Contract Clause

19  purposes.  *Id.*  In this regard, the court noted that even before the statute was

20  passed, a state agency set compensation rates, payment practices, and benefit terms.

21  *Id.*  Likewise here, Plaintiffs cannot establish a violation because state law made

22  clear before AB 5's passage that parties cannot contract away their rights to be

23  classified as employees.

24          Courts have squarely rejected challenges to other similar labor regulations

25  under the Contract Clause, including a challenge to a local living wage ordinance.

26  *RUI One Corp.*, 371 F.3d at 1137.  "The power to regulate wages and employment

27  conditions lies clearly within a state's or municipality's police power." *Id.* at 1150

28  (citation omitted).  As the Supreme Court has pointed out, "States possess broad

authority under their police powers to regulate the employment relationship to protect workers within the State," including minimum wage and other wage laws, and laws affecting occupational health and safety. *Id.* (citation omitted).

Ultimately, the contractual agreement of the parties has never been deemed conclusive on the issue of whether a worker is an employee or an independent contractor for purposes of state labor laws. *See Tieberg v. Unemployment Ins. App. Bd.*, 2 Cal 3d 943, 952 (Cal. 1970). For decades, California law has made clear that when it comes to employee classification, "the label placed by the parties on their relationship is not dispositive." *Borello*, 48 Cal. 3d at 349; *see also Real v. Driscoll Strawberry Associates, Inc.*, 603 F.2d 748, 755 (9th Cir. 1979) ("Economic realities, not contractual labels, determine employment status for the remedial purposes of the FLSA.").

Moreover, "it is equally true that the state has the inalienable right to reasonably regulate private business enterprises in the interest of public health, peace, morals, or the general welfare." *In re Monrovia Evening Post*, 199 Cal. 263, 269 (Cal. 1926); *People v. De La Torre*, 257 Cal. App. 2d 162, 166-67 (Cal. Ct. App. 1967) ("It is settled that the enjoyment of many personal rights and freedoms is subject to many kinds of restraints under the police power of the state, which includes reasonable conditions as may be determined by the governmental authorities to be essential to the safety, good order and public welfare of the people."). The California Constitution explicitly authorizes the Legislature to enact laws to protect workers within the state. Cal. Const. art. 14, § 1 ("The Legislature may provide for minimum wages and for the general welfare of employees.").

## IV. PLAINTIFFS' CLAIMS FOR VIOLATION OF THE NINTH AMENDMENT, "BABY NINTH," AND INALIENABLE RIGHTS PROVISION OF THE CALIFORNIA CONSTITUTION (CLAIMS VI, VII, AND III) FAIL FOR LACK OF ENFORCEABLE RIGHTS.

Lastly, Plaintiffs allege violations of the Ninth Amendment, and the "Baby Ninth" and Inalienable Rights provisions of the California Constitution. (Claims

1   VI, VII, and III.)  The FAC alleges that these provisions protect their

2   "[fundamental] right to work on one's own terms—as an independent service

3   provider, rather than an employee."  (ECF No. 59 at 59 ¶ 169; *id.* at 55 ¶ 155

4   ("Being one's own boss . . . is a fundamentally different occupation than driving as

5   an employee on an inflexible shift.".)  None of these provisions are actionable

6   grounds for invalidation of AB 5.

7        The Ninth Amendment states "the enumeration in the Constitution, of certain

8   rights, shall not be construed to deny or disparage others retained by the people."

9   U.S. Const. amend. IX.  It "has not been interpreted as independently securing any

10  constitutional rights for purposes of making out a constitutional violation."  *San*

11  *Diego Cty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1125 (9th Cir. 1996) (citation

12  omitted); *Strandberg v. City of Helena*, 791 F.2d 744, 748 (9th Cir. 1986); *see also*

13  *Schowengerdt v. U.S.*, 944 F.2d 483, 490 (9th Cir. 1991) (rejecting claim under

14  Ninth Amendment as meritless, "because that amendment has not been interpreted

15  as independently securing any constitutional rights for purposes of making out a

16  constitutional violation.").  As another circuit explained, "The ninth amendment

17  'was added to the Bill of Rights to ensure that the maxim *expressio unius est*

18  *exclusio alterius* would not be used at a later time to deny fundamental rights

19  merely because they were not specifically enumerated in the Constitution.'"

20  *Gibson v. Matthews*, 926 F.2d 532, 537 (7th Cir. 1991) (citation omitted).  This

21  amendment "does not confer substantive rights in addition to those conferred by

22  other portions of our governing law."  *Id.*  Even assuming that this amendment

23  conferred substantive rights, it has not been incorporated in the Fourteenth

24  Amendment.  *Amer. Law Foundation v. Meyer*, 120 F.3d 1092, 1107 (10th Cir.

25  1997) (rejecting plaintiff's putative claim under the Ninth Amendment because

26  there is no authority that it has been incorporated in the Fourteenth Amendment).

27       For similar reasons, Plaintiffs' claim under the putative "Baby Ninth"

28  provision of the California Constitution should be dismissed.  (ECF No. 59 at 59 ¶¶

170-171.)  Article I, section 24 of the California Constitution states, as relevant here, that "[t]his declaration of rights may not be construed to impair or deny others retained by the people."  The Court of Appeal has held that a California Constitution provision must be self-executing in order to provide a private right of action.  *Clausing v. San Francisco Unified School Dist.*, 221 Cal. App. 3d 1224, 1237 (Cal. Ct. App. 1990).[9]  "A constitutional provision may be said to be self-executing if it supplies a sufficient rule by means of which the right given may be enjoyed and protected, or the duty imposed may be enforced; and it is not self-executing when it merely indicates principles, without laying down rules by means of which those principles may be given force of law."  *Id.* (citation omitted).

Likewise, the Inalienable Rights provision of the California Constitution has not been found to create a private right of action.  *Cf. Clausing*, 221 Cal. App. 3d at 1238 n.6 ("No case has ever held that th[e] provision enunciating the inalienable right to obtain safety and happiness is self-executing in the sense that it gives rise, in and of itself, to a private right of action for damages or an affirmative duty on the part of the state to take particular steps to guarantee the enjoyment of safety or happiness by all citizens"); *see also Leger v. Stockton Unif. Sch. Dist.*, 202 Cal. App. 3d 1448, 1455 (Cal. Ct. App. 1988).

There is no case law supporting a fundamental constitutional right to work as an independent contractor (or "independent service provider").  Although the "fundamental human rights entitled to protection against overbroad intrusion or regulation by government is not limited to those expressly mentioned in the Bill of Rights or elsewhere in the Constitution," it extends to "basic values 'implicit in the concept of ordered liberty.'"  *City of Carmel-by-the-Sea v. Young*, 2 Cal. 3d 259, 266 (Cal. 1970).  These include the right to marry and to raise children, the right to educate one's children as one chooses, the right to travel, and the freedom to

---

[9] Although *Clausing* arises in the context of a cause of action for damages, Defendants have found no cases finding a private right of action for equitable relief under this provision.

1  associate. *Id.* (citing cases).  This type of fundamental right is not implicated by

2  Plaintiffs' desire to be classified as independent contractors.  That classification is

3  created and governed by California law.

4  **CONCLUSION**

5  For these reasons, the Court should dismiss the FAC, without leave to

6  amend.[10]

7

8  Dated:  March 26, 2020                    Respectfully submitted,

9                                            XAVIER BECERRA
                                             Attorney General of California
10                                           TAMAR PACHTER
                                             Supervising Deputy Attorney General

11

12                                           */s/ Jose A. Zelidon-Zepeda*
                                             _____
13                                           JOSE A. ZELIDON-ZEPEDA
                                             Deputy Attorney General
14                                           *Attorneys for the State of California*
                                             *and Attorney General Xavier Becerra,*
15                                           *in his official capacity*

16  SA2020100015

17

18

19

20

21

22

23

24

25

26

27  _____
    [10] Although leave to amend is generally freely granted, here Plaintiffs have
28  already amended once as of right, and the claims fail as a matter of law.  *Chodos v. West Publ. Co.*, 292 F.3d 992, 1003 (9th Cir. 2002).