UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 19-10956-DMG (RAOx)** | Date | September 18, 2020 |
|---|---|---|---|

| Title | *Lydia Olson, et al. v. State of California, et al.* | Page | 1 of 16 |
|---|---|---|---|

Present: The Honorable    DOLLY M. GEE, UNITED STATES DISTRICT JUDGE

| KANE TIEN | NOT REPORTED |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
|---|---|
| None Present | None Present |

**Proceedings:  IN CHAMBERS—ORDER RE DEFENDANTS' MOTION TO DISMISS [69]**

On March 26, 2020, Defendants State of California and California Attorney General Xavier Becerra filed a Motion to Dismiss ("MTD") the First Amended Complaint ("FAC") filed by Plaintiffs Lydia Olson, Miguel Perez, Postmates Inc. ("Postmates"), and Uber Technologies, Inc. ("Uber").[1]  The MTD is fully briefed.  [Doc. ## 70, 71.]  For the reasons stated below, the Court **GRANTS** Defendants' MTD.

**I.**
**FACTUAL AND PROCEDURAL BACKGROUND[2]**

Postmates is a company "that operates an online marketplace and mobile app-based platform that connects individual consumers seeking to order food or other goods with local merchants (such as restaurants and retail stores)."  FAC at ¶ 34.  If the consumer seeks delivery of a purchase, the Postmates platform connects the consumer with couriers who receive delivery referral notifications from the platform and choose whether to accept the consumer's offer to pick up and complete the requested delivery.  *Id.* at ¶¶ 34, 107–09.  Postmates' couriers sign a "Fleet Agreement" that provides:  "The Parties intend this Agreement to create the relationship of principal and independent contractor and not that of employer and employee."  *Id.* at ¶ 108. Uber is a company "that licenses and operates an online and mobile app-based platform that connects individuals in need of goods or services with those willing to provide them" through Uber Rides, which provides transportation services.  *Id.* at ¶¶ 35, 120.  Uber Rides drivers execute a "Technology Services Agreement," which provides, in bold text: "the relationship between the parties under this Agreement is solely that of independent contracting parties," and

---

[1] The Court refers to Olson and Perez collectively as the "Individual Plaintiffs" and Uber and Postmates collectively as the "Company Plaintiffs."

[2] The Court assumes the truth of the FAC's material factual allegations solely for the purpose of deciding Defendants' MTD.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 19-10956-DMG (RAOx)** | Date | September 18, 2020 |
|---|---|---|---|

| Title | *Lydia Olson, et al. v. State of California, et al.* | Page | 2 of 16 |
|---|---|---|---|

"this Agreement is not an employment agreement, nor does it create an employment relationship." *Id.* at ¶ 121.[3]  Company Plaintiffs are commonly referred to as "gig economy," "on-demand economy," "network economy," "platform," or "app-based" companies that use technology to connect consumers requesting services to providers of those services. *Id.* at ¶ 3; *see also id.* at ¶ 79 (using the term "gig economy").  Olson owns a consulting firm and, to supplement her income and maintain flexibility to care for her ailing husband, "uses the Uber platform to get leads for passenger requests to transport passengers in the Sacramento and San Francisco Bay areas." *Id*. at ¶¶ 7, 32.  Perez, a former truck driver, now runs his own delivery business and "uses the Postmates platform to get leads for delivery requests in the Los Angeles County area," which has nearly doubled his prior earnings and allowed him more time to spend with his family. *Id.* at ¶¶ 8, 33.  Both Individual Plaintiffs regularly use multiple platforms at the same time to perform services, including Company Plaintiffs' platforms and those of similar companies such as Lyft, GrubHub, and DoorDash. *Id.* at ¶¶ 6–8.

On December 30, 2019, Plaintiffs filed the instant lawsuit challenging the constitutionality of California Assembly Bill 5 2019 ("AB 5"), a law enacted in September 2019 that sets forth standards used to classify workers as employees or independent contractors.  [Doc. # 1.]  Effective as of January 1, 2020, AB 5's stated intent is

> to ensure workers who are currently exploited by being misclassified as independent contractors instead of recognized as employees have the basic rights and protections they deserve under the law, including a minimum wage, workers' compensation if they are injured on the job, unemployment insurance, paid sick leave, and paid family leave.

FAC at ¶ 46 (quoting AB 5 § 1(e)), Ch. 296, 2019–2020 Reg. Sess. (Cal. 2019).  The statute codifies the California Supreme Court's holding in *Dynamex Operations W. v. Superior Court*, 4 Cal. 5th 903 (2018), which applied a test known as the "ABC" test for determining a worker's classification to all industries covered by California Industrial Wage Commission ("IWC") wage orders.[4]  *Id.* at ¶ 23.

Under the ABC test, a worker is considered an employee unless the hiring entity establishes that the worker:  (a) is "free from the control and direction of the hirer in connection

---

[3] The FAC refers only cursorily to an Uber Eats platform and does not describe the agreement between Uber and Uber Eats drivers.  *See* FAC at ¶ 102.

[4] "In California, wage orders are constitutionally-authorized, quasi-legislative regulations that have the force of law." *Dynamex*, 4 Cal. 5th at 914.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 19-10956-DMG (RAOx)** | Date | September 18, 2020 |
|---|---|---|---|

| Title | *Lydia Olson, et al. v. State of California, et al.* | Page | 3 of 16 |
|---|---|---|---|

with the performance of the work, both under the contract for the performance of such work and in fact"; (b) "performs work that is outside the usual course of the hiring entity's business"; and (c) is "customarily engaged in an independently established trade, occupation, or business of the same nature as the work performed for the hiring entity." *Dynamex*, 4 Cal. 5th. at 916–17.  AB 5 adopts the ABC test for all provisions of the California Labor Code and the Unemployment Insurance Code, in addition to the IWC wage orders.  *See* Cal. Lab. Code § 2750.3. Accordingly, employers of workers who do not pass the ABC test must, *inter alia*, abide by wage, hour, and working condition requirements and pay unemployment insurance contributions applicable to all employees.  FAC at ¶¶ 48, 51.  Under AB 5, certain city attorneys may bring injunctive actions, and employers of misclassified employees may be subject to pre-existing Labor and Unemployment Insurance Code provisions penalizing some violations as misdemeanors or felonies.  *See* Cal. Lab. Code § 2750.3(j); FAC at ¶¶ 52–53, 86–89.

AB 5 contains, however, many enumerated industries, occupations, and types of work relationships that are exempt from application of the ABC test if certain criteria are met.  The list includes, among others, licensed professionals such as doctors and lawyers, commercial fishermen, contractors and subcontractors in the construction industry, business-to-business service providers, travel agents, graphic designers, freelance writers, aestheticians, and business entities providing referred services as home cleaners, dog walkers, or tutors.  *See* Cal. Lab. Code § 2750.3(j); *see also* FAC at ¶¶ 24–25.  For those exempted, AB 5 provides that the multifactor test of independent contractor status established in *S.G. Borello & Sons, Inc. v. Department of Industrial Relations*, 48 Cal. 3d 341 (1989), remains in effect.  *See* Cal. Lab. Code § 2750.3(b)–(h).

On February 10, 2020, the Court denied Plaintiffs' Motion for Preliminary Injunction requesting that the Court enjoin enforcement against Plaintiffs, pending final judgment, of any provision of AB 5.  [Doc. # 52; *see also Olson v. California*, No. CV 19-10956-DMG (RAOx), 2020 WL 905572 (C.D. Cal. Feb. 10, 2020).]  On March 5, 2020, Plaintiffs filed their FAC, alleging that AB 5 violates the U.S. Constitution's Ninth Amendment and Equal Protection, Due Process, and Contract Clauses, as well as the California Constitution's "Baby Ninth Amendment" and Inalienable Rights, Equal Protection, Due Process, and Contract Clauses.  FAC at ¶¶ 137–208.

Plaintiffs argue that AB 5's exemptions are arbitrary, fail to satisfy AB 5's stated purpose of addressing misclassification of workers, and are merely the product of lobbying efforts by exempted industries.  *Id.* at ¶¶ 55–71, 81–85.  Plaintiffs also cite to public criticism of Company Plaintiffs and the gig economy overall by California Assemblywoman Lorena Gonzalez, the lead drafter and sponsor of AB 5, and to the negative consequences of "forced reclassification" of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 19-10956-DMG (RAOx)** | Date | September 18, 2020 |
|---|---|---|---|

| Title | *Lydia Olson, et al. v. State of California, et al.* | Page | 4 of 16 |
|---|---|---|---|

millions of gig economy workers despite contracts specifying that they are independent contractors. *Id.* at ¶¶ 15–16, 21–22, 77, 79, 90–94, 133. Company Plaintiffs assert that reclassifying most of their independent contractor drivers as employees would fundamentally alter their business models, as well as those of other gig economy companies, and cause them to lose revenue, goodwill, earning opportunities for drivers, and the ability to quickly serve consumers' needs. *Id.* at ¶¶ 110–118, 122–136. According to Individual Plaintiff Olson, it would be "much harder—and perhaps impossible—to be able to care for her husband when she needs to, if she were an employee" of Uber as opposed to a contractor. *Id.* at ¶ 96. Due to her preference for flexibility, Olson does not want a fixed schedule or to work above or below a certain number of hours in a given week for Uber in order to earn income on which her family depends. *Id.* at ¶ 97. Individual Plaintiff Perez similarly cites financial and familial benefits to running his own delivery business using Postmates, Uber, and other gig economy companies to pick up jobs. *Id.* at ¶¶ 102–04. Asserting that becoming "someone else's employee" would "upend his life," Perez argues that the amount of harm he would suffer upon reclassification is incalculable and irreparable. *Id.* at ¶ 105.

On September 15, 2020, Plaintiffs filed a Notice of Supplemental Authority regarding AB 2257, a statute recently signed into law that amends the language of AB 5 to add numerous new exemptions and exclude from exemption "referrals for businesses that provide janitorial, delivery, courier, transportation, trucking, agricultural labor, retail, logging, in-home care, or construction services other than minor home repair." Not. at 2 [Doc # 74] (quoting Cal. Lab. Code § 2777(b)(2)(C)).

The Court now considers Defendants' motion to dismiss all claims against them for failure to state a claim.

## II.
## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6) a defendant may seek dismissal of a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A court may grant such a dismissal only where the plaintiff fails to present a cognizable legal theory or fails to allege sufficient facts to support a cognizable legal theory. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)).

To survive a Rule 12(b)(6) motion, a complaint must articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 19-10956-DMG (RAOx)** | | Date | September 18, 2020 |
|---|---|---|---|---|

| Title | *Lydia Olson, et al. v. State of California, et al.* | Page | 5 of 16 |
|---|---|---|---|

(2007).   Although a pleading need not contain "detailed factual allegations," it must contain "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  *Id*. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement' but it asks for more than a sheer possibility that a defendant has acted unlawfully" or "facts that are 'merely consistent with' a defendant's liability."  *Id.* (citing *Twombly*, 550 U.S. at 557).  In evaluating the sufficiency of a complaint, courts must accept all factual allegations as true.  *Id.* at 678.  Legal conclusions, by contrast, are not entitled to the assumption of truth.  *Id*.

Should a court dismiss certain claims, "[l]eave to amend should be granted unless the district court 'determines that the pleading could not possibly be cured by the allegation of other facts.'"  *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009) (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (*en banc*)).

**III.**
**DISCUSSION**

**A.    Equal Protection Claims**

Plaintiffs claim that AB 5 violates equal protection under the United States and California Constitutions because it improperly "draws classifications between network companies and non-network companies," and "between independent service providers and non-independent service providers that perform work similar in all relevant respects."  FAC at ¶¶ 139–140.  Moreover, Plaintiffs assert that the statute's exemptions granted to other industries and professions, but not to gig economy companies, constitute evidence of "irrational animus."  *Id.* at ¶ 140.

The Fourteenth Amendment's Equal Protection Clause "commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws[.]'"[5]  *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)).  The parties appear to agree that AB 5 does not warrant "some form of heightened

---

[5] "[E]qual protection analysis under the California Constitution is 'substantially similar' to analysis under the federal Equal Protection Clause.'"  *RUI One Corp. v. City of Berkeley*, 371 F.3d 1137, 1154 (9th Cir. 2004); *see also Manduley v. Super. Ct.*, 27 Cal. 4th 537, 571–72 (Cal. 2002) ("[W]e deem our analysis of petitioners' equal protection claim under the Fourteenth Amendment to the United States Constitution also applicable to their equal protection claim made pursuant to provisions in the California Constitution.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 19-10956-DMG (RAOx)** | Date | September 18, 2020 |

| | | | |
|---|---|---|---|
| Title | *Lydia Olson, et al. v. State of California, et al.* | Page | 6 of 16 |

review" because it implicates no fundamental right or suspect classification. *Nordlinger v. Hahn*, 505 U.S 1, 10 (1992); *see* MTD at 17; Opp. at 14–15. Accordingly, the Court need only determine whether, under the Equal Protection Clause, the statute rationally furthers "a legitimate state interest." *Nordlinger*, 505 U.S. at 10.

Under the rational review test, a statute bears "a strong presumption of validity," and "those attacking the rationality of the legislative classification have the burden 'to negative every conceivable basis which might support it.'" *F.C.C. v. Beach Commc'ns*, 508 U.S. 307, 314–15 (1993) (quoting *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 364 (1973)). The Equal Protection inquiry does not license the Court to "'judge the wisdom, fairness, or logic of legislative choices,'" and it ends if the Court finds a "'plausible reason[] for [California's] action.'" *Fowler Packing Co., Inc. v. Lanier*, 844 F.3d 809, 815 (9th Cir. 2016) (quoting *Beach Commc'ns*, 508 U.S. at 313–14)).

Thus, "[t]here is a tension in the interplay between the forgiving standard of a 'plausible' claim under Rule 12(b)(6) and the 'heavy presumption of validity of government conduct inherent in the rational basis standard.'" *A.J. California Mini Bus, Inc. v. Airport Comm'n of the City & Cty. of San Francisco*, 148 F. Supp. 3d 904, 918–19 (N.D. Cal. 2015) (citation omitted). The Ninth Circuit has upheld Rule 12(b)(6) dismissals of equal protection and due process claims under rational basis review. *See, e.g.*, *Kahawaiolaa v. Norton*, 386 F.3d 1271, 1283 (9th Cir. 2004) (affirming dismissal of challenge to a regulation excluding native Hawaiians from the tribal recognition process for Indian tribes); *Taylor v. Rancho Santa Barbara*, 206 F.3d 932, 935–36 (9th Cir. 2000) (affirming dismissal of challenges to federal and state statutes that permitted landlords to restrict occupancy to persons 55 years old or older). Other district courts in this circuit have noted that at the pleading stage, "a plaintiff must allege facts sufficient to overcome the presumption of rationality that applies to government classifications." *A.J. California Mini Bus*, 148 F. Supp. 3d at 918; *see also HSH, Inc. v. City of El Cajon*, 44 F. Supp. 3d 996, 1008 (S.D. Cal. 2014). One court, borrowing from the Fifth Circuit, has held that "[i]n applying the rational basis test at the motion to dismiss stage, a court may go beyond the pleadings to hypothesize a legitimate governmental purpose." *HSH, Inc.*, 44 F. Supp. 3d at 1008 (citing *Mahone v. Addicks Util. Dist. of Harris Cty.*, 836 F.2d 921, 936 (5th Cir. 1988). With this standard in mind, the Court examines the State's interest and whether AB 5 has a rational relationship to that interest.

### 1.     The Legislature asserts a legitimate interest.

As an initial matter, the Court restates its conclusion in its Preliminary Injunction Order that AB 5 serves a legitimate economic interest in addressing misclassification of workers. *See*

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | | |
|---|---|---|---|---|
| Case No. | **CV 19-10956-DMG (RAOx)** | | Date | September 18, 2020 |

| | | | | |
|---|---|---|---|---|
| Title | *Lydia Olson, et al. v. State of California, et al.* | | Page | 7 of 16 |

*Olson*, 2020 WL 905572, at \*8.  AB 5's statement of purpose provides that "[b]y codifying the California Supreme Court's landmark, unanimous *Dynamex* decision, this act restores these important protections to potentially several million workers who have been denied these basic workplace rights that all employees are entitled to under the law."  AB 5 § 1(e).  Far from arguing that this is an illegitimate state purpose, "Plaintiffs support the goal of protecting workers and clarifying California's rules surrounding worker classification."  FAC at ¶ 30.  In addition, as discussed in Defendants' motion and the Court's Preliminary Injunction Order, the State considered numerous factors in carving out exemptions, such as the amount of control in the position, workers' bargaining power, the ability of the workers to set their own rate of pay, and the nature of the relationship between the worker and the client.  MTD at 20 (citing Bill Analysis, Senate Committee on Labor Employment and Retirement, AB 5, 2019–2020 Reg. Sess. at 8–10 (Cal. July 10, 2019)); *see also Olson*, 2020 WL 905572, at \*15.  It is therefore uncontroversial that a "reasonably conceivable state of facts . . . could provide a rational basis" for the State to enact legislation to address misclassification.  *RUI One Corp. v. City of Berkeley*, 371 F.3d 1137, 1154 (9th Cir. 2004) (quoting *Beach Commc'ns*, 508 U.S. at 313).

As for AB 5's non-exemption of the gig economy, the FAC cites to statements by legislators indicating that those legislators were and are specifically concerned about rampant misclassification of gig economy workers.  *See* FAC at ¶¶ 79–80.  Although Plaintiffs disagree with those legislators' conclusion that AB 5 would benefit workers such as Individual Plaintiffs, *id.* at ¶ 90, under rational basis review, the Court may not "'judge the wisdom, fairness, or logic of legislative choices'" so long as it can find a "'plausible reason' for California's action." *Fowler Packing*, 844 F.3d at 815 (quoting *Beach Commc'ns*, 508 U.S. at 313–14) (brackets omitted).  At first glance, legislators have advanced such a "plausible policy reason" not to exempt gig economy companies from AB 5's purview.  *Nordlinger*, 505 U.S. at 11 (finding a state interest legitimate where "the legislative facts on which the classification is apparently based rationally may have been considered to be true by the governmental decisionmaker.").

### 2.  AB 5's exemptions are rationally related to the State's interest.

Plaintiffs argue that a second glance is necessary because by exempting numerous industries or professions, the State "undercut its own rational basis" of addressing rampant misclassification.  Opp. at 14–15 (quoting *Merrifield v. Lockyer*, 547 F.3d 978, 992 (9th Cir. 2008)).  But Plaintiffs improperly attempt to place the burden on Defendants to "articulate[] a rational basis for . . . disparate treatment" of those exempted and non-exempted under AB 5.  Opp. at 14.  Instead, it is Plaintiff's burden "to negative every conceivable basis which might support" AB 5's exemptions.  *Beach Commc'ns*, 508 U.S. at 315 (citation omitted).

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 19-10956-DMG (RAOx)** | Date | September 18, 2020 |
|---|---|---|---|

| Title | *Lydia Olson, et al. v. State of California, et al.* | Page | 8 of 16 |
|---|---|---|---|

Plaintiffs have drawn only superficial distinctions, however, between exempted and non-exempted groups. For instance, Plaintiffs assert that AB 5 exempts industries that Defendants cite as having "some of the highest misclassification rates in the economy's growth industries, including . . . janitorial, trucking, construction, [and] hospitality." *See* Opp. at 16 (citing MTD at 4, 12) (citation omitted)). But AB 5 in fact covers some workers in those industries. In the construction industry, under certain circumstances, AB 5 exempts the relationship between a contractor and an individual working pursuant to a *sub*contract, but AB 5 does not exempt the relationship between the individual and the subcontractor for whom he works. Cal. Lab. Code § 2750.3(f)(8). Thus, the *Borello* test applies to the relationship between the contractor and the individual, and the ABC test applies to the relationship between the individual and the subcontractor. AB 5 also specifically does not exempt a "business entity that provides construction trucking services to a licensed contractor utilizing more than one truck," which "shall be deemed the *employer* for all drivers of those trucks." *Id.* § 2750.3(f)(8)(B) (emphasis added). In addition, AB 5's sole exemption in the janitorial industry involves the relationship between a referral agency and a home cleaning business providing services via that agency. *Id.* § 2750.3(g)(2)(C). The individual workers for the home cleaning business and any individuals who are not sole proprietors referred directly by a referral agency are still subject to AB 5 and the ABC test. Similarly, AB 5 does not exempt the relationships between hiring businesses and *individual* workers in the hospitality industry who work as event planners or errand runners, only the relationships between the referral agencies and event planning and errand running businesses. *See id.*

Plaintiffs also assert that "it makes no sense to exempt certain workers depending on what *type* of license they have," pointing to the exemption for certain licensed professionals in medicine, law, finance, and insurance. *See* FAC at ¶¶ 61–62. But a license to operate a transportation business—which Individual Plaintiffs allege to have obtained—requires distinctly different training, accreditation, and industry-protective considerations than the professional licenses exempted in AB 5. *See* FAC at ¶ 25. These exemptions are thus unlike that in *Merrifield v. Lockyer*, in which the Ninth Circuit found no rational basis for requiring certain pest controllers dealing with mice or pigeons to obtain a license relating to pesticide use, while pest controllers dealing with bats or squirrels were exempted from the licensing requirement. 547 F.3d at 988, 992. In that case, the State's stated rationale for the licensing scheme—to ensure that pest controllers exposed to pesticides in their work had the adequate experience and knowledge—contradicted its exemption of bat and squirrel controllers, who are *more* likely to encounter pesticides and thus more in need of licensing. *Id.* at 992. Here, Plaintiffs do not plausibly allege that there is no rational reason to treat a transportation business license differently from a license to practice medicine or law. Thus, they have not borne their heavy burden of showing that AB 5's exemption of other categories of industries and workers

---

CV-90                              **CIVIL MINUTES—GENERAL**              Initials of Deputy Clerk <u>KT</u>

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 19-10956-DMG (RAOx)** | Date | September 18, 2020 |
|---|---|---|---|

| Title | *Lydia Olson, et al. v. State of California, et al.* | Page | 9 of 16 |
|---|---|---|---|

"contradicts the purposes of the prevailing wage law." *Allied Concrete & Supply Co. v. Baker*, 904 F.3d 1053, 1066 (9th Cir. 2018).

Finally, arguing that AB 5 arbitrarily exempts referral agencies that refer some service providers in 16 specific industries and occupations, but not other similarly situated service providers, Plaintiffs point out that AB 5 exempts:

> photographers (but not photojournalists), tutors (but not language interpreters), yard cleaners (but not yard mowers), persons who perform minor home repairs (but not persons who perform minor office or car repairs), house cleaners (but not house sitters or office cleaners), pool cleaners (but not chimney cleaners), picture hangers (but not picture framers), furniture assemblers (but not furniture repairers), and dog walkers and groomers (but not groomers of other animals).

FAC at ¶ 70; Cal. Lab. Code § 2750.3(g)(2)(C).  But Plaintiffs' parenthetical comparisons are not entirely accurate.  For some of these exemptions, Plaintiffs invent distinctions where there are none in the statute—*e.g.*, AB 5's exemption of "photographers" likely includes photojournalists, and the exemption of "yard cleaners" includes yard mowers.  As for some of Plaintiff's other examples, the Court can hypothesize rational reasons for distinctions between them such that the industries are not similarly situated.  *See HSH, Inc.*, 44 F. Supp. 3d at 1008.  For example, providers of home repair and cleaning services may be more likely to receive referrals for one-off or infrequent cleaning services, such as when a renter prepares to move out of an apartment, and may be more likely to negotiate their own hours and rates of pay.  By contrast, providers of office repair and cleaning services are more likely to service the same company's offices daily, and individual workers may have limited bargaining power and be in the position to "lose significant workplace protections" if they remain classified as contractors.  *See* AB 5 § 1(b).  Plaintiffs also fail to mention that AB 5 specifically defines a "tutor" as a "person who develops and teaches their own curriculum"—a position that may involve more independence and exercise of discretion than a language interpreter—and that AB 5 exempts referral agencies for animal services broadly, in addition to dog walking and grooming.  Cal. Lab. Code § 2750.3(g)(2)(A), (F).

Furthermore, even if AB 5's list of exemptions is not complete, the Court's rational basis review "reflect[s] the Court's awareness that the drawing of lines that create distinctions is peculiarly a legislative task and an unavoidable one." *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 314 (1976).  Because "a legislature need not run the risk of losing an entire remedial scheme simply because it failed, through inadvertence or otherwise, to cover every evil that might conceivably have been attacked," some admittedly arbitrary line-drawing—such as AB 5's

---

**CIVIL MINUTES—GENERAL** Initials of Deputy Clerk <u>KT</u>

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 19-10956-DMG (RAOx)** | Date | September 18, 2020 |
|---|---|---|---|

| Title | *Lydia Olson, et al. v. State of California, et al.* | Page | 10 of 16 |
|---|---|---|---|

exemption for a freelance editor or writer that publishes 35 times annually for one publication, but not one who publishes 36 times—is acceptable. *McDonald v. Bd. of Election Comm'rs of Chicago*, 394 U.S. 802, 809 (1969); *see* FAC at ¶ 63. Under this deferential review, the Court does not find that the exemptions "offend the Constitution simply because [they are] not made with mathematical nicety or because in practice [they] result[] in some inequality." *Califano v. Aznavorian*, 439 U.S. 170, 175 (1978) (citation and internal quotation marks omitted). Instead, the Legislature exercised its power to make "reform . . . one step at a time, addressing itself to the phase of the problem which seems the most acute to the legislative mind." *Gray v. First Winthrop Corp.*, 989 F.2d 1564, 1573 (9th Cir. 1993) (quoting *Williamson v. Lee Optical of Okla., Inc.*, 348 U.S. 483, 489 (1955)).

### 3. The Legislature was not improperly motivated by animus or lobbying.

Finally, Plaintiffs argue that the only possible explanation for not exempting gig economy companies and workers is animus toward them or favoritism towards unions or other groups. FAC at ¶¶ 140, 144; Opp. at 19. Plaintiffs allege that legislators' willingness to consider more than 30 bills that would create carve-outs for some industries but not the gig economy indicates that AB 5 is motivated by irrational animus. FAC at ¶ 84.

Under rational basis review, where a statute classifies a "politically unpopular group [that] is not a traditionally suspect class, a court may strike down the challenged statute under the Equal Protection Clause 'if the statute serves no legitimate governmental purpose *and* if impermissible animus toward an unpopular group prompted the statute's enactment.'" *Animal Legal Def. Fund v. Wasden*, 878 F.3d 1184, 1200–01 (9th Cir. 2018) (quoting *Mountain Water Co. v. Mont. Dep't of Pub. Serv. Regulation*, 919 F.2d 593, 598 (9th Cir. 1990)) (emphasis added). First, AB 5 was not enacted solely to target gig economy companies, but to address misclassification more broadly. But Plaintiffs acknowledge that legislators believe that misclassification in the gig economy presents particularly urgent problems. For example, the bill sponsor, Assemblywoman Gonzalez, publicly excoriated Company Plaintiffs for "rely[ing] on a contract workforce, which enables them to skirt labor laws, exploit working people and leave taxpayers holding the bag." *See e.g.*, FAC at ¶ 79(c) (quoting Lorena Gonzalez, *The Gig Economy Has Costs. We Can No Longer Ignore Them.*, Wash. Post (Sept. 11, 2019), https://www.washingtonpost.com/opinions/2019/09/11/gig-economy-has-costs-we-can-no-longer-ignore-them/). Based on legislators' statements cited in the FAC, it appears to the Court that legislators pinpointed gig economy companies as "the phase of the problem" of misclassification "which seems the most acute to the legislative mind." *Williamson*, 348 U.S. at 489. Plaintiffs have not sufficiently alleged that legislators' concerns are motivated solely by animus or that, even if Plaintiffs are a "politically unpopular group," AB 5's failure to exempt

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

Case No.   **CV 19-10956-DMG (RAOx)**                               Date   September 18, 2020

Title   *Lydia Olson, et al. v. State of California, et al.*                               Page   11 of 16

them "'serves no legitimate governmental purpose.'"  *Wasden*, 878 F.3d at 1200–01 (citations and internal quotation marks omitted).[6]

In addition, the Ninth Circuit has held that a plaintiff cannot prove invidious discrimination simply by alleging that legislators responded to lobbying efforts, because "[a]ccommodating one interest group is not equivalent to intentionally harming another." *Gallinger v. Becerra*, 898 F.3d 1012, 1020–21 (9th Cir. 2018) (finding no impermissible animus in statute's exemption for retired police officers after "political pressure" resulting from "potent lobbying efforts by the law enforcement community."). The right to lobby is "constitutionally protected." *Id.* at 1020. While Plaintiffs allege that legislators took lobbying by the newspaper industry and other industries into account, the rational explanations for not exempting gig economy workers as a whole distinguish this case from *Fowler Packing*, in which the *only conceivable* explanation for specific statutory "carve-outs" was to procure the support of a labor union. 844 F.3d at 816; *see also Allied Concrete*, 904 F.3d at 1066 (describing the exemption in *Fowler Packing* as "clearly suggest[ing] improper favoritism").

Because Plaintiffs have not overcome the strong presumption of rationality accorded to the State, the Court **DISMISSES** Plaintiffs' equal protection claims.

**B.     Due Process Claims**

Plaintiffs contend that AB 5 violates their due process rights because its enforcement would "prevent" Individual Plaintiffs "from pursuing their chosen occupation as business owners in the sharing economy" and "transform Company Plaintiffs from technology companies into taxi and delivery companies." FAC at ¶ 159.

The California and U.S. Constitutions prohibit the State from depriving any person of "life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1; Cal. Const. art I, § 7(a).[7] Courts have recognized a liberty interest based on some "generalized due process right to choose one's field of private employment," but that right is "subject to reasonable government regulation." *Conn v. Gabbert*, 526 U.S. 286, 291–92 (1999).

---

[6] As discussed in the Preliminary Injunction Order, Plaintiffs also have not alleged facts showing that they are a politically unpopular group. *See Olson*, 2020 WL 905572, at *9 n.13.

[7] Because "California's Due Process Clause is 'identical in scope with the federal due process clause,'" the Court's analysis of the federal due process claim applies with equal force to the California due process claim. *Sanchez v. City of Fresno*, 914 F. Supp. 2d 1079, 1116 (E.D. Cal. 2012) (quoting *Owens v. City of Signal Hill*, 154 Cal. App. 3d 123, 127 n.2 (1984)).

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 19-10956-DMG (RAOx)** | Date | September 18, 2020 |
|---|---|---|---|

| Title | *Lydia Olson, et al. v. State of California, et al.* | Page | 12 of 16 |
|---|---|---|---|

Because this vocational liberty interest is not a fundamental right, the Court need only determine "whether the legislation has a 'conceivable basis' on which it might survive constitutional scrutiny." *Dittman v. California*, 191 F.3d 1020, 1031 (9th Cir. 1999); *see also id.* at 1031 n.5 ("The [Supreme] Court has never held that the 'right' to pursue a profession is a *fundamental* right, such that any state-sponsored barriers to entry would be subject to strict scrutiny."). For the reasons stated above, AB 5 survives rational basis review because it conceivably furthers the State's legitimate interest in preventing misclassification of workers, including those working in the gig economy.

Moreover, the line of cases establishing a liberty interest in pursuing a chosen profession "'all deal[] with a complete prohibition of the right to engage in a calling[.]'" *Franceschi v. Yee*, 887 F.3d 927, 938 (9th Cir. 2018) (quoting *Conn*, 526 U.S. at 292). AB 5 is not a "complete prohibition" on Individual Plaintiffs' ability to pursue any profession. *Id*. First, the Court is not persuaded that working as an independent contractor is a profession or "field of private employment" at all, rather than a type of legal classification. *Id.* Second, Uber and Postmates continue to insist that their drivers qualify as independent contractors even under the ABC test. *See* FAC at ¶ 19. Olson and Perez can still work as independently contracted drivers if they satisfy the ABC test. *Cf. Franceschi*, 887 F.3d at 938 (holding that an attorney's due process claim failed "for the obvious reason that the [contested government action] does not operate as a complete prohibition on his ability to practice law, which it must to violate substantive due process"). But even if Individual Plaintiffs' employment classification does change under AB 5, they still have the option of working as part-time drivers and couriers, provided that their employers abide by California labor and unemployment insurance laws pertaining to employees. Plaintiffs have thus failed to state a claim that AB 5 violates the federal or California Constitutions' due process clauses.

Accordingly, the Court **DISMISSES** Plaintiffs' due process claims.

## C.     Contract Clause Claims

Plaintiffs allege that AB 5 violates the U.S. and California Constitutions' Contract Clauses because Company Plaintiffs' drivers and couriers sign contracts providing that the workers are independent contractors, and AB 5 would allegedly invalidate these contracts. FAC at ¶¶ 172–198.

The U.S. Constitution bars states from passing any "Law impairing the Obligation of Contracts." U.S. Const. art. I, § 10, cl. 1. Similarly, the California Constitution prohibits the

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 19-10956-DMG (RAOx)** | Date | September 18, 2020 |
|---|---|---|---|

| Title | *Lydia Olson, et al. v. State of California, et al.* | Page | 13 of 16 |
|---|---|---|---|

Legislature from enacting a "law impairing the obligation of contracts."  Cal. Const. art I, § 9. "Although the text of the Contract Clause is 'facially absolute,' the Supreme Court has long held that 'its prohibition must be accommodated to the inherent police power of the State to safeguard the vital interests of its people.'"  *RUI One Corp.*, 371 F.3d at 1147 (quoting *Energy Reserves Grp., Inc. v. Kan. Power & Light Co.*, 459 U.S. 400, 410 (1983) (internal quotation marks omitted)).  Unless a challenged statute impairs a state's own contractual obligations, determining whether a statute violates the Contract Clause involves a three-step inquiry:  (1) "whether the state law has, in fact, operated as a substantial impairment of a contractual relationship"; (2) whether the state has "a significant and legitimate public purpose behind the [law], such as the remedying of a broad and general social or economic problem"; and (3) "whether the adjustment of the 'rights and responsibilities of contracting parties is based upon reasonable conditions and is of a character appropriate to the public purpose justifying the legislation's adoption.'"  *Id.* (quoting *Energy Reserves Grp.*, 459 U.S. at 411–13).[8]

The threshold inquiry—whether the state law substantially impairs a contractual relationship—has three components: "whether there is a contractual relationship, whether a change in law impairs that contractual relationship, and whether the impairment is substantial." *Gen. Motors Corp. v. Romein,* 503 U.S. 181, 186 (1992).  Plaintiffs' FAC pleads adequate facts to satisfy the first two elements.  The existence of contractual relationships between Company Plaintiffs and their drivers is clear, and Plaintiffs assert that enforcing AB 5 to require reclassification of Individual Plaintiffs and other workers as employees would "severely modify a key contractual right" in those existing contracts.  *Id.* at ¶¶ 174–179.

It is less clear whether the impairment is substantial.  As the Court noted in its Preliminary Injunction Order, Plaintiffs should have foreseen that the labels the parties placed on their relationship were not dispositive and that Individual Plaintiffs could be reclassified as employees.  *See Olson*, 2020 WL 905572, at *11–12.  "California law is clear that '[t]he label placed by the parties on their relationship is not dispositive, and subterfuges are not countenanced.'"  *Alexander v. FedEx Ground Package Sys., Inc.*, 765 F.3d 981, 989 (9th Cir. 2014) (quoting *Borello*, 48 Cal. 3d at 349)).  Under the prior *Borello* standard for determining employment status, "[w]hat matters is what the contract, in actual effect, allows or requires."  *Id.* Nothing in *Dynamex* or AB 5 alters this approach.  Olson and Perez thus cannot expect to be considered independent contractors solely because their contracts with Uber and Postmates say so.

---

[8] A similar analysis applies under California law.  *Severns v. Union Pacific Railroad Co.*, 101 Cal. App. 4th 1209, 1222 (2002) ("The imposition of the requirement will not run afoul of the constitutional [Contract Clause] provision if it addresses a legitimate state interest and is reasonable and appropriate.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 19-10956-DMG (RAOx)** | Date | September 18, 2020 |
|---|---|---|---|

| Title | *Lydia Olson, et al. v. State of California, et al.* | Page | 14 of 16 |
|---|---|---|---|

In addition, a court is less likely to find substantial impairment when a state law "was foreseeable as the type of law that would alter contract obligations." *Energy Reserves Grp.*, 459 U.S. at 416. The parties should have foreseen potential enforcement of the ABC test to Company Plaintiffs' drivers because courts have opined, as early as 2015, that Uber drivers could plausibly be considered employees despite contractual language. *See Doe v. Uber Techs., Inc.*, 184 F. Supp. 3d 774, 783 (N.D. Cal. 2016) (holding at motion to dismiss stage that plaintiff drivers "alleged sufficient facts that an employment relationship may plausibly exist"); *O'Connor v. Uber Techs., Inc.*, 82 F. Supp. 3d 1133, 1138 (N.D. Cal. 2015) (finding a triable issue of fact on whether Uber drivers are employees (though the case ultimately settled)). Moreover, a statute is more likely to constitute a substantial impairment if the legislature "invaded an area never before subject to regulation by the State." *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 250 (1978); *see also Energy Reserves Grp.*, 459 U.S. at 411 ("In determining the extent of the impairment, we are to consider whether the industry the complaining party has entered has been regulated in the past."). Because "'[s]tates possess broad authority under their police powers to regulate the employment relationship to protect workers within the State" through "minimum and other wage laws [and] laws affecting occupational health and safety," AB 5 falls within the regulatory purview of the State. *RUI One Corp.*, 371 F.3d at 1150 (quoting *Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 756 (1985)). Accordingly, because it was foreseeable that Uber's and Postmates' independent contractor relationship with their drivers could be reclassified via state regulation or court order, Plaintiffs have failed to allege a substantial impairment.

Even if Plaintiffs had alleged some degree of impairment, at the third step, the Court considers whether the impairment "is based upon reasonable conditions and is of a character appropriate to the public purpose justifying the legislation's adoption." *Spannaus*, 438 U.S. at 413. "The more severe the impairment, the more searching the examination of the legislation must be." *Campanelli v. Allstate Life Ins. Co.*, 322 F.3d 1086, 1098 (9th Cir. 2003). In this instance, the impairment is not severe due to the foreseeability of Individual Plaintiffs' future reclassification as employees. Moreover, where the contracts allegedly impaired are private contracts between Corporate Plaintiffs and Individual Plaintiffs, and the State is not a party, "[a]s is customary in reviewing economic and social regulation, . . . courts properly defer to legislative judgment as to the necessity and reasonableness of a particular measure." *U.S. Trust Co. of New York v. New Jersey*, 431 U.S. 1, 22–23 (1977); *cf. S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 894 (9th Cir. 2003) (noting that "[c]omplete deference to a legislative assessment of reasonableness and necessity is not appropriate [where] the State's self-interest is at stake") (quoting *U.S. Trust*, 431 U.S. at 26). Accordingly, the Court defers to the State's assessment of the reasonableness and necessity of enacting AB 5 to remedy a perceived economic and social problem. *See RUI One Corp.*, 371 F.3d at 1150 (upholding a municipal

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 19-10956-DMG (RAOx)** | Date | September 18, 2020 |
|---|---|---|---|

| Title | *Lydia Olson, et al. v. State of California, et al.* | Page | 15 of 16 |
|---|---|---|---|

living wage ordinance that altered contractual expectations because "[t]he power to regulate wages and employment conditions lies clearly within a state's or a municipality's police power."). AB 5 fits within the State's authority to regulate employment relationships and thus satisfies the public purpose test imposed in a Contracts Clause challenge.

The Court therefore **DISMISSES** Plaintiffs' state and federal Contracts Clause claims.

**D.     Ninth Amendment and Remaining State Constitutional Claims**

Plaintiffs' remaining claims assert violations of the U.S. Constitution's Ninth Amendment and the "Baby Ninth" Amendment and Inalienable Rights provision of the California Constitution. The FAC alleges that these provisions protect their "[fundamental] right to work on one's own terms—as an independent service provider, rather than an employee." FAC at ¶ 169; *see also* FAC at ¶¶ 170–71.

The Ninth Amendment provides that "the enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." U.S. Const. amend. IX. It "has not been interpreted as independently securing any constitutional rights for purposes of making out a constitutional violation." *San Diego Cty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1125 (9th Cir. 1996) (citation omitted); *see also Schowengerdt v. U.S.*, 944 F.2d 483, 490 (9th Cir. 1991). Plaintiffs therefore fail to state an independent claim for violation of the Ninth Amendment.

Plaintiffs also fail to state a claim under the so-called "Baby Ninth" provision of the California Constitution, which states that "[t]his declaration of rights may not be construed to impair or deny others retained by the people." Cal. Const. art. I, § 24. The Baby Ninth provision is not self-executing because it does not "provid[e] a specific method for its enforcement." *Clausing v. San Francisco Unified Sch. Dist.*, 221 Cal. App. 3d 1224, 1237 (1990). Plaintiffs do not argue otherwise and cite primarily to law review articles, not precedential cases, to argue that the Court should recognize an enforceable constitutional right to pursue any chosen occupation. *See* Opp. at 25–26. As a result, Plaintiffs' claim under the "Baby Ninth" provision fails.

Likewise, the Inalienable Rights provision of the California Constitution—which provides that "[a]ll people are by nature free and independent and have inalienable rights"—articulates principles and does not automatically create a private right of action. *See Bates v. Arata*, No. C 05-3383 SI, 2008 WL 820578, at *4 (N.D. Cal. Mar. 26, 2008), *order clarified sub nom. Bates v. San Francisco Sheriff's Dep't*, No. C 05-3383 SI, 2008 WL 961153 (N.D. Cal. Apr. 7, 2008). California courts have recognized that the Inalienable Rights provision explicitly protects a right

---

**CIVIL MINUTES—GENERAL**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 19-10956-DMG (RAOx)** | | Date | September 18, 2020 |
|---|---|---|---|---|

| Title | *Lydia Olson, et al. v. State of California, et al.* | | Page | 16 of 16 |
|---|---|---|---|---|

to privacy, but Plaintiffs cite to no cases enforcing the rights to "defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness." Cal. Const. art. I, § 1; *cf. Am. Acad. of Pediatrics v. Lungren*, 16 Cal. 4th 307, 314, 322–24, 334 (1997) (describing cases involving the California constitutional right to privacy). Because Plaintiffs' claims do not arise under the recognized right to privacy, and there is no apt precedent that would allow this clause to prevail over well-established State regulatory authority, Plaintiffs have not stated a claim under the Inalienable Rights provision.

The Court therefore **DISMISSES** the remaining claims, without leave to amend because "the pleading could not possibly be cured by the allegation of other facts." *Knappenberger*, 566 F.3d at 942 (citation and internal quotation marks omitted).

**IV.**
**CONCLUSION**

For the reasons stated above, the Court **GRANTS** Defendants' MTD, with leave to amend only as to the Equal Protection, Due Process, and Contracts Clause claims. Plaintiffs shall file a Second Amended Complaint, or inform Defendants of their intention not to do so, by **October 9, 2020**. Defendants shall file their response within 21 days of the filing of the Second Amended Complaint. The parties' Joint Request for Ruling [Doc. # 75] is **DENIED** as moot.

**IT IS SO ORDERED**.