UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 19-10956-DMG (RAOx) | Date | July 16, 2021 |
| Title | *Lydia Olson, et al. v. Rob Bonta, et al.* | Page | 1 of 15 |

Present: The Honorable **DOLLY M. GEE, UNITED STATES DISTRICT JUDGE**

| KANE TIEN | NOT REPORTED |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
|---|---|
| None Present | None Present |

**Proceedings: IN CHAMBERS—ORDER RE DEFENDANT'S MOTION TO DISMISS [84]**

## I.
## INTRODUCTION

On December 18, 2020, Defendant California Attorney General Xavier Becerra filed a Motion to Dismiss ("MTD") the Second Amended Complaint ("SAC") filed by Plaintiffs Lydia Olson, Miguel Perez, Postmates Inc. ("Postmates"), and Uber Technologies, Inc. ("Uber").[1] Since the MTD was filed, Rob Bonta replaced Xavier Becerra as California Attorney General and is hereby automatically substituted for Becerra as a party in accordance with Federal Rule of Civil Procedure 25(d).

Many of the allegations in the SAC are identical or similar to the allegations in the First Amended Complaint ("FAC"). The Court therefore incorporates by reference the factual and procedural background set forth in its prior Order granting Defendant's motion to dismiss the FAC. September 18, 2020 Order at 1–4 [Doc. # 76]; *see also Olson v. California*, No. CV 19-10956-DMG (RAOx), 2020 WL 6439166, at *1–3 (C.D. Cal. Sept. 18, 2020). The new allegations focus on (1) Assembly Bills ("AB") 170 and 2257, which provide additional exemptions and clarifications to AB 5; (2) efforts to enforce AB 5 against Plaintiff Uber and another similar company, Lyft; and (3) Proposition 22 ("Prop 22"), a California ballot initiative approved by California voters on November 3, 2020 which provides, in short, that AB 5, AB 170, and AB 2257 (collectively, "AB 5, as amended"), do not apply to individuals who use rideshare and delivery applications to provide services, and such individuals are classified as independent contractors who will receive a range of new protections and benefits from rideshare and delivery platform companies such as Company Plaintiffs. *See* SAC at ¶¶ 14-16. According to Plaintiffs, even after the passage of Prop 22, Defendant, other California officials, and private

---

[1] The Court refers to Olson and Perez collectively as the "Individual Plaintiffs" and Uber and Postmates collectively as the "Company Plaintiffs."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 19-10956-DMG (RAOx) | Date | July 16, 2021 |
| Title | *Lydia Olson, et al. v. Rob Bonta, et al.* | Page | 2 of 15 |

actors are still trying to use AB 5, as amended, to force reclassification of Company Plaintiffs' drivers from independent contractors to employees under the "ABC" test for worker classification set forth in *Dynamex Operations W. v. Superior Ct.*, 4 Cal. 5th 903 (2018) and codified by AB 5.  *Id.* at ¶ 18.  The Court will detail any additional factual allegations in its analysis below.

In addition to claims for violating the Equal Protection, Due Process, and Contract Clauses of the United States and California Constitutions, the SAC also brings a new claim for violation of the Bill of Attainder Clauses of both Constitutions.  *Id.* at ¶¶ 17, 177–245.  Defendant now moves to dismiss the SAC in its entirety.  [Doc. # 84.]  The MTD is fully briefed.  [Doc. ## 88, 89.]

For the reasons stated below, the Court **GRANTS** Defendant's MTD.

## II.
## LEGAL STANDARD

The Court stated the legal standard governing motions to dismiss in its prior MTD Order and therefore need not repeat it here.  September 18, 2020 MTD Order at 5 [Doc. # 76].

## III.
## DISCUSSION

As a preliminary matter, no party argues that Prop 22 moots this case.  Although Prop 22 created a new classification scheme for gig economy workers, it did not include a retroactive application provision.  *See* SAC at ¶ 132 ("Prop 22 classifies independent service providers who use app-based rideshare and delivery apps as independent contractors *going forward*[.]") (emphasis in original).  The law remains unsettled as to whether Prop 22 in fact applies retroactively and whether its passage abated any existing claims for reclassification under AB 5.  *See James v. Uber Techs. Inc.*, No. 19-CV-06462-EMC, 2021 WL 2476809, at *2 (N.D. Cal. June 17, 2021) (clarifying that the court would decide the retroactivity and abatement issues on the merits).  In the meantime, Plaintiffs cite to public statements that the State of California will "continue to seek penalties for the time between January and the certification of the election results" for Prop 22.  SAC at ¶ 132 (quoting Kate Conger, *Uber and Lyft Drivers in California Will Remain Contractors*, N.Y. Times (Nov. 4, 2020), https://www.nytimes.com/2020/11/04/technology/california-uber-lyft-prop-22.html (last visited July 16, 2021)).  Moreover, Plaintiffs challenge the constitutionality of the entire AB 5 scheme,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 19-10956-DMG (RAOx) | Date | July 16, 2021 |
| Title | *Lydia Olson, et al. v. Rob Bonta, et al.* | Page | 3 of 15 |

which applies to a wide array of work relationships in different industries, not just to the specific rideshare and delivery app relationships affected by Prop 22.

Because Prop 22 does not moot this constitutional challenge, the Court concludes that Plaintiffs have presented a live case or controversy for decision.[2]

**A.    Equal Protection Claims**

The SAC re-alleges violations of the United States and California Constitutions' Equal Protection Clauses, focusing primarily on (1) the arbitrariness and irrationality of the exemptions to AB 5 codified in AB 170 and AB 2257, and (2) the State's "animus toward the on-demand economy." SAC at ¶¶ 177–201. As set forth in its prior Orders, the Court need only determine whether, under the Equal Protection Clause, the statute rationally furthers "a legitimate state interest." *Nordlinger v. Hahn*, 505 U.S 1, 10 (1992).

In its September 18, 2020 MTD Order, the Court concluded that the Legislature asserted a legitimate interest in protecting California workers from misclassification and that AB 5's statutory scheme, including its exemptions of certain types of workers and industries, was rationally related to that interest in protecting workers. September 18, 2020 Order, 2020 WL 6439166, at *4–9. Specifically, the Court rejected Plaintiffs' arguments that Company Plaintiffs' drivers are so similarly situated to exempted workers that the Legislature's failure to exempt Plaintiffs' work relationships is irrational or arbitrary. *Id.* at *6–7. Furthermore, even if AB 5's list of exemptions had to pick some groups to exempt and some not to exempt, the Court's rational basis review "reflect[s] the Court's awareness that the drawing of lines that create distinctions is peculiarly a legislative task and an unavoidable one." *Id.* at *7 (quoting *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 314 (1976)). Plaintiffs also did not sufficiently allege that AB 5 was motivated purely by irrational animus or favoritism to lobbying groups. *Id.* at *9.

Additionally, in its February 10, 2020 Order denying Plaintiffs' Motion for Preliminary Injunction ("MPI"), the Court discussed AB 170's exemption of newspaper carriers and noted that rational reasons exist to exempt a local newspaper delivery person from the ABC test. February 10, 2020 Order at 11, n.9 [Doc. # 52]; *see also Olson v. California*, No. CV 19-10956-DMG (RAOx), 2020 WL 905572, at *8, n.9 (C.D. Cal. Feb. 10, 2020).

---

[2] Although the Ninth Circuit has not yet decided whether Plaintiffs' appeal of the Court's denial of their motion for preliminary junction is moot, in light of Prop 22, the Court may still proceed with the merits of the case. *See G & M, Inc. v. Newbern*, 488 F.2d 742, 746 (9th Cir. 1973) ("[A]n appeal from an order granting or denying a preliminary injunction does not divest the district court of jurisdiction to proceed with the action on the merits.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 19-10956-DMG (RAOx) | Date | July 16, 2021 |
| Title | Lydia Olson, et al. v. Rob Bonta, et al. | Page | 4 of 15 |

Thus, the SAC and instant MTD rehash many of the arguments raised in the FAC and prior MTD, and the Court need not reiterate the reasons why "'a legislature need not run the risk of losing an entire remedial scheme simply because it failed, through inadvertence or otherwise, to cover every evil that might conceivably have been attacked[.]'"  September 18, 2020 Order, 2020 WL 6439166, at *8 (quoting *McDonald v. Bd. of Election Comm'rs of Chicago*, 394 U.S. 802, 809 (1969)).  AB 5, as amended by AB 170 and 2257, does not fail rational basis review simply because Plaintiffs can identify, in theory, other groups possibly worthy of exemption, such as musicians who perform in a live, single-engagement ballet.  *See* SAC at ¶ 107.  Under Supreme Court and Ninth Circuit precedent, classifications that are "to some extent both underinclusive and overinclusive" may survive rational-basis review, since "perfection is by no means required" of legislatures.  *Gallinger v. Becerra*, 898 F.3d 1012, 1018 (9th Cir. 2018) (quoting *Vance v. Bradley*, 440 U.S. 93, 108 (1979)).

To determine whether the SAC has cured the deficiencies of the FAC, the Court addresses only the following four categories of *new* factual allegations:  (1) AB 5 bill sponsor Assemblymember Lorena Gonzalez's comments about exempting the work relationships of newspaper workers under AB 170; (2) possible exemptions of the work relationships of gig economy companies TaskRabbit and Wag! under AB 5; (3) Assemblymember Gonzalez's animus toward Uber; and (4) the policy pronouncements of Prop 22.

### 1. AB 170's one-year grace period for contract newspaper distributors

According to Plaintiffs, AB 170 created an irrational one-year exemption for newspaper distributors, as evidenced by Assemblymember Gonzalez's statements excoriating misclassification in the newspaper industry.  SAC at ¶¶ 80–82.  In full, AB 170 does not require the ABC test to be applied to "a newspaper distributor working under contract with a newspaper publisher and a newspaper carrier working under contract, either with a newspaper publisher or newspaper distributor" until January 1, 2021, a year after AB 5's effective date.  AB 170, Ch. 415, 2019–2020 Reg. Sess. (Cal. 2019).  Assemblymember Gonzalez said that AB 170's exemption was "shameful" and would cause "continue[d] . . . misclassif[ication]" of "historically misclassified" workers, such as "women of color," but that it was a "condition of AB 5's passage."  SAC at ¶ 81 (quoting Katy Grimes, *How Assemblywoman Lorena Gonzalez was Forced to Author AB 170 and Voted NO on Her Own Bill*, Cal. Globe (Sept. 16, 2019), https://californiaglobe.com/section-2/how-assemblywoman-lorena-gonzalez-was-forced-to-author-ab-170-and-voted-no-on-her-own-bill/ (last visited July 3, 2021)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 19-10956-DMG (RAOx) | Date | July 16, 2021 |
| Title | *Lydia Olson, et al. v. Rob Bonta, et al.* | Page | 5 of 15 |

Undercutting the thrust of Plaintiffs' argument, however, Assemblymember Gonzalez also asserted that "'newspapers have lost nearly every case brought by carriers under [*S. G. Borello & Sons, Inc. v. Department of Industrial Relations.*, 48 Cal. 3d 341 (1989)],'" implying that even under the old *Borello* multifactor standard for determining employment status, newspaper workers have been able to show that they are properly classified as employees, not contractors. Opp. at 13 (quoting SAC at ¶ 81); *see, e.g.*, *Espejo v. The Copley Press, Inc.*, 13 Cal. App. 5th 329, 342–352 (2017). Thus, the legislature's decision to provide a one-year exemption for newspaper distributors and carriers under AB 170, where newspaper workers arguably were already protected even under the old *Borello* test, does not undermine the rationality of a legislative scheme aimed at remedying misclassification in industries *not* satisfactorily covered by *Borello*. Indeed, by contrast to the newspaper workers described in AB 170, delivery drivers for an app-based food delivery service similar to Postmates have been found to be independent contractors under the *Borello* test. *See* SAC at ¶ 61 (citing *Lawson v. Grubhub Inc.*, 302 F. Supp.3d 1071 (N.D. Cal. 2018)). The Legislature could thus rationally surmise that delivery drivers had greater need for a swift change to the ABC test to adequately capture cases of misclassification.

Furthermore, AB 170 gave the newspaper industry an additional year to come into compliance with the ABC test due to a "uniquely complex regulatory and legal history when it comes to independent contractor law." Sen. Comm. Rep., AB 170, 2019–2020 Reg. Sess., at 2 (Cal. Sept. 11, 2019). As explained by the California Senate Committee on Labor, Public Employment, and Retirement, the newspaper industry had relied on an Employment Development Department regulation created in 1987 that addressed when a newspaper carrier or distributor's workers are considered employees for the purposes of the Unemployment Insurance Code, but which newspaper publishers had stretched to utilize in wage and hour litigation. *Id.* at 2–4. In light of the shift from the existing regime, and in consideration of the undeniable financial stress affecting the newspaper industry as a whole, the Legislature concluded that it would be desirable to give newspaper publishers more time to address misclassification concerns. *Id.*; *see also* Assemb. Comm. Rep., AB 170, 2019–2020 Reg. Sess., at 2 (Cal. Sept. 14, 2019).

Because reasonable explanations for AB 170's amendment to AB 5 exist, Plaintiffs' argument fails to establish an Equal Protection violation.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 19-10956-DMG (RAOx) | Date | July 16, 2021 |
|---|---|---|---|

| Title | *Lydia Olson, et al. v. Rob Bonta, et al.* | Page | 6 of 15 |
|---|---|---|---|

### 2. Comparison to gig economy companies TaskRabbit and Wag!

The SAC also includes new allegations about two other gig economy companies: TaskRabbit, an "errands-based app[]" that provides "on-demand help with everyday tasks, such as handyman work," and Wag!, an app that provides "on-demand dog walking," both of which rely on nearly identical business models as the Company Plaintiffs. SAC at ¶ 10. Plaintiffs argue that because AB 5 specifically exempts referral agencies that refer "errands" and "dog walking" services, TaskRabbit's and Wag!'s relationships with their app-based workers are exempted from the ABC test. *Id.* According to Plaintiffs, exempting TaskRabbit and Wag!'s work relationships, which are nearly identical to Uber's and Postmates' relationships with their workers, "undercut[s] [the State's] own rational basis" for AB 5 and its amendments. Opp. at 10 (quoting *Merrifield v. Lockyer*, 547 F.3d 978, 992 (9th Cir. 2008)).

This argument in fact supports the opposite conclusion. The decision to exempt some gig economy companies and not others demonstrates that the Legislature did *not* arbitrarily target app-based network companies. It is true that the Legislature highlighted the gig economy as a growth industry with high rates of misclassification. In an official bill analysis published months before most of the exemptions were added, the California Assembly Committee on Labor and Employment claimed that "some of the highest misclassification rates [occur] in the economy's growth industries, including homecare, janitorial, trucking, construction, hospitality, security, *and the app-based 'on demand' sector*." Assemb. Comm. Rep., AB 5, 2019–2020 Reg. Sess., at 2 (Cal. July 5, 2019) (emphasis added); *see* SAC at ¶ 59. Thus, in crafting AB 5's exemptions for certain referral agencies, the Legislature specifically stated that AB 5 does *not* exempt referrals for "services provided in an industry designated . . . as a high hazard industry . . . or referrals for businesses that provide janitorial, delivery, courier, transportation, trucking, agricultural labor, retail, logging, in-home care, or construction services other than minor home repair. Cal. Lab. Code § 2777(b)(2)(C).

Conspicuously missing from this list, however, is the app-based on demand sector. The deliberate choice not to "carve in" the entire app-based on demand sector is consistent with a report by the California Senate Committee on Labor, Public Employment, and Retirement, in which the committee highlighted "technological neutrality" as one of the four factors considered to determine whether an occupation is comprised "unquestionably" of independent contractors. *See* SAC at ¶ 69 (citing Sen. Comm. on Labor, Pub. Emp't, and Ret., AB 5, 2019–2020 Reg. Sess., at 8 (Cal. July 8, 2019)). In other words, the Legislature made no distinction between a mobile app or the Yellow Pages as the intermediary connecting contractor and client, and asked instead "if the intermediary is . . . deriving disproportionate benefits from the relationship." Sen.

Case 2:19-cv-10956-DMG-RAO   Document 92   Filed 07/16/21   Page 7 of 15   Page ID #:2374

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 19-10956-DMG (RAOx)** | Date | July 16, 2021 |
|---|---|---|---|

| Title | ***Lydia Olson, et al. v. Rob Bonta, et al.*** | Page | 7 of 15 |
|---|---|---|---|

Comm. Rep., AB 5, 2019–2020 Reg. Sess., at 8–12 (Cal. July 8, 2019). According to the Legislature's framework, similarities in the app-based business model of TaskRabbit, Wag!, Uber, and Postmates are not dispositive of an employer or an independent contractor relationship. Instead, the Legislature's framework focuses on the *services* each company provides to determine if those services tend to be performed by traditional independent contractors and should be exempt from the ABC test under AB 5. Thus, the very fact that TaskRabbit and Wag! may be exempted from the ABC test under AB 5 indicates that the Legislature is *not* "singling out network companies and subjecting them to different rules," as Plaintiffs allege. SAC at ¶ 30.

Thus, the more salient question is whether there are rational differences between exempted errand-running and dog-walking, and non-exempted passenger and delivery driving. Several easily come to mind. *See Fowler Packing Co., Inc. v. Lanier*, 844 F.3d 809, 815 (9th Cir. 2016) (noting that courts "imagine any conceivable basis supporting a law, even if not advanced by the government"). Dog-walking and errand-running are traditionally activities performed by a household member, and a client's relationships with those service providers is necessarily a more intimate one. Because those tasks likely involve entering a client's home, the client and individual service provider likely exert more control over the service than the depersonalized referral agency, and the service providers may have their supplies provided by the client. By contrast, the transportation industry has historically experienced misclassification of drivers. *Dynamex* itself involved a class of drivers for an "on-demand" courier company. *See* 4 Cal. 5th at 917. And the sheer number of pre-AB 5 lawsuits against Uber alone indicates drivers' and competitors' perception that Uber's drivers are misclassified as independent contractors. *See, e.g.*, *Diva Limousine, Ltd. v. Uber Techs., Inc.*, 392 F. Supp. 3d 1074 (N.D. Cal. 2019); *Colopy v. Uber Techs. Inc.*, No. 19-CV-06462-EMC, 2019 WL 6841218 (N.D. Cal. Dec. 16, 2019); *O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110 (N.D. Cal. 2016); *Yucesoy v. Uber Techs., Inc.*, No. 15-CV-00262-EMC, 2016 WL 493189 (N.D. Cal. Feb. 9, 2016). The employment of dog-walkers and errand-runners has not engendered any comparable misclassification lawsuits.

Furthermore, notwithstanding the exemptions relating to referral agencies, AB 5 still applies the ABC test to typical cases of misclassification. AB 5, as amended, requires that in order for the relationship between a referral agency and a service provider to be exempt from the ABC test, the service provider must be "free from the control and direction of the referral agency in connection with the performance of the work for the client, both as a matter of contract and in fact"—in addition to *ten* other requirements such as the service provider providing her own tools and supplies and setting her own hours and terms of work. *See* Cal. Lab. Code § 2777(1)-(11).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 19-10956-DMG (RAOx) | Date | July 16, 2021 |
| Title | *Lydia Olson, et al. v. Rob Bonta, et al.* | Page | 8 of 15 |

So TaskRabbit, Wag!, and other app-based referral agencies could still be swept under AB 5, as amended, should they exert control and direction over the service provider's services for the client. AB 5 thus still provides that any service providers referred to clients by a referral agency may be considered employees if they display hallmarks of traditional employee, versus independent contractor, status, even if they provide services in industries that were not of particular concern to the Legislature. *See Dynamex*, 4 Cal. 5th at 955; *Borello*, 48 Cal. 3d at 351.

Accordingly, Plaintiffs have yet again failed to carry their burden "to negative every conceivable basis which might support" AB 5, as amended. *Beach Commc'ns, Inc.*, 508 U.S. at 315. As the Ninth Circuit recently stated, "For better or for worse, governmental regulations today typically benefit some groups and burden others. So long as there are other legitimate reasons for the economic distinction, we must uphold the state action." *San Francisco Taxi Coal. v. City & Cnty. of San Francisco*, 979 F.3d 1220, 1225 (9th Cir. 2020). Equal protection is implicated only "if the state's action borders on corruption, pure spite, or naked favoritism lacking any legitimate purpose." *San Francisco Taxi Coal.*, 979 F.3d at 1225. Based on the factual allegations of the SAC, the Legislature's reports incorporated by reference in the SAC or judicially noticed by this Court, and the Court's own rational perceptions of the basis for the law, AB 5 and its exemptions may benefit some groups and burden others, but the scheme survives Equal Protection challenge because it is motivated by a legitimate legislative interest in addressing erosion of the middle class through misclassification.[3]

### 3.     Animus against Uber

Although the SAC contains new allegations about Assemblymember Gonzalez's undeniable disdain for Uber and her specific desire that AB 5 cover Uber in particular, those allegations do not show that AB 5 was motivated solely by impermissible animus. *See, e.g.*, SAC at ¶ 92 (noting that Assemblymember Gonzalez explained during legislative debate that the exemptions were purposefully designed so there was no way "Uber w[ould] [be able to] just say" it might fall within one); ¶¶ 93, 135 (describing Assemblymember Gonzalez's Twitter activity).

---

[3] The Court rejects Plaintiffs' argument that the rationality inquiry is too fact-intensive to be decided as a matter of law. *See* Opp. at 12. Plaintiffs do not cite any binding, analogous authority for that proposition, and courts frequently grant motions to dismiss constitutional claims requiring rational basis review, where rationality may be determined as a matter of law. *See, e.g.*, *San Francisco Taxi Coal.*, 979 F.3d at 1222 (affirming dismissal of Equal Protection challenge to a municipal agency rule giving priority to certain taxi drivers over others); *Gallinger*, 898 F.3d at 1022 (9th Cir. 2018) (affirming dismissal of Equal Protection challenge to California's Gun-Free Schools Act); *Am. Soc'y of Journalists & Authors, Inc. v. Becerra*, No. CV 19-10645-PSG (KSx), 2020 WL 1434933, at *2 (C.D. Cal. Mar. 20, 2020) (dismissing journalists' Equal Protection challenge to AB 5).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 19-10956-DMG (RAOx) | Date | July 16, 2021 |
| Title | *Lydia Olson, et al. v. Rob Bonta, et al.* | Page | 9 of 15 |

First, Plaintiffs still have not shown that they are a "politically unpopular group" in the Equal Protection context. *See* February 10, 2020 Order, 2020 WL 905572, at *9, n.13 (noting politically unpopular groups in the past have included members of the LGBT community, mentally disabled individuals, and hippies). AB 5 has also been implicated in misclassification litigation in the trucking industry, including in one enforcement action brought by a city attorney, undermining Company Plaintiffs' insistence that they alone are targets of AB 5. *See California Trucking Ass'n v. Bonta*, 996 F.3d 644, 649 (9th Cir. 2021); *People v. Superior Ct. of Los Angeles Cnty.*, 57 Cal. App. 5th 619, 625 (2020), *review denied* (Feb. 24, 2021). Regardless, even if the Legislature sought to apply and then enforce the ABC test solely against Company Plaintiffs, legislators are entitled to identify "the phase of the problem" of misclassification "which seems the most acute to the legislative mind." September 18, 2020 Order, 2020 WL 6439166, at *7 (quoting *Williamson v. Lee Optical of Okla., Inc.*, 348 U.S. 483, 489 (1955)).

Because AB 5 sweeps far more broadly than simply Uber or any other gig economy company, Plaintiffs cannot show that "'the statute serves no legitimate governmental purpose *and* [that] impermissible animus toward an unpopular group prompted the statute's enactment.'" *Animal Legal Def. Fund v. Wasden*, 878 F.3d 1184, 1200–01 (9th Cir. 2018) (quoting *Mountain Water Co. v. Mont. Dep't of Pub. Serv. Regulation*, 919 F.2d 593, 598 (9th Cir. 1990)) (emphasis added).

### 4. Effect of Prop 22

Similarly, Plaintiffs fail to support their assertion that Prop 22's passage "further establishes the irrationality of AB 5." Opp. at 9. Prop 22 certainly contains harsh language about AB 5. It sets forth that AB 5 "threatened to take away the flexible work opportunities of hundreds of thousands of Californians . . . [including] their ability to make their own decisions about the jobs they take." Cal. Bus. & Prof. Code § 7449(d). Prop 22's stated purpose is "[t]o protect the basic legal right of Californians to choose to work as independent contractors with rideshare and delivery network companies throughout the state," and it effectuated that purpose by providing that, "[n]otwithstanding" AB 5, "an app-based driver is an independent contractor." *Id.* §§ 7450(a), 7451.

But it is not clear that California voters' disapproval of AB 5 by voting for Prop 22 translates to a finding that AB 5 is irrational and thus unconstitutional. As the Supreme Court noted, "[t]he Constitution presumes that, absent some reason to infer antipathy, even improvident decisions will eventually be rectified by the democratic process and that judicial intervention is generally unwarranted no matter how unwisely we may think a political branch has acted."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 19-10956-DMG (RAOx) | Date | July 16, 2021 |
|---|---|---|---|
| Title | *Lydia Olson, et al. v. Rob Bonta, et al.* | Page | 10 of 15 |

*Beach Commc'ns*, 508 U.S. at 314 (citing *Vance v. Bradley*, 440 U.S. 93, 97 (1979) (footnote omitted)). From Plaintiffs' perspective, any excesses of AB 5 have in fact been "rectified by the democratic process." *Id.* And the Court notes that Prop 22 may also abate any existing claims under AB 5—that question is not yet settled and is not before this Court. *See James v. Uber Techs. Inc.*, No. 19-CV-06462-EMC, 2021 WL 2476809, at *2 (N.D. Cal. June 17, 2021). As discussed above, Plaintiffs also fail to adequately allege that animus or antipathy alone motivated the statute, which extends to far more work relationships than those of rideshare and delivery companies redefined by Prop 22. The Court therefore sees no reason to alter its conclusions about the constitutionality of AB 5, as amended, based on the passage of Prop 22.

* * *

In conclusion, the SAC does not cure the deficiencies with Plaintiffs' Equal Protection claims under the United States and California Constitutions. Because further amendment would be futile, the Court **DISMISSES** those claims without leave to amend.

**B.    Due Process Claims**

The SAC re-alleges violations of the United States and California Constitutions' Due Process Clauses, arguing once again that "[b]eing one's own boss" is a fundamentally different occupation than "driving as an employee on an inflexible shift," and that AB 5 is not rationally related to a legitimate government interest. SAC at ¶¶ 202–14.

Having found a rational basis for AB 5 sufficient to survive an Equal Protection challenge, the Court applies that same rational basis to the Due Process challenge. The Court has already found that "AB 5 is not a 'complete prohibition' on Individual Plaintiffs' ability to pursue any profession." September 10, 2020 Order, 2020 WL 6439166, at *9 (quoting *Franceschi v. Yee*, 887 F.3d 927, 938 (9th Cir. 2018)). AB 5 and the ABC test permit anyone to remain an independent contractor if their work relationship meets the ABC test's requirements. But *even if* Plaintiffs' allegations in the SAC establish that driving as an independent contractor for Company Plaintiffs is its own "calling" or profession, to which AB 5 acts as a complete prohibition, the Court need only determine "whether the legislation has a 'conceivable basis' on which it might survive constitutional scrutiny." *Dittman v. California*, 191 F.3d 1020, 1031 & n.5 (9th Cir. 1999) ("The [Supreme] Court has never held that the 'right' to pursue a profession is a *fundamental* right, such that any state-sponsored barriers to entry would be subject to strict scrutiny."); *see* SAC at ¶ 204.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 19-10956-DMG (RAOx) | Date | July 16, 2021 |
|---|---|---|---|
| Title | *Lydia Olson, et al. v. Rob Bonta, et al.* | Page | 11 of 15 |

For the reasons stated above, AB 5 conceivably furthers the State's legitimate interest in preventing misclassification of workers in a wide swath of industries, including the transportation, delivery, and courier industries. Accordingly, the Court **DISMISSES** Plaintiffs' due process claims, without leave to amend.

**C.      Contract Clause Claims**

The SAC also re-alleges violations of the United States and California Constitutions' Contract Clauses, focusing primarily on the degree to which AB 5 was unforeseeable to Plaintiffs and impaired their reasonable contract expectations. SAC at ¶¶ 215–33. Contracts Clause claims involve a three-step inquiry: (1) "whether the state law has, in fact, operated as a substantial impairment of a contractual relationship"; (2) whether the state has "a significant and legitimate public purpose behind the [law], such as the remedying of a broad and general social or economic problem"; and (3) "whether the adjustment of the 'rights and responsibilities of contracting parties is based upon reasonable conditions and is of a character appropriate to the public purpose justifying the legislation's adoption.'" *RUI One Corp. v. City of Berkeley*, 371 F.3d 1137, 1147 (9th Cir. 2004) (quoting *Energy Reserves Grp., Inc. v. Kan. Power & Light Co.*, 459 U.S. 400, 411–13 (1983)).

The Court previously held that Plaintiffs' Contracts Clause claims failed at the first step of the inquiry for lack of substantial impairment, because "it was foreseeable that Uber's and Postmates' independent contractor relationship with their drivers could be reclassified via state regulation or court order." September 10, 2020 Order, 2020 WL 6439166, at *11. AB 5 falls under the regulatory purview of the State's "'broad authority under [its] police powers to regulate the employment relationship to protect workers within the State' through 'minimum and other wage laws [and] laws affecting occupational health and safety[.]'" *Id.* (quoting *RUI One Corp.*, 371 F.3d at 1150). The SAC re-alleges that enforcement of AB 5 substantially impairs the contracts between Company Plaintiffs and their drivers, including Individual Plaintiffs, because "[i]t would severely modify key contractual rights in those contracts (such as various rights to flexibility), and would impose new obligations to which the parties did not voluntarily agree to undertake, such as a duty of loyalty, unemployment coverage, and other employment benefits." SAC at ¶ 218.

But "California law is clear that '[t]he label placed by the parties on their relationship is not dispositive, and subterfuges are not countenanced.'" *Alexander v. FedEx Ground Package Sys., Inc.*, 765 F.3d 981, 989 (9th Cir. 2014) (quoting *Borello*, 48 Cal. 3d at 349)). There was thus always the risk that Plaintiffs' work relationships could be subject to reclassification,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 19-10956-DMG (RAOx) | Date | July 16, 2021 |
|---|---|---|---|
| Title | *Lydia Olson, et al. v. Rob Bonta, et al.* | Page | 12 of 15 |

particularly after the *Dynamex* decision in 2018 and the cases addressing Uber's classification of workers.  *See* September 18, 2020 Order, 2020 WL 6439166, at *11.  In addition, because AB 5 only applies the ABC test prospectively, there is no retroactive impairment of past obligations in reliance on Plaintiffs' contracts.  *Id.*  For example, one case cited by Plaintiffs involved a statute with an "extremely narrow focus," such that the law targeted very few employers, and imposed a retroactive requirement on those employers to pay "completely unexpected liability in potentially disabling amounts" of pension contributions for the past ten years.  *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 247–48 (1978).  Despite Company Plaintiffs' view of themselves as uniquely or solely targeted by AB 5, the statute's plain text shows that it is a law of general application that seeks to address *prospectively* a broad societal and economic problem in many industries.  AB 5 thus did not create unexpected changes to Plaintiffs' past relationships and resulted only in some impairment to their existing and future contracts.  After AB 5's passage, Plaintiffs were free to address anew their work relationships going forward.

The Court also previously noted that even if Plaintiffs had alleged substantial impairment, at the third step, the Court defers to the State's assessment of the reasonableness and necessity of enacting AB 5 to remedy a perceived economic and social problem.  September 18, 2020 Order, 2020 WL 6439166, at *11 (citing *RUI One Corp.*, 371 F.3d at 1150 (upholding a municipal living wage ordinance that altered contractual expectations because "[t]he power to regulate wages and employment conditions lies clearly within a state's or a municipality's police power.")).  Plaintiffs' SAC and Opposition fail to persuade the Court that the State lacks the authority to regulate the work relationships between private parties.  The cases Plaintiffs cite are inapposite.  Most of them involve government actors impairing their own contracts, necessitating a higher level of scrutiny.  *See Matsuda v. City & Cnty. of Honolulu*, 512 F.3d 1148, 1155 (9th Cir. 2008); *Univ. of Hawai'i Pro. Assembly v. Cayetano*, 183 F.3d 1096, 1106 (9th Cir. 1999); *Ross v. City of Berkeley*, 655 F. Supp. 820, 829 (N.D. Cal. 1987); *Sonoma Cnty. Org. of Pub. Emps. v. Cnty. of Sonoma*, 23 Cal. 3d 296, 308–09 (1979); *Ass'n of Los Angeles City Att'ys v. City of Los Angeles*, No. CV 12-4235-MMM (JCX), 2012 WL 12887541, at *8 (C.D. Cal. Nov. 20, 2012); *Aaron v. Aguirre*, No. 06-CV-1451-H (POR), 2006 WL 8455871, at *9 (S.D. Cal. Dec. 13, 2006).

Here, because the impairment to the private-party contracts at issue is not severe, the Court "may properly defer to legislative judgment as to the necessity and reasonableness of a particular measure" of social and economic regulation.  *U.S. Tr. Co. of New York v. New Jersey*, 431 U.S. 1, 22–23 (1977).  Plaintiffs allege that they proposed other policies addressing the social welfare of gig economy drivers to the Legislature, including policies that California voters approved via Prop 22.  SAC at ¶¶ 194–95.  They argue that the Legislature's failure to adopt

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 19-10956-DMG (RAOx) | Date | July 16, 2021 |
| Title | Lydia Olson, et al. v. Rob Bonta, et al. | Page | 13 of 15 |

those "direct and less-restrictive measures" to address misclassification in the gig economy indicates that AB 5 is an unnecessary legislative overreach. *Id.* at ¶ 194. The Supreme Court has been clear that even when public welfare is invoked as a justification, the security of a contract cannot be cut down without "moderation or reason or in a spirit of oppression." *Allied Structural Steel*, 438 U.S. at 243 (quoting *W.B. Worthen Co. ex rel. Bd. of Comm'rs of St. Imp. Dist. No. 513 of Little Rock v. Kavanaugh*, 295 U.S. 56, 60 (1935)). But Plaintiffs' myopia with respect to the larger goals of AB 5 once again hinders their argument. As alleged, Plaintiffs' alternative policy proposals would have done nothing to address misclassification in, *inter alia*, the trucking, janitorial, agricultural labor, retail, logging, in-home care, or construction service industries. Thus, the Court defers to the Legislature's judgment that the proposals Plaintiffs put forward to regulate the gig economy were not reasonable solutions in light of the larger problem of misclassification. And, as already discussed in prior Orders, AB 5 fits within the State's authority to regulate employment relationships and thus satisfies the public purpose test imposed in a Contracts Clause challenge. *See* September 18, 2020 Order, 2020 WL 6439166, at *11; February 10, 2020 Order, 2020 WL 905572, at *12.

The Court therefore **DISMISSES** Plaintiffs' state and federal Contracts Clause claims, without leave to amend.

**D.     Bill of Attainder Claims**

The SAC advances for the first time claims that AB 5 is a bill of attainder. SAC at ¶¶ 234–45. The United States and California Constitutions provide that no legislature shall pass a bill of attainder. *See* U.S. Const. art. I, § 9, cl. 3; *id.* art. I, § 10; Cal. Const., art. I, § 9; *see Law Sch. Admission Council, Inc. v. State of Cal.*, 222 Cal. App. 4th 1265, 1298-99 (2014). A similar analysis applies under both constitutional provisions. *See, e.g.*, *Armijo v. Miles*, 127 Cal. App. 4th 1405, 1419 (2005).

A bill of attainder is "a law that legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protections of a judicial trial." *Nixon v. Adm'r of Gen. Serv.*, 433 U.S. 425, 468 (1977). A bill of attainder has the following three components: it "(1) specifies the affected persons, and (2) inflicts punishment (3) without a judicial trial." *SeaRiver Maritime Fin. Holdings, Inc. v. Mineta*, 309 F.3d 662, 668 (9th Cir. 2002). Courts presume that statutes are constitutional, and "[o]nly the clearest proof suffices to establish the unconstitutionality of a statute as a bill of attainder." *Id.* at 669. In examining a statute, courts "'may only look to its terms, to the intent expressed by [the legislators] who voted its passage, and to the existence or nonexistence of legitimate explanations for its apparent

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 19-10956-DMG (RAOx)** | Date | July 16, 2021 |
|---|---|---|---|
| Title | ***Lydia Olson, et al. v. Rob Bonta, et al.*** | Page | 14 of 15 |

effect.'" *Id.* (quoting *Nixon*, 433 U.S. at 484). Courts also use various "guideposts" to determine whether a law singles out an individual or group. First, courts look at whether "the statute or provision explicitly names the individual or class, or instead describes the affected population in terms of general applicability." *Id.* Relatedly, courts also assess whether the identity of the individual or class was "easily ascertainable" when the legislation was passed. Third, courts ask "whether the legislation defines the individual or class by 'past conduct [that] operates only as a designation of particular persons,'" and, fourth, "whether the past conduct defining the affected individual or group consists of 'irrevocable acts committed by them.'" *Id.* (citations omitted).

Plaintiffs have not provided the requisite "clear proof" that AB 5, as amended, singles them out. *Id.* AB 5, as amended, has numerous exemptions, but is still a law of general applicability to work relationships in California. *See Communist Party of U.S. v. Subversive Activities Control Bd.*, 367 U.S. 1, 86 (1961) (concluding that the challenged law was not a bill of attainder because it "attaches not to specified organizations but to described activities in which an organization may or may not engage"). While some legislators pointed fingers at Uber in their public comments, many other companies and industries are explicitly covered by the statute. AB 5 also does not define its applicability by an individual's or entity's past conduct, but rather by existing work relationships. AB 5, as amended, therefore does not single out Uber, Postmates, or anyone based on past conduct in the same way that the challenged legislation in *SeaRiver* singled out the oil tanker Exxon Valdez and its owners and operators by increasing penalties on oil pollution starting on the day before the 1989 Exxon Valdez oil spill. *SeaRiver*, 309 F.3d at 670. Unlike in *SeaRiver*, the "prospective and generalized effect [of the statute] tempers the concerns of 'tyranny' by the 'multitude' that motivated the inclusion of the Bill of Attainder Clause." *SeaRiver*, 309 F.3d at 670–71 (quoting *United States v. Brown*, 381 U.S. 437, 443 (1965)).

Moreover, as discussed above, the State had a rational basis for addressing misclassification concerns and did not pass AB 5 solely to punish Plaintiffs. *See Communist Party*, 367 U.S. at 86 ("So long as Congress acts in pursuance of its constitutional power, the Judiciary lacks authority to intervene on the basis of the motives which spurred the exercise of that power."). "An otherwise valid law is not transformed into a bill of attainder merely because it regulates conduct on the part of designated individuals or classes of individuals." *Fresno Rifle & Pistol Club, Inc. v. Van De Kamp*, 965 F.2d 723, 727 (9th Cir. 1992) (holding that an assault weapons ban was not a bill of attainder against assault weapon manufacturers). Plaintiffs obviously continue to disagree with the Legislature's policy determination that misclassification is a social and economic problem that needs to be addressed, particularly in certain industries. But Plaintiffs' disagreement with the policy motivating AB 5, as amended, does not mean that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 19-10956-DMG (RAOx) | Date | July 16, 2021 |
|---|---|---|---|
| Title | *Lydia Olson, et al. v. Rob Bonta, et al.* | Page | 15 of 15 |

this law of general applicability is an irrational piece of legislation designating only Plaintiffs for punishment.  As the Supreme Court has emphatically warned, an individual or group affected by legislation cannot claim a bill of attainder merely due to dislike of the law, for to do so "would cripple the very process of legislating."  *Nixon*, 433 U.S. at 470.

In light of the foregoing, Plaintiffs cannot show that AB 5 is a bill of attainder justifying this Court's interference with the Legislature's policy choices.  The Court therefore **DISMISSES** the claims under the federal and state Bill of Attainder Clauses.  Moreover, in light of the Court's repeated conclusions regarding the rationality of AB 5, as amended, and its determination that AB 5 is a law of general applicability that does not single out Plaintiffs, any amendment would be futile.  In addition, because the SAC fails to state any ground for injunctive relief, the Court **DISMISSES** Plaintiffs' standalone claim for injunctive relief.

## IV.
## CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendant's MTD in its entirety.  Because Plaintiffs have already had an opportunity to amend their Equal Protection, Due Process, and Contract Clause Claims, without success, and because further amendment would be futile, the Court **DISMISSES** those claims with prejudice.  In addition, because the Bill of Attainder claims fail as a matter of law, and further amendment would be futile, the Court **DISMISSES** those claims with prejudice.  The parties' Joint Request for Ruling [Doc. # 91] is **DENIED** as moot.

**IT IS SO ORDERED**.